———FILED ———ENTERED
———LODGED ———RECEIVED

APR 1 4 2010

AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY_____DEPUTY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## NORTHERN DIVISION

RDB 1 0 CR 0 1 8 1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | CRIMINAL NO. ____-10-____ |
| v. | * | |
| | * | Willful Retention of National Defense |
| THOMAS ANDREWS DRAKE, | * | Information, 18 U.S.C. § 793(e) (Counts |
| | * | One through Five) |
| Defendant. | * | |
| | * | Obstruction of Justice, 18 U.S.C. § 1519 |
| | * | (Count Six) |
| | ****** | |

Making a False Statement, 18 U.S.C.
§1001(a) (Counts Seven through Ten)

### INDICTMENT

The Grand Jury for the District of Maryland charges that:

### COUNT ONE
### 18 U.S.C. § 793(e)
### (Retention of Classified Information)

At all times relevant to this Indictment, unless otherwise stated:

### Background

1.      The National Security Agency ("NSA") was a United States government intelligence agency with various offices and facilities.  NSA's primary facility was at Fort Meade in the District of Maryland.  The NSA was responsible for, among other things, providing Signals Intelligence to United States policy-makers and military forces.

2.      Signals Intelligence ("SIGINT") was a category of intelligence that involves the collection, processing and dissemination of foreign communications in order to obtain foreign intelligence necessary to the national defense, national security or the conduct of the foreign affairs of the United States.  Many, if not all, of NSA's SIGINT programs were classified.

SIGINT is one of NSA's primary missions.

3.       Pursuant to Executive Order 12958, as amended by Executive Order 13292,

national security information was classified as "Top Secret," "Secret," or "Confidential." The

designation "Top Secret" applied to information that, if disclosed without proper authorization,

reasonably could be expected to cause exceptionally grave damage to the national security. The

designation "Secret" applied to information that, if disclosed without proper authorization,

reasonably could be expected to cause serious damage to national security. The designation

"Confidential" applied to information that, if disclosed without proper authorization, reasonably

could be expected to cause damage to national security.

3.       Classified information had to contain markings identifying the level at which it

was classified. Classified information, of any designation, could only be shared with persons

determined by an appropriate United States government official to be eligible for access to

classified information, who had signed an approved non-disclosure agreement, and who

possessed a need to know. If a person was not eligible to receive classified information,

classified information could not be disclosed to that person.

## The Defendant and Other Relevant Persons

4.       Between in or about 1991 through in or about 2001, defendant THOMAS

ANDREWS DRAKE worked as a contractor assigned to NSA. On or about August 28, 2001,

defendant DRAKE became an employee of NSA when he was hired as the Chief of the Change

Leadership and Communications Office in the Signals Intelligence Directorate at NSA's facility

at Fort Meade, Maryland. After a year, defendant DRAKE changed positions and became a

Technical Leader in the Directorate of Engineering. Defendant DRAKE's duties and

responsibilities focused primarily on process improvement and improving efficiency within

NSA, not actual signals intelligence work.

5.      Defendant DRAKE worked at Fort Meade until on or about September 5, 2006,

when he received a teaching assignment at the National Defense University ("NDU") in

Washington, D.C.  While teaching at NDU, defendant DRAKE remained an employee of NSA,

but he performed his day-to-day work at NDU, not at NSA's Fort Meade facility.  However, as a

NSA employee, defendant DRAKE still had access to NSA buildings and classified computer

systems, documents, and information located at Fort Meade.  Defendant DRAKE worked at

NDU until on or about November 28, 2007 when NSA suspended his security clearance.

Defendant DRAKE resigned from NSA on or about April 23, 2008 in lieu of termination.

6.      During his tenure at NSA, defendant DRAKE held a Top Secret security

clearance.  Defendant DRAKE's positions within NSA also afforded him access to classified

documents and information concerning NSA's SIGINT programs via classified computer

systems and other means.

7.      Throughout his employment with NSA, defendant DRAKE signed written

agreements acknowledging his duty to safeguard "protected information," which the written

agreements expressly defined as classified information or information in the process of a

classification determination that he obtained as a result of his employment relationship with

NSA.  For example:

        a.      On or about December 7, 1989, while working as a contractor at NSA,
                defendant DRAKE signed a Contractor Security Agreement in which he
                acknowledged that he would never divulge protected information without
                the prior consent of NSA.  Defendant DRAKE also acknowledged that he
                had read and understood the provisions of the Espionage Act, including 18

-3-

U.S.C. § 793;

b.  On or about August 20, 1991, while working as a contractor at NSA, defendant DRAKE signed a Contractor Security Agreement in which he acknowledged that he would never divulge protected information without the prior consent of NSA. Defendant DRAKE also acknowledged that he had read and understood the provisions of the Espionage Act, including 18 U.S.C. § 793;

c.  On or about June 30, 1998, while working as a contractor at NSA, defendant DRAKE signed a Contractor Security Agreement in which he acknowledged that he would never divulge protected information without the prior consent of NSA. Defendant DRAKE also acknowledged that he had read and understood the provisions of the Espionage Act, including 18 U.S.C. § 793;

d.  On or about May 1, 2000, while working as a contractor at NSA, defendant DRAKE signed a Contractor Security Agreement in which he acknowledged that he would never divulge protected information without the prior consent of NSA. Defendant DRAKE also acknowledged that he had read and understood the provisions of the Espionage Act, including 18 U.S.C. § 793; and

e.  On or about August 28, 2001, upon being hired as a permanent NSA employee, defendant DRAKE signed a Security Agreement in which he acknowledged that he would never divulge protected information without the prior consent of NSA. Defendant DRAKE also acknowledged that he had read and understood the provisions of the Espionage Act, including 18 U.S.C. § 793.

Defendant DRAKE also received training regarding how to properly protect classified information, including the instruction not to remove classified information from NSA.

8.  All of the security agreements signed by defendant DRAKE stated that documents or information he intended for public disclosure had to be submitted for pre-publication review to NSA prior to dissemination, and that defendant DRAKE had to notify NSA of any unauthorized disclosure of classified information. At no time did NSA authorize defendant DRAKE to de-classify information or to disclose classified information to unauthorized persons, nor did he ever

obtain declassification of any of the classified documents and information referenced in this indictment. Additionally, at no time did NSA authorize defendant DRAKE to copy and print classified information in a manner that removed its classification markings and made it appear, on it face, that it was not classified. Finally, at no time did NSA authorize defendant DRAKE to possess classified documents or information at home, on a home computer, or in a personal e-mail account.

9.      "Reporter A," a person known to the Grand Jury, was employed by a national newspaper and wrote newspaper articles about the NSA and its intelligence activities, including SIGINT programs. The United States had never authorized Reporter A to receive classified information, and Reporter A did not have a United States government security clearance. Moreover, at no time did the United States ever authorize Reporter A to possess classified documents or information on a personal computer or in a personal e-mail account.

**The Scheme to Retain and Disclose Classified Information**

10.     In or about November 2005, Person A contacted defendant DRAKE and asked defendant DRAKE if he would speak to Reporter A. Defendant DRAKE had a self-described "close, emotional friendship" and "different and special" relationship with Person A that included the unauthorized disclosure of unclassified and classified information to Person A while Person A worked as a congressional staffer and after Person A's retirement in May 2002. Person A gave defendant DRAKE Reporter A's contact information, and defendant DRAKE decided to contact Reporter A.

11.     Between in or about November 2005, and in or about February 2006, defendant DRAKE signed up online for a free account with Hushmail, a secure e-mail service that enabled

him to exchange secure e-mails with others without disclosing his true identity. Defendant

DRAKE, using an alias, subsequently sent Reporter A a secure e-mail via Hushmail and

informed Reporter A that "someone we both knew referred me to you." In that e-mail, defendant

DRAKE volunteered to disclose information about NSA, but directed Reporter A to create a

Hushmail account so that both of them could communicate securely thereafter. On or about

February 27, 2006, defendant DRAKE purchased a premium subscription from Hushmail that

enabled him to send encrypted e-mails and store encrypted documents on Hushmail's secure

network in Canada rather than his personal computer, thereby further securing his e-mail

communications. Defendant DRAKE also asked Person A to use Hushmail to communicate for

a period of time.

12.     Reporter A as well as Person A eventually subscribed to Hushmail and began

using Hushmail to communicate with defendant DRAKE. Prior to actually communicating with

Reporter A, defendant DRAKE made Reporter A agree to certain conditions. Those conditions

included that: (a) defendant DRAKE's identity would never be revealed to Reporter A or anyone

else; (b) Reporter A would use the attribution of "senior intelligence official" when defendant

DRAKE provided information more singular in nature; (c) Reporter A would never use

defendant DRAKE as a single source for information; (d) Reporter A would never tell defendant

DRAKE who Reporter A's other sources were; and (e) Reporter A would not comment on what

other people recommended by defendant DRAKE to Reporter A had told Reporter A.

13.     Thereafter, between on or about February 27, 2006, and on or about November

28, 2007, Reporter A published a series of newspaper articles about NSA, including articles that

contained SIGINT information. Defendant DRAKE served as a source for many of these

newspaper articles, including articles that contained SIGINT information. To facilitate and conceal his role as a source for Reporter A, defendant DRAKE engaged in certain conduct, including, but not limited to the following: (a) defendant DRAKE exchanged hundreds of e-mails with Reporter A via Hushmail and also met with Reporter A no more than six times in various locations throughout the Washington, D.C. metropolitan area;  (b) defendant DRAKE researched future stories by emailing unwitting NSA employees and accessing classified and unclassified documents on classified NSA networks; (c) defendant DRAKE copied and pasted classified and unclassified information from NSA documents into an untitled Word document, which, when printed, removed the classification markings; (d) defendant DRAKE printed both classified and unclassified documents at NSA and brought home hard copies of classified and unclassified documents, which he then retained at his residence in Glenwood, Maryland without authority; (e) defendant DRAKE scanned and emailed Reporter A electronic copies of certain classified and unclassified documents, at least two of which he retained on his home computer system at his Glenwood, Maryland residence without authority; and (f) defendant DRAKE reviewed, commented on, and edited drafts, near final and final drafts of Reporter A's articles.

14. In addition, between at least on or about April 24, 2006, and on or about November 28, 2007, defendant DRAKE shredded certain classified and unclassified documents that he had removed from NSA, and similarly deleted certain classified and unclassified information on his home computer system, all of which were located in his personal residence at Glenwood, Maryland. Defendant DRAKE did so in part to conceal his relationship with Reporter A and prevent the Federal Bureau of Investigation's discovery of evidence that would have linked defendant DRAKE to the retention of classified documents for the purpose of

supplying information to Reporter A.  Defendant DRAKE destroyed this evidence while

knowing of the existence of an ongoing criminal investigation by the Federal Bureau of

Investigation into the disclosure of classified information to the media and in relation to and

contemplation of an investigation into alleged disclosures of classified information to Reporter

A.

15.     On or about November 28, 2007, in the District of Maryland, the defendant,

**THOMAS ANDREWS DRAKE,**

having unauthorized possession of a document relating to the national defense, namely, a

classified e-mail entitled "What a Success", did willfully retain the document and fail to deliver

the document to the officer and employee of the United States entitled to receive it.

All in violation of Title 18, United States Code, Section 793(e).

## COUNT TWO
### 18 U.S.C. § 793(e)
### (Retention of Classified Information)

The Grand Jury for the District of Maryland further charges that:

16.     The grand jury realleges paragraphs 1-14 of this Indictment as though fully set

forth herein.

17.     On or about November 28, 2007, in the District of Maryland, the defendant,

**THOMAS ANDREWS DRAKE,**

having unauthorized possession of a document relating to the national defense, namely, a two

page classified document and referred herein as "the Regular Meetings" document, did willfully

retain the document and fail to deliver the document to the officer and employee of the United

States entitled to receive it.

All in violation of Title 18, United States Code, Section 793(e).

**COUNT THREE**
**18 U.S.C. § 793(e)**
**(Retention of Classified Information)**

The Grand Jury for the District of Maryland further charges that:

18.     The grand jury realleges paragraphs 1-14 of this Indictment as though fully set forth herein.

19.     On or about November 28, 2007, in the District of Maryland, the defendant,

**THOMAS ANDREWS DRAKE,**

having unauthorized possession of a document relating to the national defense, namely, a four page classified document bearing the features of an e-mail and referred herein as the "Volume is our Friend" email, did willfully retain the document and fail to deliver the document to the officer and employee of the United States entitled to receive it.

All in violation of Title 18, United States Code, Section 793(e).

**COUNT FOUR**
**18 U.S.C. § 793(e)**
**(Retention of Classified Information)**

The Grand Jury for the District of Maryland further charges that:

20.     The grand jury realleges paragraphs 1-14 of this Indictment as though fully set forth herein.

21.     On or about November 28, 2007, in the District of Maryland, the defendant,

**THOMAS ANDREWS DRAKE,**

having unauthorized possession of a document relating to the national defense, namely, a three page classified document bearing the features of an e-mail and referred herein as the "Trial and

-9-

Testing" email, did willfully retain the document and fail to deliver the document to the officer and employee of the United States entitled to receive it and employee of the United States entitled to receive it.

All in violation of Title 18, United States Code, Section 793(e).

## COUNT FIVE
### 18 U.S.C. § 793(e)
### (Retention of Classified Information)

The Grand Jury for the District of Maryland further charges that:

22.     The grand jury realleges paragraphs 1-14 of this Indictment as though fully set forth herein.

23.     On or about November 28, 2007, in the District of Maryland, the defendant,

## THOMAS ANDREWS DRAKE,

having unauthorized possession of a document relating to the national defense, namely, a five page classified document bearing the features of an e-mail and referred herein as "the Collections Sites" email, did willfully retain the document and fail to deliver the document to the officer and employee of the United States entitled to receive it and employee of the United States entitled to receive it.

All in violation of Title 18, United States Code, Section 793(e).

## COUNT SIX
### 18 U.S.C. § 1519
### (Obstruction of Justice)

The Grand Jury for the District of Maryland further charges that:

24.     The grand jury realleges paragraphs 1-14 of this Indictment as though fully set forth herein.

-10-

25.     From at least on or about April 24, 2006, and continuing through on or about November 28, 2007, in the District of Maryland,

**THOMAS ANDREWS DRAKE,**

defendant herein, knowingly altered, destroyed, mutilated, concealed and covered up records, documents and tangible objects, namely, classified and unclassified documents, including emails and handwritten notes, with the intent to impede, obstruct and influence the investigation of a matter within the jurisdiction of the Federal Bureau of Investigation, and in relation to and contemplation of such matter, that is, an investigation into alleged disclosures of classified information to the media and to Reporter A.

All in violation of Title 18, United States Code, Section 1519.

## COUNT SEVEN
### 18 U.S.C. § 1001(a)(2)
### (Making a False Statement)

The Grand Jury for the District of Maryland further charges that:

26.     The grand jury realleges paragraphs 1-14 of this Indictment as though fully set forth herein.

27.     On November 28, 2007, in the District of Maryland,

**THOMAS ANDREWS DRAKE,**

defendant herein, in a matter within the jurisdiction of the Federal Bureau of Investigation, United States Department of Justice, did knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation, that is, falsely stating to special agents of the Federal Bureau of Investigation that he never gave Reporter A classified information.

All in violation of Title 18, United States Code, Section 1001(a) (2).

-11-

## COUNT EIGHT
### 18 U.S.C. § 1001(a)(2)
### (Making a False Statement)

The Grand Jury for the District of Maryland further charges that:

28.     The grand jury realleges paragraphs 1-14 of this Indictment as though fully set forth herein.

29.     On December 14, 2007, in the District of Maryland,

### THOMAS ANDREWS DRAKE,

defendant herein, in a matter within the jurisdiction of the Federal Bureau of Investigation, United States Department of Justice, did knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation, that is, falsely stating to special agents of the Federal Bureau of Investigation that he did not bring any classified documents home.

All in violation of Title 18, United States Code, Section 1001(a) (2).

## COUNT NINE
### 18 U.S.C. § 1001(a)(2)
### (Making a False Statement)

The Grand Jury for the District of Maryland further charges that:

30.     The grand jury realleges paragraphs 1-14 of this Indictment as though fully set forth herein.

31.     On December 14, 2007, in the District of Maryland,

### THOMAS ANDREWS DRAKE,

defendant herein, in a matter within the jurisdiction of the Federal Bureau of Investigation, United States Department of Justice, did knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation, that is, falsely stating to special agents of

the Federal Bureau of Investigation that he removed only unclassified information from classified

documents by copying and pasting the information into an untitled Word document.

All in violation of Title 18, United States Code, Section 1001(a) (2).

**COUNT TEN**
**18 U.S.C. § 1001(a)(2)**
**(Making a False Statement)**

The Grand Jury for the District of Maryland further charges that:

32.     The grand jury realleges paragraphs 1-14 of this Indictment as though fully set

forth herein.

33.     On April 18, 2008, in the District of Maryland,

**THOMAS ANDREWS DRAKE,**

defendant herein, in a matter within the jurisdiction of the Federal Bureau of Investigation,

United States Department of Justice, did knowingly and willfully make a materially false,

fictitious, and fraudulent statement and representation, that is, falsely stating to special agents of

the Federal Bureau of Investigation that he never took handwritten notes that contained classified

information.

All in violation of Title 18, United States Code, Section 1001(a) (2).

FOR THE UNITED STATES OF AMERICA

William M. Welch II
Senior Litigation Counsel
Criminal Division
United States Department of Justice

-13-

John P. Pearson
Trial Attorney
Public Integrity Section
United States Department of Justice

A TRUE BILL:

**SIGNATURE REDACTED**

Foreperson                          Date: _4 - /4-____, 2010