**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **Case No. 10 CR 00181 RDB** |
| | * | |
| **THOMAS ANDREWS DRAKE,** | * | |
| | * | |
| **Defendant.** | * | |
| | ****** | |

**UNITED STATES' MOTION FOR AN ORDER REQUIRING THE DISCLOSURE OF THE NAMES OF THE TWO PROPOSED DEFENSE EXPERTS SO THAT THE UNITED STATES CAN PERFORM ITS "NEED TO KNOW" ASSESSMENT**

The United States of America respectfully moves this Court pursuant to the Classified Information Procedures Act, 18 U.S.C. App. 3 (2006) ("CIPA"); the Security Procedures established pursuant to Pub. L. 96-456, 94 Stat. 2052, by the Chief Justice of the United States for the Protection of Classified Information (reprinted following CIPA Section 9); Rules 16 and 57 of the Federal Rules of Criminal Procedure; and the general supervisory authority of the court for an order requiring the defense to disclose the names of two proposed defense experts for whom the defense seeks authority to obtain access to classified information. *See Motion for Order Authorizing Defense Experts' Access to Classified Information*; Dkt. 24 (hereinafter "*Access Motion*").

In sum, access to classified information may only be authorized where an individual possesses the proper security clearance and satisfies the "need to know" requirement. The United States cannot assess whether or not an individual should receive a proper security

clearance or make its "need to know" assessment in a vacuum; rather, it needs to know who may have access to classified information in the first instances to make those determinations. Incredibly, the defense refuses to reveal to the government the names of the two proposed defense experts who it wishes this Court to grant unfettered access to highly classified information located in the defense's SCIF. Accordingly, the United States moves this Court for an order requiring the defense to disclose the names of the two proposed two defense experts so that the United States can make an informed judgment about permitting access to highly classified information.[1]

## I. Given That The Accountability Over Classified Information Rests Solely Within The Executive Branch, The United States Must Know The Identity of The Proposed Defense Experts Before Access To Classified Information Can Be Authorized.

Executive Order 13,526, signed by the President on December 29, 2009 and superseding other previous executive orders, "prescribes a uniform system for classifying, safeguarding, and declassifying national security information." Section 4.1 of this order, which imposes restrictions on access, states in relevant part that:

> (a) A person may have access to classified information provided that:
>
> (1) a favorable determination of eligibility for access has been made by an agency head or the agency head's designee;
>
> (2) the person has signed an approved nondisclosure agreement; and
>
> (3) the person has a need-to-know the information.

---

[1] It is quite plausible that the United States will not have any objection to the proposed defense experts' access to the classified information. However, until knowing their identity, the United States cannot make that judgment.

*Id*. A "need-to-know" is defined as "a determination made by an authorized holder of classified information that a prospective recipient requires access to specific classified information in order to perform or assist in a lawful and authorized governmental function." *Id*. at § 61(z).

Judgments about national security and classified information matters are uniquely confined to the Executive Branch. *See United States v. Abu Ali*, 528 F.3d 210, 253 (4th Cir. 2008) (stating that courts "'have no authority[ ] to consider judgments made by the Attorney General concerning the extent to which the information . . . implicates national security.'")(quoting *United States v. Fernandez,* 913 F.2d 148, 154 (4th Cir. 1990)). Quite simply, judgments about national security and classified information rest solely with the Executive Branch because no other branch of government

> is responsible for the accountability of classified information. It is responsible for the classification thereof and for the dissemination of such information. The government has set up certain procedures and precautions to protect classified documents. Even those with authority to see and handle the documents have no right without authority to convey the documents to others, whether or not the other party may have a need to know the information therein. Any other holding would make the possessor of any classified document the ultimate authority in deciding whether or not the document should be transferred to someone else. This, however, is a function of the government and its system of accountability for classified documents, not of someone who just happens to be in possession thereof, whether or not he rightfully possesses the document.

*United States v. Zettl*, 889 F.2d 51, 53 (4th Cir. 1989).

Therefore, "[g]etting clearance is not enough for access to classified information: there is, quite sensibly, also a `need to know' requirement." *United States. v. Amawi*, 2009 WL 961143 (N.D.Ohio 2009)(citing *Badrawi v. Dep't of Homeland Security*, 2009 WL 103361, *9

(D.Conn. 2009)(counsel without need to know properly denied access to classified information despite security clearance). "Clearance simply qualifies counsel to view secret materials. It does not, however, entitle counsel to see anything and everything that the government has stamped classified even if it has something to do with a client." *Amawi*, 2009 WL 961143 (citing *United States v. Bin Laden*, 126 F.Supp.2d 264, 287 n. 27 (S.D.N.Y.2000)(security clearances enable "attorneys to review classified documents, but do not entitle them to see all documents with that classification.") (citation omitted)). *See also United States v. Rosen*, 445 F.Supp.2d 602, 622-23 (E.D.Va. 2006)(holding that the Executive Order setting forth a uniform classification system for national security information "restricts access to classified information to those with a corresponding security clearance and a need-to-know."); *United States v. Libby*, 429 F.Supp. 2d 18, 24 (D.D.C. 2006)(holding that "despite the fact that the defendant is a former national security official and some of his defense team hold security clearances, this does not entitle them to view documents that exceed the level of their security clearances or documents that may discuss particularly sensitive issues with profound national security implications whose viewing is permitted only upon a showing that there is a "need-to-know the information.").

The language of Executive Order 13,526 is plain. ***Before*** an individual may have access to classified information, three criteria must be met: (1) a favorable determination of eligibility, i.e. passing the security clearance; (2) signing an approved non-disclosure agreement; ***and*** (3) a "need to know" the information. The defense's refusal to provide the names of its two proposed defense experts flies in the face of the plain language of Executive Order 13,526. Indeed, the idea that the "need to know" assessment would only occur ***after*** the defense's two proposed experts had access to highly classified information is counter-intuitive to a classification system

established to protect against the unwarranted dissemination of classified information. *See Libby*, 429 F.Supp.2d at 24 n.8 (stating that "[i]t is axiomatic that even if the defendant and his attorneys had been granted the highest level of security clearances, that fact alone would not entitle them to access to every piece of classified information this country possesses.").

Of course, given the plain language of Executive Order 13,526, the defense's position finds no support in the law. As one would expect, the caselaw tracks what the executive order requires: the "need to know" assessment must occur ***before*** an individual may have access to classified information.

The United States simply cannot fulfill its obligations and make its initial assessment regarding the propriety of a security clearance for the two proposed defense experts or their respective "need to know" without first knowing their identities. The defense claims that the United States has "no grounds" to obtain the identities of the two proposed defense experts, and believes that the Protective Order, which the defense consented to and this Court later endorsed based upon that consent, *see* Dkt. 18., provides no such basis. This interpretation of the Protective Order flies in the face of the law cited above, the Order itself, and common sense.

First, Paragraph 7 of the Protective Order specifically states that "[a]ny additional persons whose assistance the defense reasonably requires may only have access to classified information in this case after first obtaining from this Court, <u>with prior notice to the government, an approval for access to classified information at the level required for such access on a need-to-know basis</u>, and after satisfying the other requirements described in this Order for access to classified information." (emphasis added). As the above law makes clear, only the Executive Branch can

make the initial assessment of whether or not an individual can and should obtain the proper security clearance, and second, whether or not an individual has a "need to know."

The defense's interpretation forces the Court into making judgments and determinations about access to highly classified information and national security matters in a vacuum. Similar to the United States' predicament regarding the identity of the two proposed defense experts, this Court is no better equipped to assess an individual's "need-to-know" in a vacuum. At this stage, the Court does not know the full range and scope of the highly classified information that has been made available to the defense. Nor does the Court know the various "sources and methods" of collection activity to which the Court may be granting access. The Court simply is not equipped to make an initial "need to know" assessment allowing access to highly classified information. It is for these reasons, among others, that the "need to know" determination rests exclusively within the province of the Executive Branch.

Second, the defense's position defies common sense and is just plain silly. Paragraph 18 of the Protective Order requires

> any other individuals who will be provided access to classified information, shall execute the Memorandum of Understanding described in paragraph 12 of this Order, and counsel for the defendant shall file executed originals of such signed documents with the Court and the Court Security Officer, and serve an executed original upon the United States. The execution and filing of the Memorandum of Understanding is a condition precedent for the defendant, counsel for the defendant, or any other person assisting the defense, to have access to classified information.

Therefore, pursuant to the terms of Paragraph 18, the two proposed defense experts must sign a Memorandum of Understanding (hereinafter "MOU"), and the defense must deliver an original, executed copy upon the United States. So unless the defense plans to have their proposed

defense experts not sign the MOU in their true name, or plans to defy the terms of the Protective Order and not provide the executed MOUs to the United States, the two proposed defense experts' identities will be known within a day or two.

Even if known to the United States, there is no prejudice that would flow from such disclosure. Communications between the defense and a consulting expert are generally privileged and not discoverable. Once the defense decides to use one of the proposed experts at trial, the defense would be required to produce expert discovery pursuant to Rule 16. It is hard to imagine what possible prejudice could flow from revealing their identities now, and in any event, it is precisely because of the national security interests at stake that the courts give similar government interests significant weight in other contexts. *See United States v. Smith*, 780 F.2d. 1102, 1108 (4th Cir.1985)(explaining that the government has a "substantial interest in protecting sensitive sources and methods of gathering information"); *United State v. Yunis*, 867 F.2d 617, 623 (D.C.Cir.1989) (holding that government's interest in protecting details about means of intercepting communications outweighed defendant's right to disclosure).

Third, the defense's position runs counter to their own previous interpretation of the Protective Order. Rather than refusing to reveal the identities of the individuals who initially would have access to the classified information, the defense openly identified the names of the individuals who needed access to the classified information. *See Protective Order*, Para. 7 (stating that "[t]he defendant's counsel, James Wyda and Deborah Boardman, and their investigator and administrative assistant, William Kanwisher and Rosemary Blaylock respectively, shall be given access to . . . "). Nothing changed between the defense's consent to

the entry of the Protective Order and today that should now cause the defense to adopt a completely contrary interpretation of the Order.[2]

Finally, the defense inexplicably has elected to adopt an interpretation of the Protective Order that will slow down the pace of discovery and the review of classified information. To date, the United States has been more generous in its release of highly classified information into the defense SCIF because it has been able to perform an initial "need to know" assessment in accordance with Executive Order 13,526 and the prevailing law *before* access. If the defense now believes that they can provide any individual access to classified information without revealing the identity of that individual to the United States first, then this could have a profound impact upon discovery going forward.

In conclusion, the United States respectfully requests that the Court order the defense to disclose the identities of its two proposed defense experts so that the parties can resume the orderly and expeditious review of discovery in this case, thus ensuring the viability of the March 21st, 2011 trial date.

[2]If the defense somehow believes that MOUs can be provided to a "walled-off" unit within the Department, they are sadly mistaken. First, such a concept was never discussed when the parties negotiated and consented to the Protective Order. Second, a "walled-off" unit would be no better off than the Court in making the "need to know" assessment. Unknowledgeable about the full scope and nature of the highly classified information produced to date, a "walled-off" unit would be ill-equipped to make the initial "need to know" assessment.

Respectfully submitted this   19th   day of October, 2010.

                              For the United States:

                              /s/ William M. Welch II
                              Senior Litigation Counsel
                              United States Department of Justice
                              300 State Street, Suite 230
                              Springfield, MA 01105
                              413-785-0111 (direct)
                              William.Welch3@usdoj.gov

                              John P. Pearson
                              Trial Attorney, Public Integrity Section
                              United States Department of Justice
                              1400 New York Avenue, NW, Suite 12100
                              Washington, DC  20005
                              202-307-2281 (direct)
                              John.Pearson@usdoj.gov

**CERTIFICATE OF SERVICE**

      I hereby certify that I have caused an electronic copy of the foregoing motion to be served via ECF upon James Wyda and Deborah Boardman, counsel for defendant Drake.

                      /s/ William M. Welch II
                      Senior Litigation Counsel
                      United States Department of Justice