IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|   |   |
|---|---|
| THE UNITED STATES OF AMERICA | * |
| v. | *   Criminal No.: RDB-10-0181 |
| THOMAS ANDREWS DRAKE | * |
|   | * |

\* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF MOTION FOR
ORDER AUTHORIZING DEFENSE EXPERTS' ACCESS
TO CLASSIFIED INFORMATION AND IN RESPONSE TO GOVERNMENT'S
MOTION FOR DISCLOSURE OF EXPERTS' NAMES AND GOVERNMENT'S
MOTION TO AMEND ITS REQUEST FOR DISCLOSURE OF EXPERTS' NAMES**

The defendant, Thomas Andrews Drake, through undersigned counsel, respectfully submits this memorandum in support of his Motion for an Order Authorizing Defense Experts' Access to Classified Information (Motion for Experts' Access) [Docket No. 24] and in response to (i) the United States' Motion for An Order Requiring the Disclosure of the Names of the Two Proposed Defense Experts So That The United States Can Perform Its "Need To Know" Assessment (Motion for Disclosure) [Docket No. 25] and (ii) the United State's Motion to Amend Its Request For An Order to Disclose The Names of The Two Proposed Defense Experts (Motion to Amend) [Docket No. 30].

In its recently-filed Motion to Amend, the government has withdrawn its position that it must know the identities of the defendant's proposed experts before the "need to know" assessment and has conceded that the experts do, in fact, have a "need to know" certain classified information to assist the defense. However, the government persists in its argument that it is entitled to know the proposed experts' names before they may have access to classified information (and hence before the appropriate time for expert witness disclosures). Citing

Paragraph 18 of the June 28, 2010 Protective Order Regarding Classified Information ("Protective Order"), the government claims that service of the proposed experts' signed Memoranda of Understanding ("MOU") on the United States is a "condition precedent" to their access to any classified discovery. The government is wrong.

As discussed below, the government's argument is inconsistent with the purpose of the Protective Order and is incorrect under the Order's plain language. Under Paragraph 18, the only condition precedent to the experts' access to classified information is the filing of the executed MOUs with the Court and the Court Security Officer. Contrary to the government's contention, Paragraph 18 does not require, as a condition precedent to access, service of the MOUs upon the government. Left with no textual support for its position, the government has no legitimate reason to demand a copy of the executed MOUs. The Federal Rules do not require their disclosure. The Classified Information Procedures Act (CIPA) does not require disclosure. Disclosure is not required to effectuate the purpose of the Protective Order. The government's claim of entitlement to MOUs bearing the names of the defense's consulting experts' names is a transparent attempt to gain an unfair tactical advantage over the defense. Disclosure of expert witness names is required only if the defense decides to designate them as testifying experts under Rule 16 of the Federal Rules of Criminal Procedure. Forcing the defense to disclose their names any earlier would unfairly and incurably prejudice the defendant. If the defendant elects to call them as testifying expert witnesses, the defense will comply with Rule 16's disclosure requirements. But unless and until that decision is made, the identity of the defendant's consulting expert witnesses should not be disclosed to the government.

**Background**

Mr. Drake has been charged in a ten-count indictment with five counts of willful retention of national defense information in violation of 18 U.S.C. § 793(e); one count of obstruction of justice in violation of 18 U.S.C. § 1519; and four counts of making false statements in violation of 18 U.S.C. § 1001(a).  Trial is scheduled for March 21, 2011.[1]

On October 12, 2010, the defendant filed his Motion for Experts' Access, requesting an Order from the Court granting his two proposed experts access to classified information and authorizing the Court Security Officer, Christine Gunning, to conduct their background investigation for the purpose of obtaining their security clearances.  A week later, the government filed its Motion for Disclosure, insisting that the United States, not the Court, makes the "need to know" determination for expert witnesses and that before the United States can make the "need to know" determination, it must know the identities of the proposed experts. The defense, in response to an inquiry from the Court, advised that it disagreed with the government's position, that the Court, not the United States, makes the "need to know" determination, and that, in any event, the United States was not entitled to know the names of the proposed experts.  On October 21, the Court held an on-the-record conference call with counsel to discuss the matter.  At the end of the call, the Court ordered the parties to submit briefing on whether the government is entitled to know the names of the defendant's proposed experts before the "need to know" assessment and whether, under Paragraph 18, the defense must serve on the government executed MOUs with the experts' names on them, thereby revealing their

---

[1]   A summary of the indictment, an overview of discovery, and a discussion of the Protective Order are set forth in the Defendant's Motion for Experts' Access.  For the sake of brevity, they will not be reiterated here.

identities to the government before they access the classified discovery. A hearing was scheduled for November 29, 2010.[2]

On October 28, the government filed its Motion to Amend, withdrawing its argument that the United States must know the identities of the proposed experts before the "need to know" assessment and agreeing that the proposed defense experts do have a "need to know" certain classified information. The government, however, persists in its argument that, under Paragraph 18 of the Protective Order, the defendant must serve upon the government a copy of the experts' signed MOU before they may have access to classified information. This brief will address that discrete issue.[3]

## Argument

I.  **The Protective Order Does Not Require Disclosure of the Names of Defendants' Proposed Experts to the Government Before They May Access Classified Information.**

    A.  **The Purpose of the Protective Order and MOU is To Protect Classified Information.**

The purpose of the Protective Order is "to prevent the unauthorized disclosure or dissemination of classified national security information and documents." Protective Order at 1.

---

[2] On October 22, the day after the conference call, the defendant moved for an Order authorizing the commencement of the experts' background investigation so that the security clearance process could proceed during the briefing schedule. The government did not oppose the motion, and the Court ordered the background investigation on October 26.

[3] Since the issues before the Court have been narrowed by the government's Motion to Amend, the defendant will not address in this brief all of ill-conceived and incorrect arguments in the government's Motion for Disclosure, whose sole support was flowery rhetoric that is irrelevant to the issues at hand. The government's wise decision to withdraw its demand for the proposed experts's names before the "need to know" assessment and its concession that there is a "need to know" is *per se* evidence that the defendant's arguments were not, as the government described them, "incredibl[e]," "plain silly," and lacking "common sense." Motion for Disclosure, at 2, 6.

To that end, the Protective Order establishes procedures for the "storage, handling, and control" of classified information. *Id.* ¶ 1. The Order, for example, designates a Court Security Officer to facilitate the storage, handling, transfer, and use of classified information and outlines procedures for classified filings. *Id.* ¶¶ 5, 9, 10. Of particular relevance here, the Protective Order establishes who may have access to classified information and under what circumstances. *See id.* ¶¶ 7, 12, 13, 14 & 18. To ensure that those given access to classified information comply with the terms of the Protective Order, they are required to execute a Memorandum of Understanding. *See id.* ¶ 12. The purpose of the MOU is to ensure that individuals granted access to classified information certify that they have read, understand, and agree to comply with and be bound by the terms of the Protective Order. *See, e.g,* Docket No. 26 (correspondence from counsel enclosing executed MOUs).

### B. Paragraph 18 Does Not Compel Disclosure of the Proposed Experts Identities to the Government Before They Access Classified Information.

The government's argument that its receipt of the executed MOUs is a "condition precedent to [the experts'] access" is incorrect and belied by the plain language of Paragraph 18. *See* Motion to Amend, at 2. That paragraph states, in relevant part:

> The defendant, counsel for the defendant, and any other individuals who will be provided access to classified information, shall execute the Memorandum of Understanding described in Paragraph 12 of this Order, and counsel for the defendant shall file executed originals of such signed documents with the Court and the Court Security Officer, and serve an executed original upon the United States. The execution and filing of the Memorandum of Understanding is a condition precedent for the defendant, counsel for the defendant, or any other person assisting the defense, to have access to classified information.

*See* Protective Order ¶ 18. Under the plain language of Paragraph 18, the MOU must be executed and "filed" with the Court and the Court Security Officer and "served" upon the United States. Notably, the MOU is not "filed" with the United States; it is "served" upon the United

5

States. This distinction is significant. The Order states that the "execution and filing" of the MOU is a "condition precedent" to access to classified information. It does not state that "service" upon the United States is a condition precedent to access. Thus, the only condition precedents to the defense experts' access to classified information are the execution of the MOUs and the filing of those documents with the Court and the Court Security Officer.

Service of an executed MOU on the United States, while technically required by the Protective Order, is not a condition precedent to access to classified information. Moreover, providing the United States with a copy of an executed MOU is not a material term of the Protective Order, and it does nothing to advance the Protective Order's goal of protecting classified information. Simply put, there is no reason why the government must have a copy of the executed MOUs. The government's position here (and in its Motion for Disclosure) is largely dismissive of the role of the Court and the Court Security Officer in the "need to know" assessment and the security clearance process. Certainly, the government would not dispute that the Court and the experienced Court Security Officer can be trusted to store and maintain the executed MOUs and produce them in the event of an alleged breach of the Protective Order. With the MOUs securely in the possession of impeccably reliable members of the judicial and executive branches, the prosecution should have no cause for concern that the documents were not signed or that they will be lost.[4]

---

[4] Defense counsel has consulted with Court Security Officer, Christine Gunning, about her experience in similar cases. According to Ms. Gunning, the language of Protective Orders varies from case to case. She advised that some Protective Orders do not require the defendant to serve MOUs on counsel for the government, and she knows of no reason why the defense in this case must serve executed MOUs upon the government.

### C. If the Court Requires Service of the MOUs on the Government, They Should be Served on a "Walled-Off" Government Attorney.

If the Court determines that the government is entitled to a copy of the executed MOUs, the defense should be allowed to serve a copy on a Department of Justice attorney who is not counsel of record and who is "walled-off" from this case. Equitable remedies such as this one are routine among trial judges presiding over classified cases, who often must "fashion creative solutions" to protect the defendant's right to a fair trial. *See United States v. North*, 713 F. Supp. 1452, 1454 (D.D.C. 1989) (stating that Congress expects trial judges presiding over classified cases "to fashion creative solutions in the interests of justice for classified information problems"). *See also U.S. v. Libby*, 429 F. Supp. 2d 18, 22 (D.D.C. 2006) (observing that classified cases requires "creative solutions" to "properly balance the defendant's right to receive a fair trial and the government's need to protect classified information").

The equitable remedy sought here is actually supported by the text of the Protective Order. Paragraph 18 requires service of the MOU "upon the United States." It does not require service of the MOU "upon *counsel* for the United States." The absence of "counsel for the United States" from Paragraph 18 is no accident. The government, whose counsel drafted the Protective Order, used that very term in another paragraph of the Protective Order that also addresses service of process. Paragraph 9 states that the Court Security Officer shall "deliver, under seal, to the Court and *counsel for the United States* any pleading or document filed by the defendant that may contain classified information." Protective Order ¶ 9 (emphasis added). The phrase "counsel for the United States" found in Paragraph 9 is not found in Paragraph 18. Because Paragraph 18 states only that "the United States" must be served, the defense should be allowed to serve "the United States" by serving a "walled-off" attorney for the United States

who can assure counsel for the government that the defense experts have, in fact, executed the MOU.[5]

## II. Requiring Disclosure of the Names of Defendant's Proposed Experts Would Prejudice the Defendant and Give the Government an Unfair Advantage.

The dispute over the disclosure of the defendant's experts' names is not academic. If forced to reveal their identities at this preliminary stage, the defendant would suffer real prejudice. The proposed experts are consulting experts whose assistance the defense has sought to evaluate the government's evidence. The defense does not know whether these experts will be helpful. As is often the case, consulting experts may not provide favorable opinions, and the defense may decide against introducing their testimony at trial for that reason or a host of other strategic reasons. In non-classified cases, consulting experts are routinely utilized by defense counsel to prepare for trial, and their existence and identities are rarely, if ever, revealed to the government if the defense decides not to use them at trial. There are good reasons for the secrecy. First, if the government knows the names of non-testifying experts, its counsel may investigate their background, experience, and expertise, which will provide the government with ill-deserved insight into defense counsel's trial strategy and thought processes. Second, if the government knows the experts' names and knows the defense has not identified them as testifying experts under Rule 16, there would be nothing to prevent the government from contacting the experts, asking them questions about their opinions or discussions with counsel, issuing subpoenas for their work product, or calling them as witnesses in their case-in-chief. The

---

[5]   In its Motion for Disclosure, the government objected to the use of a "walled-off" attorney because "a 'walled-off' unit would be ill-equipped to make the initial 'need to know' assessment." Motion for Disclosure, at 8 n.2. Now that the government has conceded that the experts have a "need to know," its only complaint against a "walled-off" attorney has been rendered irrelevant by its concession.

specter of that possibility should not be permitted to arise in this case simply because it involves classified information.  *See U.S. v. Poindexter*, 698 F. Supp. 316, 320 (D.D.C. 1988) (recognizing that Congress "made clear that in any case involving classified information the defendant should not stand in a worse position because of such information than he would have if there were no such statutory procedures"); *United States v. Libby*, 467 F. Supp. 2d 20, 24 (D.D.C. 2006) (citing Congressional presumption that "the defendant should not stand in a worse position, because of the fact that classified information is involved, than he would without this act").  *See also United States v. Moussaoui*, 382 F.3d 453, 477 (4th Cir. 2004) ("CIPA thus enjoins district courts to seek a solution that neither disadvantages the defendant nor penalizes the government (and the public) for protecting classified information that may be vital to national security.").

   The government's position drips with irony.  On the one hand, the government seeks the identity of the defense's consulting experts before the experts are able to review any evidence, but on the other hand, the government has not made any Rule 16 disclosures, and certainly has not revealed the identity of any consulting or testifying experts, even though it has had that information since at least April when the indictment was issued.  It would be patently unfair to require the defense to disclose the identity of consulting expert witnesses whose opinions are not yet known to the defense, when the government has known the identity and opinions of its expert witnesses for more than six months.

**III.    The Court Should Revise the Protective Order to Ensure the Defendant's Right to a Fair Trial.**

   The Protective Order is an Order of the Court that may be revised by the Court.  The Order was entered pursuant to "the general supervisory authority of the Court," and the Order

explicitly states that it "may be modified from time to time by further order of the Court acting under its inherent supervisory authority to ensure a fair and expeditious trial." Protective Order ¶ 1. The matter before the Court calls for a modification. In order to avoid unfair prejudice to the defendant, the Court should revise the Protective Order by deleting the following language from Paragraph 18: "and serve an executed original upon the United States." This minor revision would protect the defendant's right to a fair trial without prejudicing the United States or jeopardizing the classified information that the Protective Order aims to protect.

### IV. The Proposed Experts Need Access to Significant Portions of the Classified Discovery.

In its Motion to Amend, the government agrees that the proposed experts may have access to Mr. Drake's two personal computers, *see* Motion to Amend, at 1-2, but it does not address the defendant's argument that the experts need access to other electronic and paper discovery to conduct their analysis. *See* Motion for Experts' Access, at 4. The government may have overlooked this issue. In any event, the breadth of the classified information to which the experts need access to assist the defense extends beyond Mr. Drake's two personal computers. If the government contests this issue, it should be addressed *ex parte* with the Court. The defense already has revealed more trial strategy than it believes it must by sharing its Motion for Experts' Access with the government, and it reserves the right to file similar motions *ex parte* in the future. For purposes of this dispute, if the government contests that the experts need to review classified information other than the information on Mr. Drake's two personal computers, the Court should give the defense an opportunity to present argument on the issue in an *ex parte* manner.

## Conclusion

For all the foregoing reasons, the defendant respectfully requests that the Court grant the proposed defense experts access to classified information without requiring the defense to disclose their names to the government.

Respectfully submitted,

/S/

_____
JAMES WYDA, #025298
Federal Public Defender
DEBORAH L. BOARDMAN, #28655
Assistant Federal Public Defender
Office of the Federal Public Defender
100 South Charles Street
Tower II, 9th Floor
Baltimore, Maryland 21201
Phone: 410-962-3962
Fax: 410-962-0872
Email: jim_wyda@fd.org
           deborah_boardman@fd.org