**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **Case No.  10 CR 00181 RDB** |
| | * | |
| **THOMAS ANDREWS DRAKE,** | * | |
| | * | |
| **Defendant.** | * | |
| | ****** | |

**UNITED STATES' RESPONSE TO MEMORANDUM
IN SUPPORT OF MOTION FOR ORDER AUTHORIZING
DEFENSE EXPERTS' ACCESS TO CLASSIFIED INFORMATION**

The United States of America respectfully responds to the defendant's *Memorandum in Support of Motion for Order Authorizing Defense Experts' Access to Classified Information and In Response to Government's Motion for Disclosure of Experts' Names and Government's Motion to Amend Its Request for Disclosure of Experts' Names.* (Dkt. 32)(hereinafter "*Memorandum*").  In short, the defendant's Memorandum should be denied because the plain language and overall purpose of the Protective Order entered by the Court warrant disclosure of the names of the two proposed defense experts.[1]

**I.      The Language Of The Protective Order, When Given Its Plain And Ordinary Meaning And Read As A Whole, And The Overall Purposes Of The Order Require The Disclosure Of The Names Of The Two Proposed Defense Experts.**

As with any agreement or contract, the Order should be "construed in accordance with the

---

[1]The Government does not seek to limit the two proposed defense experts' access to any of the classified or unclassified materials in the SCIF. *See Memorandum*, p. 10.

principles applicable to all contracts." *Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 636 (4th Cir. 2005)(citations omitted). "[W]ords used must be given their ordinary meaning if they are susceptible to such a construction." *Id*.   A court should not "strain to find ambiguities" or "examine certain specific words or provisions in a vacuum, apart from the [document] as a whole." *Id*.   "Contracts are interpreted `as a whole,' and `the terms of the agreement are construed consistent with their usual and ordinary meaning, unless it is apparent that the parties ascribed a special or technical meaning to the words.'" *Gresham v. Lumbermen's Mut. Cas. Co.*, 404 F.3d 253, 260 (4th Cir. 2005)(internal citations omitted).

.       The plain language of the Protective Order explicitly requires the defendant to provide the names of the two proposed defense experts.  The operative verb in Paragraph 18 is "serve." Paragraph 18 of the Protective Order states that

>           any other individuals who will be provided access to classified
>           information, shall execute the Memorandum of Understanding
>           described in paragraph 12 of this Order, and counsel for the
>           defendant shall file executed originals of such signed documents
>           with the Court and the Court Security Officer*, and serve* an
>           executed original upon the United States.  The execution and filing
>           of the Memorandum of Understanding is a condition precedent for
>           the defendant, counsel for the defendant, or any other person
>           assisting the defense, to have access to classified information.

Paragraph 18 uses the present tense of "serve" because "serve" means "to make service upon." *See* http://www.merriam-webster.com/dictionary/serve.  When given its plain and ordinary meaning, "serve" or "service" occurs contemporaneous with a "filing."  Notably, Paragraph 18 does not utilize the future tense of  "serve" like the immediate, preceding clause "shall file."

        The United States' reading of Paragraph 18 finds further support from the Protective Order as a whole.  First, Paragraph 14, which is captioned "Access to Classified Information,"

2

states that "any later cleared . . . witnesses accompanied by counsel for the defendant" shall only

have access to classified information as long as certain procedures enumerated in subparagraphs

(a) through (i) have been met.  More specifically, subparagraph (f) states in pertinent part that:

> The defense shall not disclose, without prior approval of the Court,
> the contents of any classified documents or information to any
> person not named in this Order except to the Court, Court
> personnel, and the attorneys for the United States identified by the
> Court Security Officer as having the appropriate clearances and the
> need to know.  *Counsel for the United States shall be given an
> opportunity to be heard in response to any defense request for
> disclosure to a person not named in this Order.*  Any person
> approved by the Court for disclosure under this paragraph shall be
> required to obtain the appropriate security clearance, to sign and
> submit to the Court the Memorandum of Understanding appended
> to this Order, and to comply with all the terms and conditions of
> this Order.  If preparation of the defense requires that classified
> information be disclosed to persons not named in this Order, the
> Department of Justice shall promptly seek to obtain security
> clearances for them at the request of defense counsel.

Paragraph 14 clearly gives the United States the right to consent or object to any defense request

for disclosure to a person not named in the Protective Order.  In order to have a meaningful

opportunity "to be heard," counsel for the United States need to know the names of those for

whom the defense seeks access.  Otherwise, government counsel are operating in a vacuum.

Paragraph 14 also explains why the defendant's proposal that the executed MOUs go to a

"walled-off" government attorney is meritless.  The Protective Order endows "Counsel for the

United States" with the duty and responsibility of addressing the Court on this issue, not an

attorney with no connection to the case.

Having staked out the position that the United States has no role in the "need to know"

assessment, *see Memorandum*, pg. 3 (stating that the "Court, not the United States, makes the

`need to know' determination"), the defendant cannot very well argue that the United States has

no right to know the names of the two proposed defense experts.  Such a reading would render

this portion of Paragraph 14(f) and the "serve" prong of Paragraph 18 without meaning.  The

only way that the United State can object to any defense request for disclosure to "a person not

named in the Protective Order" is to know the names of the person in the first instance.

Although the defendant concedes that disclosure is "technically required by the Protective

Order," *Memorandum*, p. 6, the United States' interpretation of the Protective Order finds further

support in the overall purposes and objectives of the Protective Order.  As the defendant

concedes, the purpose of the Protective Order is "to prevent the unauthorized disclosure or

dissemination of classified national security information and documents " and "to protect

national security."  There is no more compelling "governmental interest . . . than the security of

the Nation."  *Haig v. Agee*, 453 U.S. 280, 307 (1981).  As such, protecting "sensitive sources and

methods of gathering information" and the "confidentiality so essential to the effective operation

of our foreign intelligence service" serves that important compelling government interest. *United

States v. Abu Ali*, 528 F.3d 210, 247 (4th Cir. 2008) (citations omitted).

In criminal prosecutions involving classified matters, other information may exist that

may cause a court to decide not to authorize access of classified information to a particular

person who may satisfy the appropriate security clearances and has a "need to know."  Paragraph

5 of the *Security Procedures Established Pursuant to PL 96-456, 94 Stat. 2025, by the Chief

Justice of the United States for the Protection of Classified Information* states

> the government may obtain information by any lawful means
> concerning the trustworthiness of persons associated with the
> defense and may bring such information to the attention of the

4

court for the court's consideration in framing an appropriate
protective order pursuant to Section 3 of the Act.

The United States obviously cannot discharge its obligation under this Paragraph or its

overarching responsibility of protecting national security and preventing the unauthorized

disclosure and dissemination of classified information without knowing the names of the two

proposed defense experts.

In this particular case, the United States has every right to be concerned about who the

two proposed defense experts may be.  For example, the defendant worked for various NSA

contractors and NSA itself for approximately twenty years, and many of his colleagues have

moved into private industry and presumably could qualify as computer experts.  The United

States knows of at least two retired NSA employees who discussed classified information with

the defendant on unclassified systems, and at least one former NSA contrractor who disclosed

classified information to the defendant when the defendant had no "need to know."  Without

knowing the names of the two proposed defense experts, the United States would be unable to

offer the Court information highly relevant to the issue of their "trustworthiness" to handle

classified information.  Because the two NSA employees had already been retired when they

discussed classified information on unclassified systems with the defendant, it is highly unlikely

that the Court Security Officer's background checks would reveal this information.[2]

It is hardly fair or accurate to term the United States' position "dismissive", *see*

*Memorandum*, pg. 6, of the Court or the Court Security Officer when the Chief Justice of the

---

[2]A "walled-off" government attorney is no solution.  The "walled-off" government
attorney would have no idea what classified information exists within the SCIF nor would a
"walled-off" government attorney be familiar with the identities of potentially "untrustworthy"
recipients of classified information.

United States specifically afforded the United States the right to provide the Court additional information about a person's "trustworthiness."[3] The issue is not about whether the Court or the Court Security Officer can store and maintain executed MOUs. The issue is ensuring that the Court make as informed a decision as possible about authorizing access to classified information and preventing the disclosure of classified information to "untrustworthy" individuals.

Finally, knowing the names of the two proposed defense experts greatly assists in identifying the possible unauthorized disclosure and dissemination of classified information. The various intelligence agencies routinely review mass media publications for possible unauthorized disclosures of classified information. Not knowing the name of an identified source thwarts the overall purpose and objectives of this Protective Order of preventing both the inadvertent and the intentional disclosures of classified information.

## II.    The Disclosure Of The Names Of The Two Proposed Defense Experts Results In No Prejudice.

Disclosure of the names of the two proposed defense experts will result in no prejudice or any unfair advantage to the United States. The best evidence of that fact is the defendant's inability to articulate any real prejudice.

The defendant's sole allegations of prejudice are that the two proposed experts are "consulting experts," and that disclosure of their names would allow the government "insight into defense counsel's trial strategy and thought processes." *Memorandum*, p. 8. However, the fact that the proposed experts are consulting experts is of no moment. All of the discussions and conversations between these experts and the defense would be protected by attorney-client and

---

[3]The suggestion that the United States is somehow denigrating the roles of the Court and the Court Security Officer is disgraceful.

6

work-product privileges.  The United States has no interest in contacting non-witnesses and violating ethical rules by attempting to invade attorney-client and work-product protected conversations.  Moreover, since the United States would not be able to gain access to those discussions, knowing the names certainly would not chill any such conversations.

Nor would disclosure of the names shed additional light on the defendant's trial strategy. That these experts have expertise in computer forensics is hardly surprising.  During the scheduling conference on July 26, 2010, the defense disclosed to the United States and the Court that they may retain computer forensic experts as a basis for their argument that the trial should be set in 2011.  It is hard to fathom how knowing the names of the two proposed defense experts would provide any insight into trial strategies or thought processes.  Unless the two proposed defense experts are in the habit of posting their client's thought processes on their business websites, this argument lacks any merit.

The fact that the defense does not have to disclose the names of consulting experts in non-classified cases misses the point.  Cases involving classified information are different.  The Court, through CIPA, must balance the important government interests in national security and preserving and protecting the disclosure of "'classified information in a way that does not impair the defendant's right to a fair trial.' " *United States v. Aref*, 533 F.3d 72, 78 (2nd Cir. 2008) (quoting *United States v. O'Hara,* 301 F.3d 563, 568 (7th Cir.2002)).  The balance here is between ensuring that "trustworthy" individuals obtain access to classified information versus the disclosure of two names that amounts to no prejudice to the defendant.  Given the substantial government interests at stake and the lack of any prejudice to the defendant, that balance easily tips in the United States' favor.

7

Finally, altering or amending the Protective Order only exacerbates the problem. The fact remains that if the defendant can move *ex parte* to allow individuals – presumably both experts and fact witnesses under the defendant's proposal – access to classified information without the United States ever learning the names of those individuals, then the Court potentially could be authorizing access to individuals who lack the trustworthiness to handle classified information. Once again, there are potential defense fact witnesses who, because they left government service without any adverse security clearance issues or findings, may pass background checks, but who the United States knows later discussed classified information on unclassified systems with the defendant, thus making them "untrustworthy" candidates for access to classified information.

After the United States and the defendant carefully and jointly negotiated the terms of the Protective Order, to allow the defendant to change its terms so drastically is not just unfair, but also injurious to the fundamental purposes and objectives of the Protective Order itself.

Respectfully submitted this   12th   day of November, 2010.

<div style="margin-left:40%;">

For the United States:

/s/ William M. Welch II
Senior Litigation Counsel
United States Department of Justice
300 State Street, Suite 230
Springfield, MA 01105
413-785-0111 (direct)
William.Welch3@usdoj.gov

John P. Pearson
Trial Attorney, Public Integrity Section
United States Department of Justice
1400 New York Avenue, NW, Suite 12100
Washington, DC  20005
202-307-2281 (direct)
John.Pearson@usdoj.gov

</div>

## CERTIFICATE OF SERVICE

I hereby certify that I have caused an electronic copy of the foregoing motion to be served via ECF upon James Wyda and Deborah Boardman, counsel for defendant Drake.


/s/ William M. Welch II
Senior Litigation Counsel
United States Department of Justice