IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| THE UNITED STATES OF AMERICA | * | |
| v. | * | Criminal No.: RDB-10-0181 |
| THOMAS ANDREWS DRAKE | * | |
|  | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR
ORDER AUTHORIZING DEFENSE EXPERTS' ACCESS
TO CLASSIFIED INFORMATION**

The defendant, Thomas Andrews Drake, through undersigned counsel, respectfully

submits this reply in support of his Motion for an Order Authorizing Defense Experts' Access to

Classified Information [Docket No. 24] and in response to the United States' Response to the

Defendant's Memorandum in Support of Motion for Order Authorizing Defense Experts' Access

to Classified Information ("Response") [Docket No. 33]. [1]

The government's Response reveals the true motives behind its premature demand for

the names of the defendant's expert witnesses:  the United States, under the guise of protecting

classified information, is attempting to gain an unfair advantage over Mr. Drake.  This cannot

stand.  The government's proffered concerns about ensuring the "trustworthiness" of individuals

given access to classified information can easily be assuaged without disclosing the names of the

experts to government counsel.

---

[1]     As the Court is aware, the defendant filed a Memorandum in Support of His Motion for
an Order Authorizing Defense Experts' Access to Classified Information and in Response to the
United States' Motion for An Order Requiring the Disclosure of the Names of the Two Proposed
Defense Experts So That The United States Can Perform Its "Need To Know" Assessment and
the United States' Motion to Amend Its Request For An Order to Disclose The Names of The
Two Proposed Defense Experts.  The defendant's Memorandum [Docket No. 32] addresses and
rejects the vast majority of the arguments in the government's Response.  The defendant,
therefore, will not burden the Court by repeating those arguments in this reply brief.

**I.      The Text and Purpose of the Protective Order Do Not Require Disclosure of Expert Witness Names to the Government.**

Grasping for elusive textual support in the Protective Order for its position, the government makes a number of unsupported arguments that the language and purpose of the Protective Order require the defendant to disclose the names of his consulting experts. *See* Response at 1-6. None of the government's arguments has any merit, and most of them were discussed and proven wrong in the defendant's Memorandum. *See* Memorandum at 4-8. Although the arguments in the Memorandum will not be repeated here, some matters raised by the government's Response must be addressed.

First, the government has conceded, as it must, that under the plain language of the Protective Order, service of the MOU on the government is *not* a condition precedent to the experts' access to classified information and that the only conditions precedent to access are the execution of the MOU and the filing of the MOU with the Court and the Court Security Officer. *See* Memorandum at 5-6. This concession is significant because not only does it prove that the defendant's interpretation of the Protective Order is correct, but it also has forced the government to abandon its initial argument for disclosure of the experts' names and conjure up other (meritless) arguments to support its position. *See* United States' Motion to Amend its Request for an Order to Disclose the Names of the Two Proposed Defense Experts [Docket No. 30] at 2 (relying solely on argument that service of MOU on the United States is a "condition precedent" to access).

Second, in its Response, the government suggests that the Protective Order is a binding civil contract negotiated at arms length by two parties on equal footing who must live with the consequences of the contractual language, even if an adverse consequence was unforseen or

inadvertently undetected at the outset.  That is not the case here.  In point of fact, the Protective

Order is an Order of the Court in a federal criminal prosecution in which the defendant is

presumed innocent until proven guilty and has a right to a fair trial under the Sixth Amendment.

Recognizing the defendant's rights, the Protective Order explicitly states that it "may be

modified from time to time by further order of the Court acting under its inherent supervisory

authority to ensure a fair and expeditious trial."  Protective Order ¶ 1.  The government, for its

part, completely ignores the fact that the Protective Order allows for periodic modifications by

the Court to ensure a fair trial.

Finally, the government argues that Paragraph 14(f) requires disclosure of the

defendant's experts' names.  The government is incorrect.  Nothing in Paragraph 14 requires

disclosure.  The prosecution relies on one sentence in Paragraph 14(f):  "Counsel for the United

States shall be given an opportunity to be heard in response to any defense request for disclosure

to a person not named in this Order."  Protective Order ¶ 14(f).  Government counsel claims that

they themselves must know the names of the experts in order for the government to have a

meaningful opportunity to be heard; otherwise, "government counsel are operating in a

vacuum."  *See* Response at 3.  The government and its counsel are not operating in a vacuum.  In

fact, the United States already has agreed that the computer experts have a "need to know" the

classified information in this case.  That decision was made based on the experts' area of

expertise, which is the only information arguably needed to respond to the defendant's request.

The names of the experts are irrelevant.  For example, if the defendant wanted a fingerprint

expert to have access to the classified information, there might be reason for the government to

object since this case does not involve fingerprint evidence.  The *names* of the proposed

fingerprint expert, however, would not be relevant.  Similarly, the *names* of the computer experts

are not relevant to the government's response here.

In sum, the Protective Order's text and purpose do not require the defendant to disclose his proposed experts' names to the prosecution.

## II.    The Government's Interest in Protecting Classified Information Does Not Necessitate Disclosure of the Experts' Names.

The government claims that it must know the identity of the experts to ensure their "trustworthiness" and to prevent the unauthorized disclosure and dissemination of classified information.  Response at 5, 7.  It claims that "it has every right to be concerned about who the two proposed experts may be [because] . . . the defendant worked for various NSA contractors and NSA itself for twenty years, and many of his colleagues have moved into private industry and presumably could qualify as computer experts." *Id.* at 5.[2]  The government also claims that "[w]ithout knowing the names of the two proposed defense experts, the United States would be unable to offer the Court information highly relevant to the issue of their 'trustworthiness' to handle classified information." *Id.*  These arguments cannot withstand scrutiny and should be rejected for several reasons.

First, the highly experienced Court Security Officer, Christine Gunning, an employee of the United States Department of Justice, has overseen countless background investigations in classified cases, including investigations into proposed experts, and she and her staff have been dutifully entrusted by the Executive Branch to determine an individual's trustworthiness.  In fact, paragraph 2 of the *Security Procedures Established Pursuant to PL 96-456, 94 Stat. 2025, by the*

---

[2]    The government also alleges that Mr. Drake discussed classified information on an unclassified system with two retired NSA employees and that a former NSA contractor improperly disclosed classified information to him.  *See* Response at 5.  These allegations are just that, unproven allegations, and they are irrelevant to this dispute.  To the extent the allegations are introduced at trial, the government will have the burden of proving them true.

*Chief Justice of the United States for the Protection of Classified Information ("Security*

*Procedures")* – a document cited by the government – establishes the role of the Court Security

Officer in classified cases:

> Court Security Officer.  In any proceeding in a criminal case
> or appeal therefrom in which classified information is within, or
> reasonably expected to be within, the custody of the court, the
> court shall designate a court security officer.  The Attorney
> General or the Department of Justice Security Officer, with the
> concurrence of the head of the agency or agencies from which the
> classified information originates, or their representatives, shall
> recommend to the court persons qualified to serve as court security
> officer.  The court security officer shall be selected from among
> those persons so recommended.
>
> The court security officer shall be an individual with demonstrated
> competence in security matters, and shall, prior to designation, have
> been certified to the court in writing by the Department of Justice
> Security Officer as cleared for the level and category of classified
> information that will be involved.  The court security officer may be
> an employee of the Executive Branch of the Government detailed to
> the court for this purpose.  One or more alternate court security officers,
> who have been recommended and cleared in the manner specified
> above, may be designated by the court as required.
>
> The court security officer shall be responsible to the court for
> document, physical, personnel and communications security, and
> shall take measures reasonably necessary to fulfill these
> responsibilities.  The court security officer shall notify the
> court and the Department of Justice Security Officer of any actual,
> attempted, or potential violation of security procedures.

This provision makes clear that the Chief Justice of the United States entrusted the Court

Security Officer with the duty to protect classified information from unauthorized disclosure and

dissemination in criminal cases.  Nothing in the *Security Procedures* gives government counsel

the right to the names of a defendant's experts.  Moreover, the reference to "the government" in

paragraph 5 of the *Security Procedures*, which the United States cites in its Response, obviously

refers to the Court Security Officer, not the federal prosecutors in this case.  It is the Court

Security Officer, acting on behalf of "the government," who "may obtain information by any

lawful means concerning the trustworthiness of persons associated with the defense . . ."

*Security Procedures*, ¶ 5.  That is exactly what Ms. Gunning and her staff do during the

background investigations in this and every other classified case.[3]

Second, the government's argument suggests that Mr. Drake's counsel would attempt to

give Mr. Drake's former colleagues access to classified information under the pretense of

identifying them as forensic computer experts.  Such a suggestion unfairly calls into question

counsel's integrity.  It also calls into question counsel's aptitude.  No defense attorney with any

experience would retain an expert witness whom the government alleges has a personal or

professional relationship with the defendant.  If that unwise strategic decision were made,

counsel and the defendant likely would suffer the consequences in a pretrial motion or on cross-

examination at trial.  Rest assured, such a decision has not been made here.  Neither of the

proposed defense experts have a personal or professional relationship with Mr. Drake.  They

have never met him or spoken with him.  Counsel's representation on this matter should be more

than sufficient to allay the prosecution's concerns.

Third, if the government does not believe counsel's representation that these experts have

no connection to Mr. Drake, counsel for the United States could provide the Court with the

---

[3]     The government argues that "knowing the names of the two proposed defense experts
greatly assists in identifying possible unauthorized disclosure and dissemination of classified
information."  Response at 6.  It also argues that the "various intelligence agencies routinely
review mass media publications for possible unauthorized disclosure of classified information."
*Id.*  These arguments are red herrings.  In the unlikely event an intelligence agency suspects that
someone associated with the defense team in this case has improperly disclosed or disseminated
classified information, the government (and not necessarily government counsel in this case)
could, at that point, request a copy of the signed MOUs as part of its investigation.  Unless and
until that happens, the MOUs will be safely stored with the Court Security Officer, a trusted
employee of the Executive Branch.

names of the individuals whom the government claims it has reason to believe would be untrustworthy, and the Court, after an *in camera* review, could confirm for counsel that the proposed experts are not among them.

## III.   The Defendant Would Suffer Prejudice if Required to Disclose the Experts' Names.

As an initial matter, the defendant should not have to establish prejudice to avoid having to disclose the names of his consulting experts before Rule 16 disclosures are required. The fact that this case involves classified materials should not alter the traditional rules on non-testifying and testifying experts in criminal cases.

In any event, the defendant would, in fact, be prejudiced if he were required to disclose his consulting experts' names. In addition to the reasons stated in the defendant's Memorandum, if the experts' names were revealed before Rule 16 requires, the government would have months of extra, undeserved time to investigate their backgrounds. The extra time for investigation might reveal vulnerabilities in the experts' opinions or experience that might not have otherwise been found. In addition, the government would have more time to prepare cross-examinations for the experts and to consult with its own forensic computer experts (without ever having to reveal their names to the defense). The defense, on the other hand, does not know the names of any government expert witness. The defendant and his counsel must wait for the government to make its expert disclosures before they can begin to attack the government's case. That inequity would be unfair in a civil case involving dueling expert witnesses, but the inequity in this criminal case, where the defendant is presumed innocent and the government bears the burden of proof, gives rise to constitutional problems. Those problems can easily be avoided, however, if the Court does not require the defendant to disclose the experts' names to the government.

**Conclusion**

For all the foregoing reasons, the defendant respectfully requests that the Court grant the proposed defense experts access to classified information without requiring the defense to disclose their names to the government.

Respectfully submitted,

/S/

_____
JAMES WYDA, #025298
Federal Public Defender
DEBORAH L. BOARDMAN, #28655
Assistant Federal Public Defender
Office of the Federal Public Defender
100 South Charles Street
Tower II, 9th Floor
Baltimore, Maryland 21201
Phone: 410-962-3962
Fax: 410-962-0872
Email: jim_wyda@fd.org
          deborah_boardman@fd.org