# OFFICE OF THE FEDERAL PUBLIC DEFENDER
## DISTRICT OF MARYLAND

NORTHERN DIVISION
TOWER II, 9th FLOOR
100 SOUTH CHARLES STREET
BALTIMORE, MARYLAND  21201-2705
TEL:  (410) 962-3962
FAX:  (410) 962-0872

JAMES WYDA                                                                                    DEBORAH L. BOARDMAN
FEDERAL PUBLIC DEFENDER                                                       ASSISTANT FEDERAL PUBLIC DEFENDER

February 22, 2011

**VIA ECF**

Honorable Richard D. Bennett
United States District Court
for the District of Maryland
101 West Lombard Street
Baltimore, Maryland 21201

> Re:   *United States v. Thomas Drake*
>         Crim. No. RDB-10-0181

Dear Judge Bennett:

I am writing in further support of our February 12, 2011 letter requesting a two-week extension in the deadlines for serving expert disclosures and our Section 5 notice under CIPA [Docket No. 45] and in response to the government's February 15, 2011 letter [Docket No. 46].

Expert Discovery and Section 5 Notice

The government's opposition to our request for a modest extension is unfounded.  We diligently marshaled our consulting experts through the background investigation process.  Due to forces beyond counsel's control, the forensic computer expert's background investigation was not completed until last week.  We understand that the reason for the delay was the amount of time it took the FBI to investigate the expert's foreign travel history.  Surely, the government cannot blame the expert or defense counsel for the delay.  Without missing a beat, counsel arranged for the expert – who does not live in the area and has other professional obligations – to enter the SCIF last week and begin his analysis, which is ongoing.  Without a complete analysis, we cannot possibly be expected to disclose what, if anything, the expert might testify about.

With respect to our classification expert, the government protests to the Court with unclean hands and cannot fairly attribute any delays to the defense.  For its part, the government waited more than seven months after the indictment was issued to make its expert disclosure regarding classification, and that disclosure was made when the parties anticipated a March, not April, trial date.  The government has never explained why it waited so long to make its expert disclosure when it must have made the classification decisions in the disclosure before Mr. Drake

The Honorable Richard D. Bennett
*United States v. Thomas Drake*, RDB-10-0181
February 22, 2011
Page 2

was indicted.  Rather than take responsibility for its belated disclosure, the government suggests that defense counsel has responded to the disclosure too slowly.  That is simply not the case.[1]

The government served us with its expert witness disclosure at the November 29, 2010 hearing.  At the close of the hearing, Mr. Wyda informed the Court that we had just received the government's classification expert disclosure and that we would be searching for our own classification expert.  We wasted no time.  On Saturday, December 18, we emailed government counsel asking for the government's consent to a motion to allow our classification expert access to the classified evidence.  We were advised that the government needed to consult NSA.  On December 21, having not received the government's position, we again emailed government counsel asking if they had heard from NSA because we were trying to move things along with our expert over the holidays.  The government gave its consent to our request a few days before Christmas.  On Monday, December 27, less than a month after we received the government's expert disclosure, we asked the Court for our classification expert's access to the classified information.  The Court granted the request on December 28.  Our expert first entered the SCIF shortly after the New Year.  During his first visit, we had not yet received the classification guides necessary for his review, even though we had requested them on December 23.  In fact, we did not receive the classification guides until the end of January.  Even then, we did not have the complete set of guides, as some of them were not included in the production.  We finally received the missing classification guides last week.

Whether the documents found in Mr. Drake's home are classified is at the heart of this case.  These documents are the key pieces of evidence against him.  Analyzing them with the assistance of an expert is essential to Mr. Drake's defense.  Given the esoteric world of classification, this is a process that should not be rushed.  For these reasons, we request a two-week extension in the expert disclosure deadline.  The government has made no credible claim of prejudice, and there is none.  More importantly, the United States cannot possibly have an interest in limiting Mr. Drake's right and ability to test the government's case and to challenge the central pieces of evidence against him, especially when it has played a significant role in causing the delay.

As for the Section 5 CIPA disclosure deadline, without knowing what our experts might say, we cannot be expected to fully develop a defense to the charges in the case, which is necessary before the defense can provide meaningful notice of classified information that might be revealed at trial.

<u>DOD IG Documents</u>

In its February 15 letter, the government discloses that "most of the hard copy documents

---

[1]     As discussed below, the government's assertion that "[a]s of December 21, 2010, the date of the last status conference, the defendant had not even contemplated the use of a classification expert" is absolutely incorrect.

The Honorable Richard D. Bennett
*United States v. Thomas Drake*, RDB-10-0181
February 22, 2011
Page 3

related to the [DOD IG] audit," including documents that Mr. Drake provided to the DOD IG investigators, "were destroyed before the defendant was charged, pursuant to a standard document destruction policy." This is the first time we have heard that these documents were destroyed. We do not know when they were destroyed, and we know nothing about the "standard document destruction policy" pursuant to which they were destroyed. Furthermore, we have reason to believe that the documents Mr. Drake gave the DOD IG investigators in hard copy, which apparently have been destroyed, are significant in number and different from the documents he provided them electronically.

The government's contention that the DOD IG documents are irrelevant and immaterial to this case is flatly wrong. According to the government's own evidence, at least one of the allegedly classified documents found in Mr. Drake's home was given by Mr. Drake to the two primary DOD IG investigators. In addition, at least one of those investigators was interviewed by the NSA Agent in charge of the investigation about Mr. Drake's participation in the DOD IG investigation. This interview took place in August 2007 – three months before the FBI searched Mr. Drake's home. Thus, the government's own evidence, and its own pre-indictment, investigative actions, establish the relevance of the DOD IG investigation as well as the relevance of the documents that Mr. Drake gave the investigators. This showing of relevance is just a baseline. The defense believes that the DOD IG investigation and the DOD IG documents are relevant for additional reasons that cannot be disclosed to the government without revealing trial strategy. We will wait to discuss this matter with the Court during tomorrow's conference call, but we anticipate filing an *ex parte* motion for discovery that explains the relevance of the DOD IG investigation and the DOD IG documents to this case.

<u>NSA Phone Calls to Mr. Drake</u>

It appears that after we filed our February 12 letter to the Court, the government conducted further investigation into the December 15, 2010 phone calls from an NSA affiliate to Mr. Drake's cell phone. We now understand that one of the calls was made by a former NSA colleague of Mr. Drake. We still do not know who at the NSA affiliate placed the other phone call to Mr. Drake.

The government unfairly suggests that Mr. Drake might have used defense counsel to perpetrate a fraud on the Court. That is categorically untrue. As the government correctly points out, Mr. Drake never spoke with the person who called him from the NSA line in December, and he did not know who made the calls. Naturally concerned that someone from NSA was trying to contact him, he properly reported the mysterious calls to his attorneys, who, in turn, brought the matter to the government's attention. Mr. Drake did not learn the identity of the person who called him until February 14, 2011. If he had known that it was a former colleague attempting to call him in December, we would not have reported the calls to the government or the Court. Now that the government has clarified the source of one of the calls, and even though we do not know who placed the second call, we withdraw our request for discovery on the matter.

The Honorable Richard D. Bennett
*United States v. Thomas Drake*, RDB-10-0181
February 22, 2011
Page 4

We look forward to discussing these matters with the Court tomorrow.

Very truly yours,

/s/

Deborah L. Boardman
Assistant Federal Public Defender

cc:    William Welch, Esq.
       John Pearson, Esq.