**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| v. | * | Criminal No. 10 CR 00181 RDB |
| | * | |
| **THOMAS ANDREWS DRAKE,** | * | |
| | * | |
| Defendant. | * | |
| | ****** | |

**GOVERNMENT'S MOTION IN LIMINE TO EXCLUDE ANY EVIDENCE
OR DEFENSE ATTACKING THE LEGALITY OF THE REGULATORY
SCHEME RELATING TO THE DISCLOSURE OF CLASSIFIED INFORMATION**

The United States of America, by and through William M. Welch II, Senior Litigation Counsel, and John P. Pearson, Trial Attorney, Public Integrity Section, Criminal Division, United States Department of Justice, respectfully moves this Court for an order barring the defense from introducing any evidence, presenting any defense, or making any argument relating to the legality, constitutionality or propriety of the rules and regulations governing the disclosure of classified information, including any opinion that the intelligence community "overclassifies" information.

As grounds, the Supreme Court has specifically prohibited this type of a defense, and, therefore, it is inadmissible under Rule 403. Moreover, this is a illegal document retention case. The rules of NSA are very clear: no one can bring any documents, whether marked as classified or unclassified, home unless expressly approved and cleared by the appropriate NSA officials. Therefore, whether the defendant thought that the classification system was illegal, unfair or overly inclusive is irrelevant because the rules required him in the first instance to seek NSA

1

approval before removing any documents from NSA.

I.      **It Is No Defense In A Criminal Case That The Regulatory Or Statutory Scheme Governing The Disclosure of Classified Information Is Illegal, Unconstitutional, Unfair Or Somehow Defective.**

In *Dennis v. United States*, 384 U.S. 855, 866 (1966), the Supreme Court held that "[i]t is no defense to a charge based upon this sort of enterprise that the statutory scheme sought to be evaded is somehow defective." In *Dennis*, the defendants had been convicted of conspiring to defraud the United States for having submitted false affidavits to the National Labor Relations Board. *Id*. at 857-58. The defendants argued that the Court should reverse their convictions based upon the claim that the underlying statute was unconstitutional. *Id*. at 865.

The Supreme Court rejected that argument, stating that the defendants were "in no position to attack the constitutionality" of the underlying statute. *Id*. at 865. The Court stated that

> [w]hatever might be the result where the constitutionality of a statute is challenged by those who of necessity violate its provisions and seek relief in the courts is not relevant here. This is not such a case. The indictment here alleges an effort to circumvent the law and not to challenge it-a purported compliance with the statute designed to avoid the courts, not to invoke their jurisdiction.

In holding that "[i]t is no defense to a [criminal] charge . . . that the statutory scheme sought to be evaded is somehow defective," the *Dennis* Court reasoned that "[a]mple opportunities exist in this country to seek and obtain judicial protection.," and that no reason existed for the Court to consider the constitutionality of the very statute that the defendants sought to circumvent by means of fraud and deceit. *Id* at 866.

Relying upon a series of Supreme Court cases, the Court further stated that "the governing principle is that a claim of unconstitutionality will not be heard to excuse a voluntary,

2

deliberate and calculated course of fraud and deceit." *Id* at 867.

> One who elects such a course as a means of self-help may not escape the consequences by urging that his conduct be excused because the statute which he sought to evade is unconstitutional. This is a prosecution directed at petitioners' fraud. It is not an action to enforce the statute claimed to be unconstitutional.

*Id*. The Supreme Court concluded by stating that "in circumstances like those before us, it [an attack upon the constitutionality of a statute] may not be circumvented by a course of fraud and falsehood, with the constitutional attack being held for use only if the conspirators are discovered." *Id*.

The Supreme Court's holding in *Dennis* applies with equal force and logic to criminal conduct related to a regulatory scheme. In *United States v. Stewart*, 590 F.3d 93, 111 (2nd Cir. 2009), the defendant argued on appeal that the district court had erred by precluding her from asserting as a defense her challenge to the validity of the Special Administrative Measures ("SAMs") used to govern contact with certain high-risk inmates. The defendant claimed that the "Attorney General had no authority to have lawyers held criminally liable for violating the SAMs and that the SAMs are unconstitutionally vague as applied to her." *Id*.

The Second Circuit held that under *Dennis,* the defendant's "strategy of collaterally attacking the validity of the SAMs is futile." *Id*. As an initial matter, the Court recognized that the facts in *Dennis* involved a statutory scheme, while the present case involved a purely regulatory scheme. *Id*. at 111 n.11. Despite that difference, the Second Circuit concluded that "[t]he fundamental principles, however, remain the same; the central issue remains the deceitful act, not the form or nature of the governmental conduct that prompted the deceit." *Id*.

The *Stewart* Court then adopted the reasoning of *Dennis* and stated that "there are

`appropriate and inappropriate ways to challenge acts of government thought to be unconstitutional.'" *Id*. at 111 (quoting *Dennis,* 384 U.S. at 867). The Court further stated that "[t]here is `no reason for [federal courts] to consider the constitutionality of a statute at the behest of petitioners who have been indicted for conspiracy by means of falsehood and deceit to circumvent the law which they now seek to challenge.'" *Id*. at 111 (quoting *Dennis,* 384 U.S. at 866). The Court concluded by stating that "[t]his is a `prosecution directed at [Stewart's] fraud[,] not an action to enforce the [law] claimed to be unconstitutional.'"" *Id*. at 111 (quoting *Dennis,* 384 U.S. at 867).

Since the defendant chose not to challenge the SAMs by refusing to sign them or invoking the jurisdiction of the courts, the Second Circuit concluded that the defendant "cannot be heard to attack the validity of those measures when called to account for violating them, especially where, as here, her fraudulent and deceptive conduct endangered people's lives." Accordingly, the Court affirmed the district court's decision to prevent the defendant "from challenging the validity of the SAMs as part of her defense, and the jury acted within its province when it found that Stewart intentionally and fraudulently subverted them." *Id*. at 112. *See also Bryson v. United States,* 396 U.S. 64, 68 (1969) (holding that under *Dennis v. United States*, "the question of whether § 9(h) was constitutional or not is legally irrelevant to the validity of the petitioner's conviction under § 1001, the general criminal provision punishing the making of fraudulent statements to the Government."); *United States v. Knox*, 396 U.S. 77, 79 (1969)(holding that "one who furnishes false information to the Government in feigned compliance with a statutory requirement cannot defend against prosecution for his fraud by [challenging] the validity of the requirement itself").

The defendant here is no different than the defendants in *Dennis* or *Stewart*. The defendant repeatedly signed *S*ecrecy Agreements with NSA, including a Secrecy Agreement on or about August 28, 2001 upon his hiring as a permanent NSA employee. *See Indictment*, ¶ 7(e). The defendant agreed as a condition of his employment that he would never divulge protected information without the prior consent of NSA. *Id*. The defendant further agreed that any "documents or information he intended for public disclosure had to be submitted for pre-publication review to NSA prior to dissemination." *Id*. at ¶ 8. Finally, the defendant agreed that he would "notify NSA of any unauthorized disclosure of classified information." *Id*. In addition, the defendant received training and repeated notices and warnings that the NSA rules required him to seek and obtain express approval from the appropriate NSA officials before he removed any documents from NSA. At all times, the defendant held himself out as a loyal and faithful employee of NSA.

To circumvent those clear rules and prohibitions regarding removal of potentially classified information from NSA, the defendant subsequently engaged in a pattern of deceit to avoid detection. Among other things, the defendant "exchanged hundreds of e-mails with Reporter A via Hushmail" to conceal his identity. *Id*. at ¶ 13(a). He "researched future stories by emailing unwitting NSA employees and accessing classified and unclassified documents on classified NSA networks." *Id*. at ¶ 13(b). The defendant "copied and pasted classified and unclassified information from NSA documents into an untitled Word document, which, when printed, removed the classification markings." *Id*. at ¶ 13(c). The defendant "printed both classified and unclassified documents at NSA and brought home hard copies of classified and unclassified documents, which he then retained at his residence in Glenwood, Maryland without

authority." *Id*. at ¶ 13(d). The defendant "scanned and emailed Reporter A electronic copies of certain classified and unclassified documents, at least two of which he retained on his home computer system at his Glenwood, Maryland residence without authority." *Id*. at ¶. 13(e). Finally, the defendant "reviewed, commented on, and edited drafts, near final and final drafts of Reporter A's articles." *Id*. at ¶ 13(f). In effect, the defendant transformed his Secrecy Agreements into a sham through this pattern of deceit. *See Carpenter v. United States*, 484 U.S. 19, 26-27 (1987) (noting how defendant, who had pretended to perform his duty to safeguard confidential information, traded on inside information and rendered his non-disclosure agreement a sham, thereby engaging in deceit).

The government anticipates that the defendant may attack the validity, constitutionality or propriety of the regulatory scheme involving the disclosure of classified information. For example, the defendant may claim that the current classification system is overly inclusive and protects too much information. Alternatively, the defendant may claim that the current classification system is ineffectual or illegal and prevents his ability to air allegations of waste, fraud and abuse to the attention of the public. Whatever the nature of the claim, the defendant cannot present any evidence or make any argument that attacks the validity, constitutionality or propriety of the regulatory scheme relating to the disclosure of classified information. As the Supreme Court held in *Dennis* and the Second Circuit in *Stewart*, the defendant may not circumvent by deceit and fraud the very regulatory scheme with which he disagreed in the first instance, and then only after indictment attack the validity, constitutionality or propriety of the same scheme. Put another way, the defendant cannot have his cake and eat it too.

Moreover, any thoughts that the defendant may have had that the current regulatory

scheme overclassifies information is irrelevant. It does not matter that the defendant may have believed that the current regulatory scheme classified too much information. His obligation in protecting classified information was to work within the clear set of rules governing the dissemination of potentially classified information. Even if the defendant harbored such thoughts, his beliefs have no bearing on the requirement that he seek and obtain NSA's approval to remove documents from NSA, whether the documents had been marked classified or unclassified in the first instance. Otherwise, the classification system would crumble if every individual's personal beliefs and preferences governed classification decisions. If anything, the defendant's thoughts that the current classification system overclassifies information would be incriminatory, not exculpatory, because that evidence would tend to show that he did not agree with the clear rules governing the dissemination of classified information and, therefore, willfully brought classified information home with him.

      Finally, any opinion or testimony by the defense's proposed classification expert that the current regulatory scheme is invalid, ineffectual or overclassifies information is similarly irrelevant. The issue for any expert will be whether certain information is national defense information, not whether the current regulatory scheme is good or bad. Any testimony about the scheme in general is irrelevant and immaterial to the charged crimes.

Respectfully submitted this   25th   day of February 2011.

             For the United States:


             /s/ William M. Welch II
             Senior Litigation Counsel
             United States Department of Justice
             300 State Street, Suite 230
             Springfield, MA 01105
             413-785-0111 (direct)
             William.Welch3@usdoj.gov

             John P. Pearson
             Trial Attorney, Public Integrity Section
             United States Department of Justice
             1400 New York Avenue, NW, Suite 12100
             Washington, DC  20005
             202-307-2281 (direct)
             John.Pearson@usdoj.gov

**CERTIFICATE OF SERVICE**

      I hereby certify that I have caused an electronic copy of the *Government's Motion in Limine to Exclude Any Evidence or Defense Attacking the Legality of the Regulatory Scheme Relating to the Disclosure of Classified Information* to be served via ECF upon James Wyda and Deborah Boardman, counsel for defendant Drake.

    /s/ William M. Welch II
    Senior Litigation Counsel
    United States Department of Justice