**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **Criminal No. 10 CR 00181 RDB** |
| | * | |
| **THOMAS ANDREWS DRAKE,** | * | |
| | * | |
| **Defendant.** | * | |
| | ****** | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS COUNTS ONE THROUGH FIVE OF OF THE INDICTMENT**

The United States of America, by and through William M. Welch II, Sen   The United States of America, by and through William M. Welch II, Senior Litigation Counsel, and John P. Pearson, Trial Attorney, Public Integrity Section, Criminal Division, United States Department of Justice, respectfully files this response to the defendant's *Motion to Dismiss Counts One Through Five of the Indictment*. Dkt. 52.  The defendant's motion should be denied because it has no basis in the law.

A statute cannot be constitutionally vague when the meaning of its terms can be understood by men and women of common intelligence, or when court decisions have fairly interpreted its terms so that individuals are on fair notice of its reach.  Yet, fatal to the defendant's constitutional arguments is the fact that both the Supreme Court and the Fourth Circuit have consistently held that the challenged terms of Section 793(e) - "willfully," "relating to the national defense," and "closely held" - not only are readily understandable by those of common intelligence, but also have well-established meanings.

1

In addition, as often stated by the government, this is a willful retention of documents case.  The fundamental flaw in the defendant's analysis is that the defendant has cherry picked language from cases involving the willful retention or disclosure of classified oral information, not documents, and those crimes have an additional scienter element not required for the willful retention of documents.   Therefore, their argument must fail because the defendant cannot inject an essential element that does not otherwise exist for the crimes charged in this case.

Lastly, the defendant's First Amendment arguments have been rejected both by the Supreme Court and the Fourth Circuit.  As an initial matter, the First Amendment does not protect the retention of classified documents.  A restriction upon the retention of classified documents is an inhibition of action, not protected free speech; the defendant remains free to criticize whomever and whatever he wants so long as he used unclassified information.  Therefore, this Court's First Amendment inquiry effectively ends there.

However, assuming arguendo that the retention of classified documents is protected free speech, the defendant relinquished his First Amendment rights when he signed non-disclosure agreements with NSA.  The defendant's non-disclosure agreements are a constitutionally permissible restriction on his ability to discuss *classified* information, and, consequently, this defendant has no First Amendment claim in this case.  Finally, the Supreme Court and the Fourth Circuit have consistently held that where speech is integral to criminal conduct, "the prevention and punishment of [that class of speech has] never been thought to raise any Constitutional problem." *United States v. Stevens*, 130 S.Ct. 1577, 14584 (2010).

I.      **BACKGROUND**

The defendant discusses at some length his involvement with the DOD IG investigation. However, "[i]t is elementary that a motion to dismiss and indictment implicates only the legal sufficiency of its allegations, not the proof offered by the Government." *United States v. Terry*, 257 F.3d 366, 371 (4th Cir. 2001)(King, J., concurring).  The defendant's factual statement is nothing more than an inappropriate attempt to commingle factual matters, presumed to be true, with his legal arguments on vagueness and overbreadth.  Therefore, the government will not engage in a factual tit for tat with the defendant.

Nevertheless, the defendant's statement of facts does illuminate several key points. First, his statement of facts illustrates his desire to present a jury nullification defense.  *See Memorandum*, Dkt. 52-1, pg. 6 (stating that the defendant intended "to reveal the waste, fraud and abuse that cost the taxpayer's money, weakened our civil liberties, and hindered our nation's ability to identify potential threats against our security.").  The defendant's alleged cooperation with the IG investigation is not a defense to the charges.  It is a transparent attempt to improperly inject character evidence into the case and make an emotional plea to any sympathies that the jury may have, all in the hope of advancing a jury nullification defense.  It is for this reason that this evidence is the subject of a pending motion in limine filed by the government. *See Motion in Limine to Preclude Evidence of Necessity, Justification, or Alleged "Whistleblowing."* Dkt. 53.

Second, the defendant's statement of facts illustrates that the defendant did not need to bring, and knew that he did not need to bring, classified documents home due to the existence of the DOD IG investigation.  The defendant sent "hundreds of emails" and handcarried classified documents to the DOD IG investigators, who actually were working out of NSA, because he

knew that he had to transmit classified information via a classified system or securely.  *See Memorandum*, pgs. 4-5.  This tells us that the defendant knew that the IG investigation was *not* a reason to take classified documents home.

Finally, the defendant's proffer bears out the complete lack of any relationship between the IG investigation and the present charges.  The IG investigation ended in 2004. *Id*. at 5.  The defendant never obtained some of the charged documents until 2006, and he possessed all of the charged documents through November 28, 2007.

**II.     SECTION 793(E) IS NOT UNCONSTITUTIONALLY VAGUE BECAUSE THE DEFENDANT HAD FAIR NOTICE THAT HIS CONDUCT WAS ILLEGAL, AND THE CHALLENGED TERMS AND PHRASES OF SECTION 793(E) HAVE A CLEAR AND WELL-ESTABLISHED MEANING.**

**A.     The Decisions Of The Fourth Circuit As Well As Other Factors Gave The Defendant More Than Fair Warning Of His Illegal Conduct.**

"There are three related manifestations of the fair warning requirement." *United States v. Lanier*, 520 U.S. 259, 266 (1997).  "First, the vagueness doctrine bars enforcement of `a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.'" *Id.* (internal citations omitted).  "Second, . . . the canon of strict construction of criminal statutes, or rule of lenity, ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered."  *Id.* (internal citations omitted).  "Third, although clarity at the requisite level may be supplied by judicial gloss on an otherwise uncertain statute . . ., due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope."  *Id.* (internal citations omitted).

The constitutional difficulty of fair warning, however, does not arise "when the accused is charged with violating a "`right which has been made specific either by the express terms of the Constitution or laws of the United States or by decisions interpreting them.'" *Id.* at 267 (quoting *Screws v. United States,* 325 U.S. 91, 104 (1945)).  "When broad constitutional requirements have been `made specific' by the text or settled interpretations, willful violators `certainly are in no position to say that they had no adequate advance notice that they would be visited with punishment . . . [T]hey are not punished for violating an unknowable something.'" *Id.* at 267 (quoting *Screws,* 325 U.S. at 105).  Indeed, even "general statements of the law are not inherently incapable of giving fair and clear warning, and in other instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though `the very action in question has [not] previously been held unlawful.'" *Id.* at 271 (internal citation omitted).

The defendant cannot credibly claim that he did not have fair warning that the willful retention of classified documents was a crime, particularly to the extent that his argument hinges on his self-proclaimed title as "whistleblower."  Since 1980, the Supreme Court has made it clear that "when a government employee `voluntarily assume[s] a duty of confidentiality, governmental restrictions on disclosure are not subject to the same stringent standards that would apply to efforts to impose restrictions on unwilling members of the public.'" *Wilson v. CIA*, 586 F.3d 171, 183 (2nd Cir. 2009)(quoting *United States v. Aguilar,* 515 U.S. 593, 606 (1995)).  *See also Alfred A. Knopf, Inc. v. Colby,* 509 F.2d 1362, 1370 (4th Cir. 1975)(holding that government employee subject to secrecy agreement has "effectively relinquished his First Amendment right" to publish classified information).  As the Second Circuit stated in *Wilson*,

> This rule derives principally from *Snepp v. United States,* 444 U.S.
> 507, 100 S.Ct. 763, 62 L.Ed.2d 704 (1980), in which the Supreme
> Court rejected a First Amendment challenge to the CIA's
> enforcement of its secrecy agreement with former employee Frank
> W. Snepp III, who had published a book about CIA activities in
> South Vietnam without submitting his manuscript for pre-
> publication Agency review.  The Court affirmed the district court's
> order enjoining future breaches by Snepp and imposing a
> constructive trust on profits already realized from the unauthorized
> publication, *see id.* at 508-09, 100 S.Ct. 763, concluding not only
> that Snepp's secrecy agreement was enforceable as an "entirely
> appropriate exercise of the CIA Director's statutory mandate to
> protect intelligence sources and methods from unauthorized
> disclosure," but also that "even in the absence of an express
> agreement-the CIA could have acted to protect substantial
> government interests by imposing reasonable restrictions on
> employee activities that in other contexts might be protected by the
> First Amendment," *id.* at 510 n. 3, 100 S.Ct. 763 (internal
> quotation marks and alteration omitted).

In light of *Snepp*, it is hard to fathom how the defendant could believe that the First Amendment

somehow immunized his willful retention of classified documents.

Since 1988, the Fourth Circuit has made it clear that the First Amendment does not

exempt "leakers" of classified information to the press from the reach of Section 793(e).  *United

States v. Morison*, 844 F.2d 1057, 1068 (4th Cir. 1988)(holding "we do not perceive any First

Amendment rights to be implicated here" in response to argument that Congress intended to

exempt "leaks to the press" from Section 793(e)).  As the *Morison* Court stated, the term

"whoever" as it appears in Section 793(e) "covers 'anyone'" and "it is difficult to conceive of any

language more definite and clear." *Id*. at 1063-64. *See also United States v. Ford,* 2008 WL

2959726 *2 (4th Cir. 2008)(unpublished)(restating that the holding in *Morison* applies to anyone

not entitled to receive it, including members of the press).  That *Morison* referred only to

"leakers," and not "whistleblowers," would demand a level of specificity and a degree of

certainly rejected by the Supreme Court in *Lanier*. 527 U.S. at 270.

Finally, as discussed in more detail below, the meaning of all of the essential terms and phrases challenged by this defendant have been well-settled within the Fourth Circuit since 1988. "Willfully," "relating to the national defense," and "closely held" are meanings and phrases that the Fourth Circuit has consistently interpreted in criminal prosecutions involving government employees who improperly disclosed or retained classified information. Abundant notice, not fair notice, is the appropriate phrase to apply in this case.

> **B.  The Meaning Of "Willfully" As Applied To The Willful Retention Of Documents Under Section 793(e) Has Been Well-Settled In The Fourth Circuit And Is Not Unconstitutionally Vague.**

The defendant argues that the term "willfully" is unconstitutionally vague. *Memorandum*, pg. 10-13. As evidence of this vagueness, the defendant claims, for example, that "there has been no agreement as to what is required" to prove willfulness under Section 793(e). *Id*. at 10. The problem with this argument is that the defendant confuses the different *mens re* requirements for criminal violations involving the "documents" clause of Section 793(e) and the "information" clause of Section 793(e). The defendant has conflated the two separate clauses within Section 793(e), each with their separate *mens rea* requirement, and essentially argues to this Court that it should adopt a *mens rea* requirement that does not exist for the willful retention of classified documents. In the end, not only has the Supreme Court rejected the notion that the term "willfully" is constitutionally vague, but the Fourth Circuit has consistently adopted and applied the same meaning to the term "willfully," that is, a specific violation of a known legal duty. *See United States v. Squillacote,* 221 F.3d 542, 580 n.23 (4th Cir. 2000); *Morison*, 844 F.2d at 1071-72; *United States v. Truong Dinh Hung*, 629 F.2d 918, 919 (4th Cir. 1980); *United States*

*v. Dedeyan*, 584 F.2d 36, 39 (4th Cir. 1978).  As a result, Fourth Circuit precedent completely

forecloses this argument.

> **1.      The Provision of Section 793(e) Criminalizing The Willful Retention**
> **Of Documents Requires Only Proof Of Simple Wilfulness.**

To understand the defendant's argument, one must first understand the separate

*mens rea* requirements of Section 793(e).  Section 793(e) has two different clauses:  a

"documents" clause and an "information" clause.  The first clause, the "documents" clause, reads

as follows:

> Whoever having unauthorized possession of, access to, or control over any
> *document*, writing, code book, signal book, sketch, photograph,
> photographic negative, blueprint, plan, map, model, instrument, appliance,
> or note *relating to the national defense, . . .*"  (emphasis added)

The second clause, the "information" clause, applies to intangible information, such as oral

information, and reads as follows:

> Whoever having unauthorized possession of, access to, or control
> over . . .*information relating to the national defense which*
> *information the possessor has reason to believe could be used to*
> *the injury of the United States or to the advantage of a foreign*
> *nation,  . . ..*"  (emphasis added)

Section 793(e) then criminalizes two forms of conduct:  the disclosure of classified information,

which has not been charged in ths case, and the willful retention of classified information.  Those

two clauses read as follows:

> Whoever [having unauthorized possession of documents or information]
> . . .willfully communicates, delivers, transmits or causes to be
> communicated, delivered, or transmitted, or attempts to communicate,
> deliver transmit or cause to be communicated, delivered, or transmitted the
> same to any person not entitled to receive it, or *willfully retains the same*
> *and fails to deliver it to an officer or employee entitled to receive it . . ..*"
> (emphasis added)

The term "the same" found in the willful retention clause of Section 793(e) obviously applies to either classified documents or classified information.  The "reason to believe" element only modifies the "information" clause, an interpretation of the statute supported by its plain reading, its grammatical structure and Supreme Court precedent.

The plain reading of Section 793(e) shows that it is only the "information" clause that requires proof of the "reason to believe" element, not the "documents" clause.  *United States v. Morison*, 604 F. Supp. 655, 658 (D. Md. 1985).  If the possessed item is information as opposed to a document or some other enumerated, tangible item, the possessor must have "reason to believe" it could be used to the injury of the United States; "that requirement is not present for the delivery or retention of photographs or documents."  *Id.*  In a later opinion in *Morison*, the district court made clear that the "reason to believe" element is not required by the statute when documents are at issue:

> It is irrelevant whether the defendant personally believed that the items related to the national defense . . . the first half of both parts (d) and (e) of 18 U.S.C. Section 793 defines the types of items or information which is unlawful to either retain or transmit.  It defined all kinds of tangibles: "any document, writing . . . or note relating to the national defense," and also described intangibles: "information relating to the national defense which information the possessor has reason to believe could be used to the injury of the United States or to the advantage of any foreign nation."  The language "has reason to believe" does not create a subjective test for the entire statute and does not change or modify the meaning of willfulness.  Instead, it modifies and explains what type of information is included within the statute's scope.

*United States v. Morison*, 622 F. Supp. 1009, 1010 (D. Md. 1985); *see also United States v. Leung*, Cr. 02-434-FMC (C.D. Cal July 14, 2003) (scienter requirement satisfied in documents cases by showing defendant acted willfully; government need not prove the reason to believe

element)                    .

The grammatical structure of Section 793(e) also compels this interpretation.  In Section 793(e), the phrase "national defense" is repeated, once for the "documents" clause and once again for the "information" clause, to make it clear that both documents and information must relate to the national defense, whereas the "reason to believe" language only appears once, modifying the term "information."  *See* Section 793(e).  Similarly, there is no comma after "information;" the statute reads "information relating to the national defense which information the possessor has reason to believe . . .," again making it clear that the "reason to believe" language modifies "information" only.

Under the rules of statutory construction, the foregoing, plain meaning of the statute controls, and the courts should look no further unless its application would lead to unreasonable or impracticable results. *United States v. Rashkovski*, 302 F.3d 1133, 1136 (9th Cir. 2002); *see also, e.g., United States v. Lachman*, 387 F.3d 42, 50-51 (1st Cir. 2004)("The Supreme Court has repeatedly emphasized the importance of the plain meaning rule, stating that if the language of a statute or regulation has a plain and ordinary meaning, courts need look no further and should apply the regulation as it is written")(citations omitted).[1]

The result of the plain reading of the statute is entirely reasonable.  Section 793(e) provides for different scienter requirements depending on the character of the national defense item or data that a defendant is charged with possessing.  In cases involving documents, the

---

[1] If the Court were to consider legislative history, it would find support for this plain meaning reading.  *See* S. Rep. No. 2369, pt. 1, 81st Congress, 2nd session, 8-9 (1950) ("[t]he phrase 'which information the possessor has reason to believe could be used to the injury of the United States or to the advantage of any foreign nation' would modify only 'information relating to the national defense' and not the other items enumerated in the subsection.").

defendant need only have acted willfully.  This reading recognizes that a defendant will more

readily recognize a document relating to the national defense based on its content, markings, or

design, while intangible or oral "information" may not share these same attributes.  Thus, for the

government to prove a criminal offense involving the retention of documents "relating to the

national defense," the government must only show that the defendant acted willfully.

      That this reading of Subsection 793(e) is correct is also suggested by strikingly similar

language of the previous section, Section 793(d).  Section 793(d) parallels Section 793(e), but

concerns national defense items that are lawfully possessed.  It also differentiates between the

scienter requirement required for "documents" and "information," and shows that in cases of

documents, the government need not prove the "reason to believe" element.  Indeed, in parsing

Sections 793(d) and (e), Justice White in *New York Times Company v. United States* noted that

> It seems clear . . . that in prosecuting for communicating or
> withholding a 'document' as contrasted with similar action with
> respect to 'information' the Government need not prove an intent
> to injure the United States or to benefit a foreign nation but only
> willful and knowing conduct.

403 U.S. 713, 738, n. 9 (1971)(White, J., concurring)(quoting legislative history of the 1950

amendments to Section 793(e) which added the information prong and noted "[t]he phrase

'which information the possessor has reason to believe could be used to the injury of the United

States or to the advantage of any foreign nation' would modify only 'information relating to the

national defense' and not the other items enumerated in the subsection," S. Rep. No. 2369, pt. 1,

81st Cong., 2d Sess., 8-9 (1950)); *see also* P.L. 81-831, Internal Security Act of 1950, Conference

Report No. 81-3112, 1950, U.S.C.C.A.N. 3899, 3904-05 (conferees expanded the list of

documents and records covered by Section 793(d) and (e), and created a "new category

comprising defense information which the possessor has reason to believe could be used to the injury of the United States or to the advantage of any foreign nation. . . .") .

These distinctions are important because this case involves the willful retention of classified documents, not intangible "information" requiring proof of the reason to believe element.  Throughout their memorandum of law, the defendant conflates these two distinct and separate clauses, and borrows law and language from "information" clause cases to make their argument that the willful retention of classified document under Section 793(e) is unconstitutionally vague.  Their effort must fail because they cannot make this case something that it is not.

> **2.      The Term "Willfully" Is Not Constitutionally Vague And Has Consistently Been Interpreted As A Specific Violation Of A Know Legal Duty By The Fourth Circuit.**

"As a general matter, when used in the criminal context, a `willful' act is one undertaken with a `bad purpose.'"  *Bryan v. United States*, 524 U.S. 1184, 191 (1998).  "In other words, in order to establish a `willful' violation of a statute, `the Government must prove that the defendant acted with knowledge that his conduct was unlawful.'"  *Id*. at 192 (quoting *Ratzlaf v. United States,* 510 U.S. 135, 137 (1994)).  Under Section 793(e), "willfully" has that exact same meaning. *Morison*, 844 F.2d at 1071-1072.

In *Morison*, the district court instructed the jury that "willfully" meant an act "done voluntarily and *intentionally* and with the *specific intent to do something that the law forbids. That is to say, with a bad purpose either to disobey or to disregard the law.*" *Id*. at 1071 n.22. The Fourth Circuit rejected the defendant's challenges to the "willfulness" instruction, stating that

12

> [t]he district court in this case construed the `wilfully' language in
> *Hartzel* to require `that the prohibited act be done deliberately and
> with a specific purpose to do that which was proscribed.' That is
> precisely the manner in which *Hartzel* said the instruction should
> be given and that was the precise instruction that was given in this case.

*Id*. at 1073. In other words, the defendant knew that his conduct violated a known legal duty,

but need not have specific knowledge of the law.

Similarly, in *Truong Hung*, 629 F. 2d at 918-19, the defendant argued that Section 793(e)

was unconstitutionally vague because it did not require proof of "intent to injure the United

States or aid a foreign nation," which the defendant called "evil intent." In rejecting the

challenge, the Fourth Circuit held that regardless of the "reason to believe" element, Section

793(e) could be upheld because it required that the defendant transmit the information

"willfully," and the trial court had instructed the jury "that a defendant must act `willfully' which

the jury was told meant `"voluntarily and intentionally and with a specific intent to do something

the law forbids.'" *Id*. at 919. *See also United States v. Hsu*, 364 F.3d 192, 197 (4th Cir. 2004)

(the "willfulness" requirement `eliminat[es] any genuine risk of holding a person 'criminally

responsible for conduct which he could not reasonably understand to be proscribed.' ")(quoting

*United States v. Sun*, 278 F.3d 302, 309 (4th Cir. 2002)).

The defendant's reliance on *United States v. Rosen*, 445 F.Supp.2d 602 (E.D.Va. 2006)

undercuts his argument. First, the *Rosen* case related to the transmission of oral information,

thus implicating the reason to believe element of the "information" clause of Section 793(e). It

was for this reason that the district court stated that "the statute imposes an additional and

significant scienter requirement when a person is accused of transmitting `information relating to

the national defense,'" i.e. the reason to believe element not present in this case. *Rosen*, 445

13

F.Supp.2d at 625. *See also Memorandum*, pg. 11.  As the district court expressly stated,

> it is clear from both the text and the legislative history that this additional scienter requirement applies only to the communication of intangible `information,' and is intended to heighten the government's burden when defendants are accused of communicating intangible information.

*Rosen*, 445 F.Supp.2d at 625.  Since this case is not a case involving intangible or oral information, the additional scienter required by *Rosen* does not apply.

Unlike this case involving a government employee, the government in *Rosen* had indicted two non-government employees of a lobbying firm.  It was this fact and the district court's concern about fair warning to two non-government employees that caused the district court in *Rosen* to add an additional, heightened level of scienter that required a bad faith purpose, an element not ordinarily required in a Section 793(e) case (or a Section 793(d) case) involving the "information" clause.  *Id*. at 627.  However, once again, whatever the level of scienter required in *Rosen*, the facts of *Rosen* do not apply to this case because the defendant was a NSA employee.[2]

Finally, the defendant's reliance on *Gorin* is similarly misplaced.  In *Gorin*, 312 U.S. at 22 n.1, the statute at issue, which was the predecessor to Espionage Act, specifically required

---

[2] Consistent with the Fourth Circuit's precedent in *Morison*, the Fourth Circuit viewed with disfavor the heightened level of scienter that the district court required because of the defendant's status as non-government employees.  In its ruling on an interlocutory appeal involving CIPA issues, the Fourth Circuit expressly noted that "[w]e are nevertheless concerned by the potential that the § 793 Order *imposes an additional burden on the prosecution not mandated by the governing statute.  Section 793 must be applied according to its provisions, as any other course could result in erroneous evidentiary rulings or jury instructions*." *United States v. Rosen*, 557 F.3d 197, 192, 199 n.8 (4th Cir. 2010)(emphasis added).  Thus, the defendant's reliance on *Rosen* is even more shaky in light of the Fourth Circuit's opinion, and the Fourth Circuit's view in *Rosen* is certainly instructive regarding the definition of "willfully" in this case.

proof of an "intent or reason to believe that the information to be obtained is to be used to the injury of the United States, or to the advantage of any foreign nation."  In fact, the *Gorin* Court's reference to an "evil motive" was simply a reference to proof of such an injury to the United States, not some additional or different level of intent. *See Memorandum*, pg. 12.  Thus, the intent in that case necessarily required proof of a greater level of scienter than required in this case.  Here, Section 793(e) contains no such statutory language, and the defendant cannot insert an additional element that does not otherwise exist.

C.    **The Phrase "Relating To The National Defense" Is Well-Settled In The Fourth Circuit And Is Not Unconstitutionally Vague.**

The defendant argues that the term "relating to the national defense" is unconstitutionally vague. *Memorandum*, pg. 14-16.  As evidence of this vagueness, the defendant again claims, for example, that "courts have thus reached different conclusions regarding the meaning of the phrase `relating to the national defense.'" *Id*. at 16.  Not only has this constitutional vagueness argument been rejected by the Supreme Court, but binding Fourth Circuit precedent has consistently adopted and applied the same meaning to that phrase. *See Squillacote,* 221 F.3d at 580 n.23; *Morison*, 844 F.2d at 1071-72; *Truong Dinh Hung*, 629 F.2d at 919; *United States v. Dedeyan*, 584 F.2d 36, 39 (4th Cir. 1978).  As a result, Fourth Circuit precedent completely forecloses this argument. *See also United States v. Abu-Jihaad*, 600 F.Supp.2d 362, 385 (D.Conn. 2009)(stating that "courts have uniformly held- and this Court instructed the jury - that "national defense" is a `generic concept of broad connotations, referring to the military and naval establishments and the related activities of national preparedness.'"), *aff'd*, 630 F.3d 130, 136-37 (2nd Cir. 2010)(internal citations omitted).

The Supreme Court first rejected the constitutional vagueness argument in *Gorin*.  In *Gorin*, the Court considered the constitutionality of the phrase "relating to national defense" in the Espionage Act's predecessor statute.  The Supreme Court dismissed the argument that "relating to the national defense" was vague, stating "we are of the view that the use of the words 'national defense' has given them, as here employed, a well understood connotation." *Id*. at 28.  The Court agreed with the government that "[n]ational defense "'is a generic concept of broad connotations, referring to the military and naval establishments and the related activities of national preparedness.'" *Id*.   The Court concluded that, based upon that plain understanding, the statute "appears sufficiently definite to apprise the public of prohibited activities and is consonant with due process." *Id*.

The *Gorin* Court went on to cite with approval the district court's jury instructions, which began by stating that "[y]ou are instructed that the term 'national defense' includes all matters directly and reasonably connected with the defense of our nation against its enemies."  *Id*. at 30.  In so doing, the Supreme Cour re-iterated that the phrase "relating to national defense" was sufficiently specific to survive a vagueness challenge.  The Supreme Court stated that

> If we assume, as we must here after our earlier discussion as to the definiteness of the statute, that the words of the statute are sufficiently specific to advise the ordinary man of its scope, we think it follows that the words of the instructions give adequate definition to 'connected with' or 'relating to' national defense. The inquiry directed at the instructions is whether the jury is given sufficient guidance to enable it to determine whether the acts of the petitioners were within the prohibitions.  These instructions set out the definition of national defense in a manner favorable and unobjectionable to petitioners.

*Id*.  It is difficult to fathom how the Supreme Court's decision in *Gorin* alone does not foreclose

the defendant's argument. *See also United States v. Boyce*, 594 F.2d 1246, 1252 n.2 (9th Cir. 1979)(holding that defendant's constitutional vagueness attacks on Sections 793 and 794 have been foreclosed by *Gorin*).

Since the Supreme Court's decision in *Gorin*, the Fourth Circuit has rejected constitutional vagueness challenges based upon jury instructions that define national defense information even more narrowly than that approved in *Gorin*, thus offering "more protection to defendants than required by *Gorin*." *Squillacote,* 221 F.3d at 580 n.23.  Indeed, the Fourth Circuit addressed this precise issue in *Morison*, 844 F.2d at 1071-72 and rejected the very issue raised by the defendant today.  In *Morison*, the defendant claimed that the phrase "relating to the national defense" found in Sections 793(d) and (e) was unconstitutionally vague. *Id.* at 1071. Although conceding that the Fourth Circuit had found the phrase "not vague in the constitutional sense" in *Dedeyan*, the defendant attempted to distinguish the *Dedeyan* holding as a prosecution under Section 793(f)(2), not Section 793(d) and (e). *Id.*

The *Morison* Court held that there was no error in the jury instruction, and that the statute and its phrase "relating to the national defense" was not unconstitutionally vague.  *Id.*  Citing the jury instruction specifically,[3] the Fourth Circuit stated that "the district judge in this case gave

---

[3]The jury instruction as approved by the *Morison* Court stated as follows:

> And that term, the term national defense, includes all matters that directly or may reasonably be connected with the defense of the United States against any of its enemies. It refers to the military and naval establishments and the related activities of national preparedness. To prove that the documents or the photographs relate to national defense there are two things that the government must prove. First, it must prove that the disclosure of the photographs would be potentially damaging to the United States or might be useful to an enemy of the United States.  Secondly, the

17

precisely the instruction on this vagueness issue that we approved in *Truong Dinh Hung*, 629

F.2d at 919.   In addition, the *Morison* Court noted that the phrase "potentially damaging" found

in the instruction had also been approved by the Fourth Circuit in *Dedeyan*. *Morison*, 844 F.2d at

1072.

The defendant tries to distinguish *Morison* by claiming that he is a "whistleblower,"

while the defendant in *Morison* was a profiteer.   However, that distinction does not help the

defendant because the defendant in *Morison* advanced the same argument that the defendant

raises here.   In *Morison*, the defendant argued throughout his appeal that he was a mere "leaker."

*Id*. at 1063, 1068.   But the Fourth Circuit found that argument unpersuasive, stating that Sections

793(d) and (e) apply to "whoever" violates their terms, thus finding it "difficult to conceive of

any language more definite and clear" and concluding that the statute covered "anyone" who

violates its terms, including self-described "leakers." *Morison*, 844 F.2d at 1063-64.

In the end, as much as the defendant wants to distance himself from *Morison*, the

defendant cannot.   This defendant, like the defendant in *Morison*, knew that he possessed

classified information because he admitted as such to the FBI during interviews on November 27,

2007 and April 18, 2008.   *Id*. at 1073.   Similar to the defendant in *Morison*, this defendant was

an experienced intelligence employee. *Id*.   Identical to the defendant in *Morison*, this defendant

had been instructed on all the regulations concerning the security of secret national defense

materials. *Id*. (internal citations omitted); *Indictment*, ¶¶ 7, 8.   Thus, like the defendant in

---

government must prove that the documents or the photographs are
closely held in that [they] ... have not been made public and are not
available to the general public.  *Id*. at 1072

*Morison*, "[w]ith the scienter requirement of sections 793(d) and (e), bulwarked with the

defendant's own expertise in the field of governmental secrecy and intelligence operations, "

Section 793(e) is not unconstitutionally vague as applied to this defendant. *Id*. at 1073.

Similarly, the meaning of the phrase "closely held" national defense information is well-

settled within Fourth Circuit.  "Closely held" means that the information has not been made

public by the United States, or that information was lawfully available to the public, but the

United States made no effort to guard such information. *See Squillacote*, 221 F.3d at 577-79;

*Morison*, 844 F.2d at 1071-72.  *See also Abu-Jihaad*, 600 F.Supp.2d at 387 (defining "closely

held" information as information that has not been made public by the United States, or

information that was lawfully available to the public, but the United States made no effort to

guard the information)(internal citations omitted).  Given that the Fourth Circuit has now blessed

the meaning of "closely held" at least twice, there can be no debate over its meaning in this case.

    **D.**    **The Phrase "Injury To The United States" Is Not An Essential Element Of
The Charged Crimes and Irrelevant To this Case.**

As discussed *supra*, the additional scienter element involving the "information" clause is

not an element of the charged crimes.  *See* Section B.1.  This is an example of the defendant

conflating the two clauses and grafting the higher scienter of the "information" clause onto a

prosecution involving the willful retention of documents.  Out of thin air, the defendant contends

that the phrase "information" that appears in the second clause magically also includes the word

"documents." *See Memorandum*, pg. 17 (stating that second clause continues "information [or

documents] . . .).  Putting aside the absurdity of why the term "documents" would appear in the

first clause, but not appear, yet be implicitly read into, the second clause, the defendant's

construction of Section 793(e) finds no support anywhere. *Rosen*, 445 F.Supp. at     (stating that "it is clear from both the text and the legislative history that this additional scienter requirement applies only to the communication of intangible "information," and is intended to heighten the government's burden when defendants are accused of communicating intangible information.") (citing Edgar and Schmidt, *Espionage Statutes,* 73 Colum.L.Rev. at 1023 (citing S.Rep.No. 427, 80th Cong., 1st Sess. 7 (1949)); *id.* at 1024 (H.R.Rep. No.647, 81st Cong., 1st Sess.(1949)). *See also Morison,* 844 F.2d at 1073 n. 26 (noting the statement in the legislative history that this the reason to believe element is the only intent scienter requirement) (citing H.R.Rep. No. 647, 81st Cong., 1st Sess. (1949), at 3-4).

The defendant's construction of the statute makes no sense.  Having already included the term "any document," and then enumerated a set of tangible items, it defies common sense to believe that "information" in the second clause also includes "documents."  Otherwise, the first clause would be redundant, and there would have been no reason to separate "documents" and "information" from each other with a comma and the word "or."  In the end, this phrase has no relevance to this legal analysis.  The phrase is not an essential element of the charged offenses.

**E.     As No Single Constitutional Flaw Exist, No Combination Of Flaws Render Section 793(e) Unconstitutionally Vague.**

As noted above, none of the terms or phrases of Section 793(e) that are relevant to this prosecution are constitutionally infirm.  Since no single constitutional flaw exists, there can be no combination of flaws that render Section 793(e) unconstitutional.  Accordingly, this argument has no merit.

III.   **SECTION 793(E) IS NOT UNCONSTITUTIONALLY OVERBROAD BECAUSE THE RETENTION OF CLASSIFIED DOCUMENTS IS NOT PROTECTED SPEECH, THE DEFENDANT RELINQUISHED HIS FIRST AMENDMENT RIGHTS WHEN HE BECAME A GOVERNMENT EMPLOYEE, AND THE STATUTE DOES NOT UNDULY RESTRICT FIRST AMENDMENT RIGHTS.**

A   **The Retention Of Classified Documents Is The Inhibition Of Action, Not Protected Speech.**

As has been often stated by the government, this is not a disclosure case.  This case involves the willful retention of classified documents.  The willful retention of classified documents is not protected free speech, but rather "it is an inhibition of action." *Zemel v. Rusk*, 381 U.S. 1, 16 (1965).  *See also  Haig v. Agee*, 453 U.S. 280, 309 (1981)(upholding a passport revocation as an "inhibition of action" and not violative of the First Amendment).  As the Supreme Court stated in *Zemel*,

> [t]here are few restrictions on action which could not be clothed by ingenious argument in the garb of decreased data flow.  For example, the prohibition of unauthorized entry into the White House diminishes the citizen's opportunities to gather information he might find relevant to his opinion of the way the country is being run, but that does not make entry into the White House a First Amendment right. The right to speak and publish does not carry with it the unrestrained right to gather information.

*Id*. at 16-17.

Here, criminalizing the defendant's willful retention of documents does not limit his freedom of speech.  The defendant has no need to bring classified documents home to exercise his right to free speech.  The defendant can criticize NSA, the United States Government, and whomever and whatever else he wants publicly.  He can report allegations of waste, fraud and abuse to the Inspectors General for NSA and DOD, the House Permanent Select Committee on Intelligence, and the Senate Select Committee on Intelligence without the need to bring classified

documents home. In fact, the Legislative Branch has established a statutory framework by which

whistleblowers in the intelligence community can make complaints without fear of reprisals. *See*

*e.g.* Intelligence Community Whistleblower Protection Act,  5 U.S.C. § 2302(b)(8).  There

simply is no restriction on the defendant's ability to express himself by virtue of a restriction on

his ability to retain classified documents in his residence.

**B      The Defendant Waived His First Amendment Rights When He Signed His Non-Disclosure Agreements As A NSA Employee.**

The defendant waived his First Amendment rights when he became a NSA employee and

signed his Non-Disclosure Agreement.  "[W]hen a government employee `voluntarily assume[s]

a duty of confidentiality,  governmental restrictions on disclosure are not subject to the same

stringent standards that would apply to efforts to impose restrictions on unwilling members of the

public.'" *Wilson*, 586 F.3d at 183 (quoting *Aguilar,* 515 U.S. at 606).  *See also Knopf,* 509 F.2d

at 1370 (holding that government employee subject to secrecy agreement has "effectively

relinquished his First Amendment right" to publish classified information).  "This rule derives

principally from *Snepp*. [citation omitted]."  *Wilson*, 586 F.3d at 183 (citations omitted)

In *Snepp*, 444 U.S. at 507, the government brought an action against a former CIA

employee in order to enforcement its prior secrecy agreement.  The former employee, Snepp, had

published a book about CIA activities in South Vietnam without submitting his manuscript for

pre-publication Agency review. *Id.*  Snepp had agreed "as an express condition of his

employment . . . he would `not . . . publish . . . any information or material relating to the

Agency, its activities or intelligence activities generally, either during or after the term of [his]

employment . . . without specific prior approval by the Agency.'" *Id.* at 507-08.

The Supreme Court affirmed the district court's order enjoining future breaches by Snepp and imposed a constructive trust on profits already realized from the unauthorized publication. *Id.* at 508-09.  In so doing, the *Snepp* Court concluded not only that Snepp's secrecy agreement was enforceable as an "entirely appropriate exercise of the CIA Director's statutory mandate to protect intelligence sources and methods from unauthorized disclosure," but also that "even in the absence of an express agreement-the CIA could have acted to protect substantial government interests by imposing reasonable restrictions on employee activities that in other contexts might be protected by the First Amendment." *Id.* at 510 n.3.  The Court further stated that "[t]he Government has a compelling interest in protecting both the secrecy of information important to our national security and the appearance of confidentiality so essential to the effective operation of our foreign intelligence service." *Id.*

In *Haig v. Agee*, 453 U.S. 280 (1981), the Supreme Cour re-affirmed the First Amendment restrictions imposed by a CIA employment contract. Agee, a former CIA employee, held a press conference in London to announce a campaign to expose CIA officers and agents around the world. *Id.* at 283.  The Secretary of State subsequently revoked his passport to prevent his overseas travel in furtherance of his campaign. *Id.* at 286.  Agee filed suit to challenge this action, claiming that the revocation of his passport violated his right to free speech under the First Amendment. *Id.* at 287.  In rejecting his claims, the Supreme Court first observed that Agee's employment contract contained language identical to Snepp's. *Id.* at 284 n.5.  The Court then stated:

> Agee's First Amendment claim has no foundation.  The revocation of Agee's passport rests in part on the content of his speech: specifically, his repeated disclosures of intelligence operations and

> names of intelligence personnel.  Long ago, however, this Court
> recognized that "[n]o one would question but that a government
> might prevent actual obstruction to its recruiting service or the
> publication of the sailing dates of transports or the number and
> location of troops." *Near v. Minnesota ex rel. Olson*, 283 U.S. 697,
> 716, 51 S.Ct. 625, 631, 75 L.Ed. 1357 (1931), citing Z. Chafee,
> *Freedom of Speech* 10 (1920).  Agee's disclosures, among other
> things, have the declared purpose of obstructing intelligence
> operations and the recruiting of intelligence personnel.  They are
> clearly not protected by the Constitution. The mere fact that Agee
> is also engaged in criticism of the Government does not render his
> conduct beyond the reach of the law.

*Id*. at 308-09.  *See also Aguilar*, 515 U.S. at 605-606 (holding that federal judge had no First

Amendment right to disclose information about a federal wiretap to another judge); *Rosen*, 445

F.Supp.2d at 635 (stating that "there can be little doubt, as defendant readily concedes, that the

Constitution permits the government to prosecute [government employees] for the disclosure of

information relating to the national defense[.].")

Nowhere in the defendant's memorandum will this Court see any attempt by the

defendant to effectively distinguish cases like *Snepp*, *Agee*, or *Aguila*r.  In fact, the Court will not

see any citation to those cases or any other Supreme Court precedent or Fourth Circuit law

articulating this First Amendment principle.  It is as if this body of law holding that a government

employee relinquishes his First Amendment right when he signs a secrecy agreement simply does

not exist.  Fatal to the defendant's argument is the fact that this body of law does exist, and the

defendant cannot skirt it.  The defendant relinquished his First Amendment rights when he

signed his secrecy agreements.

The mere fact that the defendant's motive to illegally retain classified documents was to

provide information to a reporter does not bootstrap First Amendment protections into this case.

24

"`[I]t is beyond cavil that "[t]he First Amendment . . . does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent.'" *United States v. Salameh*, 152 F.3d 88, 112 (2nd Cir. 1998)(quoting *Wisconsin v. Mitchell,* 508 U.S. 476, 489 (1993).  Any issues regarding the First Amendment as they apply to this defendant simply are not present.

**C      The First Amendment Does Not Protect The Conduct Being Prosecuted In This Case.**

The plain language of Section 793(e) as well as Supreme Court and Fourth Circuit authority undermine any claim that the First Amendment somehow bestows immunity upon whistleblowers.  As previously noted, Section 793(e) applies to "whoever" violates its terms; the statutory language "covers 'anyone'" and "[i]t is difficult to conceive of any language more definite and clear."  *Morison*, 844 F.2d at 1063-64.  There plainly is no exemption in the statute for whistleblowers.  The Fourth Circuit has made it clear that the First Amendment does not exempt "leakers" of classified information to the press from the reach of Section 793(e). *Morison*, 844 F.2d at 1068.

The *Morison* Court's position finds ample support in Supreme Court jurisprudence.  In *Branzburg v. Hayes*, 408 U.S. 665 (1972), which held that the First Amendment did not provide reporters with a blanket testimonial privilege in criminal proceedings, the Court noted that "[i]t would be frivolous to assert . . .that the First Amendment, in the interest of securing news or otherwise, confers a license on either the reporter or his news sources to violate valid criminal laws." *Id*. at 691.  The Court noted further that "[i]t suffices to say that however complete is the right of the press to state public things and discuss them, that right, as every other right enjoyed

in human society, is subject to the restraints which separate right from wrong-doing."  408 U.S. at 692 (quotation marks and citation omitted).

In *Giboney v. Empire Storage & Ice, Co.*, 336 U.S. 490 (1949), the Supreme Court held that speech integral to a crime is undeserving of First Amendment protections.  In *Giboney*, the Supreme Court considered a First Amendment challenge to an injunction against picketeers, which a lower court had found in violation of state law. *Id*. at 498.  The Court stated that

> it rarely has been suggested that the constitutional freedom of speech and press extends its immunity to speech or writing used an an integral part of conduct in violation of a valid criminal statute. We reject the contention now.

*Id*.  As recently as last term, the Supreme Court re-affirmed its holding in *Giboney*, stating that speech integral to criminal conduct is one class of speech "the prevention and punishment of which have never been thought to raise any Constitutional problem." *United States v. Stevens*, 130 S.Ct. 1577, 14584 (2010).

As an initial matter, restrictions upon the willful retention of classified documents do not impinge upon the freedom of the press.  Individuals, whether calling themselves whistleblowers or not, can contact members of the press and express their concerns with unclassified information.  Members of the press can obtain and review unclassified reports about waste, fraud and abuse from the Inspectors General for NSA and DOD.  They can use FOIA procedures to obtain information not ordinarily available to the public.[4]  To be clear, whistleblowers are important to ensuring government accountability, and the Justice Department both encourages

---

[4]The defendant devotes some discussion in his Memorandum to the issue of "publication" and its place within the reach of Section 793(e).  This case involves the retention of documents, not publication.  Therefore, no act of publication is implicated here, and the issue is not relevant.

them and relies on them in many cases.  At the same time, there are appropriate avenues for

whistleblowers to follow that relate to handling of classified information.  People with access to

classified information cannot make unilateral decisions that such information does not have to be

treated as classified, regardless of their motive.

Second, national security interests are important, vital interests.  Two of the most

important duties of the Executive Branch are prosecuting violations of federal criminal laws and

protecting the nation's security secrets.  The Supreme Court duly noted that "[i]t is 'obvious and

unarguable' that no governmental interest is more compelling than the security of the Nation."

*Haig*, 453 U.S. at 307.  "'The Government has a substantial interest in protecting sensitive

sources and methods of gathering information,'" *United States v. Abu Ali*, 528 F.3d 210, 247 (4th

Cir. 2008) (quoting *United States v. Smith*, 780 F.2d 1102, 11085 (4th Cir. 1985)), and "'in

protecting both the secrecy of information to our national security and the appearance of

confidentiality so essential to the effective operation of our foreign intelligence service.'" *Abu*

*Ali*, 528 F.3d at 247 (quoting *C.I.A. v. Sims*, 471 U.S. 159, 175 (1985)).  As Judge Wilkinson

presciently noted in his *Morison* concurrence, "[i]n an ideal world, governments would not need

to keep secrets from their own people, but in this world much hinges on events that take place

outside of public view.  Intelligence gathering is critical to the formation of sound policy, and

becomes more so every year with the refinement of technology and the growing threat of

terrorism." 844 F.2d at 1081-82.  It is not surprising then that *no* case immunizes the unlawful

retention of national defense secrets on free speech grounds.[5]

---

[5]To the extent that this case requires any balancing of interests, *see Pickering v. Board of Education*, 391 U.S. 563, 568 (1968), the Supreme Court has already done that in *Snepp* and *Haig*. *See also Weaver v. USIA*, 87 F.3d 1429, 1439 (D.C. Cir. 1996)(recognizing that the

Finally, the defendant's argument that some whistleblowers are immune from prosecution, *see Memorandum*, pg. 30-31, suffers from the same constitutional vagueness concerns with which the defendant challenges Section 793(e).  The defendant unconstitutionally injects federal common law into Section 793(e).  Who defines what a whistleblower is?  Are mixed motives sufficient, or must a whistleblower's motives be pure?  Does  the fraud, waste and abuse have to have a certain threshold monetary value?  Who decides what that value is?  Our system of national security would crumble if every individual could annoit himself or herself a whistleblower, make their own individualized decisions about what classified documents they want to bring home and for what purpose, and then immunize themselves from prosecution for the most damaging of classified information disclosures.[6]

---

Supreme Court in *Snepp* "essentially applied *Pickering* . . . and seemed to view the provision [in Snepp's agreement] as obviously constitutional.").  The government contends that no such balancing of interests is required in this case.

[6]To the extent that the defendant proposes jury instructions, not only are his instructions flawed, but the jury instructions are not ripe for review.  The government intends to submit its jury instructions, using established Supreme Court and Fourth Circuit precedent, at the time requested by the Court.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, because the defendant has not established that Section 793(e)

is constitutionally vague, his Motion to Dismiss Counts One through Five should be denied.

Respectfully submitted this  _11th_  day of March 2011.

For the United States:


/s/ William M. Welch II
Senior Litigation Counsel
United States Department of Justice
300 State Street, Suite 230
Springfield, MA 01105
413-785-0111 (direct)
William.Welch3@usdoj.gov

John P. Pearson
Trial Attorney, Public Integrity Section
United States Department of Justice
1400 New York Avenue, NW, Suite 12100
Washington, DC  20005
202-307-2281 (direct)
John.Pearson@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have caused an electronic copy of the *Government's Response to Defendant's Motion to Dismiss Counts One through Five* to be served via ECF upon James Wyda and Deborah Boardman, counsel for defendant Drake.


/s/ William M. Welch II

Senior Litigation Counsel

United States Department of Justice