IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Criminal No. 10-0181-RDB |
| THOMAS ANDREWS DRAKE | * | |

DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION *IN LIMINE* TO
PRECLUDE EVIDENCE OF NECESSITY, JUSTIFICATION,
OR ALLEGED "WHISTLE-BLOWING"

In its motion *in limine*, the government asks the Court to "preclud[e] the introduction of evidence, examination of witnesses, or argument by counsel regarding the defendant's perceived need or justification to expose waste and abuse at the National Security Agency ("NSA"), or regarding the merits or substance of any claims of waste and abuse at NSA." Gov't Mot. at 1. The Court should deny this motion.[1]

---

[1] The defense originally filed this response and its Memorandum in Support of Disclosure of DOD IG Audit Documents *ex parte*. *See* Docket Nos. 59 & 69. They were filed *ex parte* because they contained a theory of defense that counsel did not want to reveal to the government. This approach was consistent with the defendant's right to a fair trial and well-settled principles of criminal jurisprudence that the government is not entitled to know the defense theory before trial. This principle, for example, is embodied in the Federal Rule of Criminal Procedure that specifically allows an indigent defendant to request issuance of a witness subpoena "*ex parte*" so that the defendant's trial strategy is shielded from the government. *See* Fed. R. Crim. P. 17(b); *United States v. Brinkman*, 739 F.2d 977, 980 (4th Cir. 1984) (recognizing purpose of Rule 17(b) *ex parte* subpoenas is to "shield the theory of . . . defense from the prosecutor's scrutiny" and finding prosecution's discovery of defendant's witness list two days before trial was not prejudicial because the theory of defense was *not* revealed) (internal quotations and citations omitted). *See also United States v. Scott*, 223 F.3d 208 (3d Cir. 2000) (citing purpose of Rule17(b) *ex parte* subpoenas is to shield defense theory from government and citing importance of need to obtain witness subpoenas without disclosing in advance the theory of the defense). Along similar lines, the notion that the defense must reveal its defense theory before trial is one of the reasons why the Classified Information Procedures Act (CIPA) is unconstitutional. *See* Docket No. 51. This is especially unfair because CIPA appears to allow the government to file *ex parte* motions with the Court to which the defense may not respond. *See* Docket No. 56.

The government objected to the defendant's *ex parte* filings. *See* Docket No. 73. During a March 14 conference call, the Court ordered, over counsel's objection, the defense to serve this

**STATEMENT OF FACTS**

The government in its motion includes a long recitation of the alleged facts of this case. While the defense disputes much of the government's factual rendition, those disputes do not need to be addressed here. The defense has addressed many of these background facts in its Motion to Dismiss Counts 1-5 and in Defendant's Memorandum in Support of Disclosure of Department of Defense Inspector General Audit Documents Filed Under Seal and Pursuant to the Classified Information Procedures Act (CIPA). It is necessary, however, for the defense to briefly discuss the relevant aspects of Thomas Drake's tenure at the National Security Agency (NSA), and his involvement in the Department of Defense Inspector General (DOD-IG) Audit of the Thinthread and Trailblazer Programs, to properly place into context the legal issues presented in this motion.

As background, briefly, Mr. Drake's whistleblowing efforts to reform NSA are central to this case. The defense has no interest in a trial about how best to reform NSA. But, the fact of Mr. Drake's commitment to reform at NSA is essential to understand that Mr. Drake did not intend to bring classified evidence into his home.

Mr. Drake joined the NSA in 2001 as the Senior Change Leader and Chief of the Change Leadership and Communications Office for NSA. In January of 2003, Mr. Drake was contacted by investigators from the DOD-IG's Office and asked to assist them in a lengthy investigation of waste, fraud, and abuse at NSA.

---

response and its related memorandum in support of its request for DOD-IG documents upon government counsel. With the Court's express permission, the defense has slightly revised its *ex parte* filings in such a way that limits the disclosure of defense theories to the government but provides the prosecution with the defense's position so that it can reply. The defense requests that the Court also consider its *ex parte* filings when deciding these issues. The government will not be prejudiced by the Court's consideration of them, because the arguments in both sets of filings are substantially the same.

Mr. Drake cooperated extensively. There are hundreds of emails between Mr. Drake and the investigators. A mountain of documents were delivered to them electronically, as attachments, and by hand. These documents support the claims of the complaint instigating the audit that NSA had engaged in waste, fraud, and abuse in the development of the Trailblazer program and in its failure to fully support and deploy the Thinthread program, which could better, and more efficiently, protect our nation's security.

In 2004, after more than a year of fact-finding, the Inspector General issued its initial audit findings. In a report entitled, "Requirements for the Trailblazer and Thinthread Systems," the auditors concluded that "the National Security Agency is inefficiently using resources to develop a digital network exploitation system that is not capable of fully exploiting the digital network intelligence available to analysts from the Global Information Network . . . (T)he NSA transformation effort may be developing a less capable long-term digital network exploitation solution that will take longer and cost significantly more to develop." The NSA continued to support the "less capable" program and its successor.

Several newspaper articles addressed the need for reform at NSA, including the failings and the wasted government funds cited in the audit. Paragraphs 9-14 of the Indictment explicitly allege that Mr. Drake contributed to these articles and that Mr. Drake retained classified information to share it with Reporter A. Each of the five documents at issue in this case and found in Mr. Drake's home relate in some degree to the programs in question, the issues at stake in the DOD-IG audit, or Mr. Drake's whistleblower activities.[2]

The government's motion – by lengthily addressing a "straw man" argument that

---

[2] The defense does not concede that these documents are classified.

misrepresents history and the defense's intentions – is a crude, unfair attempt to limit Mr. Drake's ability to present an essential part of his defense. The defense will not claim that Mr. Drake was justified – out of necessity – to violate § 793(e). Nor does it seek to have a mini-trial as to whether the DOD-IG and Mr. Drake were right that NSA was in desperate need of reform.[3] However, it is essential that Mr. Drake be permitted to explain how he came into possession of these documents and how his possession of them does not evidence a specific intent to violate 18 U.S.C. § 793(e). To do that, the jury must hear the evidence of his cooperation with the DOD-IG audit and of Mr. Drake's commitment to reform. This evidence also is necessary to refute the charge that Mr. Drake intended to obstruct justice.

## ARGUMENT

**I.  Mr. Drake has no Intention of Putting Forth An Affirmative Defense in This Case.**

The government devotes over 15 pages of its motion *in limine* explaining why Mr. Drake should be precluded from offering a defense in this case based on necessity, justification, any federal statute, or the First Amendment. Mr. Drake, however, does not intend to offer any such affirmative defense in this case. Therefore, the defense will not try the Court's patience by responding to arguments that have no applicability here.[4]

---

[3] These issues are addressed at some length in the Defendant's *Ex Parte* Memorandum in Support of Disclosure of Department of Defense Inspector General Audit Documents (Filed Under Seal and Pursuant to CIPA).

[4] The defense does, however, feel the need to briefly respond to the government's argument under the First Amendment. Mr. Drake does not now nor has he ever intended to raise any defense based on the First Amendment. The defense's point in regard to the First Amendment is not that it provides a complete defense to the charges, but rather that, because this case raises substantial First Amendment concerns, the jury should be instructed under *New York Times Co. v. United States*, 403 U.S. 713, that the requirement of § 793(e) that the information be

## II. Evidence Relating to the Volume and Substance of the Full Universe of Documents Mr. Drake Gave to DOD-IG is Directly Relevant to the Issue of Whether He Acted with the Specific Intent Necessary To Support A Valid Conviction Under 18 U.S.C. § 793(e).

In Counts One through Five of the Indictment, the government alleges that Thomas Drake "willfully" retained documents in violation of 18 U.S.C. § 793(e). To prove that Mr. Drake acted willfully, the government must establish beyond a reasonable doubt that he specifically intended to violate § 793(e). To prove such specific intent, the government must show that Mr. Drake acted with a bad or underhanded purpose to violate the statute, and not by honest mistake. *See United States v. Morison*, 844 F.2d 1057, 1071 (4th Cir. 1988). The government must also prove that Mr. Drake knew the information contained in the documents related to the national defense, *i.e.*, knew that, if disclosed, the information could potentially harm national security. *United States v. Rosen*, 445 F. Supp. 2d 602, 625 (E.D. Va. 2006).[5] In addition, the government must prove that Mr. Drake had "reason to believe" the information in the documents could be used to the injury of the United States or to the advantage of any foreign nation, and acted with the intent to harm his country or assist another. *See id*. at 626. Documents that Mr. Drake submitted as part of the DOD-IG audit, which the government seeks to exclude in its motion, relate directly to the issue of whether the prosecution can prove that Mr. Drake acted with the requisite intent under § 793(e), and therefore are relevant and admissible

---

"potentially damaging to the United States," *United States v. Morison*, 844 F.2d 1057, 1072 (4th Cir. 1988)), means that disclosure of such information would be likely to cause imminent serious injury to the United States. *See New York Times*, 403 U.S. at 726-27 (Brennan, J., concurring). In other words, Mr. Drake is seeking a heightened standard of *mens rea* based on the First Amendment, not an affirmative defense. *See* Defendant's Motion to Dismiss Counts 1-5, at 32.

[5] To prove that Mr. Drake knew the information contained in the documents related to the national defense, the government must also demonstrate that he knew the information was "closely held" by the United States. *See Rosen*, 445 F. Supp. 2d at 625; *Morison*, 844 F.2d at 1071.

5

in this case.

The documents that form the basis of Count 3 through 5 are documents that relate to the DOD-IG investigation that were recovered from Mr. Drake's basement. They are a subset of a vast collection of documents and information shared with DOD-IG auditors electronically and in hard copy. They were found in a massive collection of unclassified documents kept on the floor and in various locations throughout the basement. To negate evidence that Mr. Drake "willfully" retained the basement documents, and to show that any retention resulted from confusion or mistake, the defense intends to present evidence of the sheer volume of documents that Mr. Drake possessed and shared with the DOD-IG audit. The volume of audit documents will provide a contrast with the slight number of DOD-IG documents recovered from his basement, and thus, will evidence inadvertence.

The defense will also present evidence that these documents – separated from each other – were recovered in a tremendous volume of unclassified, non-DOD-IG documents scattered in the basement. Together, the large quantity of documents Mr. Drake was handling and collecting – at home and work – will evidence the likelihood of mistake. *See United States v. Robinson*, 505 F.3d 1208, 1229 (11th Cir. 2007). To accurately capture the significant potential for mistake, the defense must be allowed to present at trial the vast universe of DOD-IG documents and contrast it with the random, stray DOD-IG documents recovered in the basement amid a sea of unclassified documents.

Furthermore, for the jury to fully grasp the random nature of the DOD-IG documents at issue in the Indictment, Mr. Drake must also be allowed to show the jury the substance of all the documents he gave to the DOD-IG investigators. The substance of the documents that form the basis for Counts Three through Five is insignificant, in terms of their potential impact on national defense, when compared to most of the other DOD-IG documents that Mr. Drake shared with the auditors. The fact

that the documents listed in the Indictment are not the most significant of the documents that Mr. Drake shared with the DOD-IG indicates that Mr. Drake did not bring the listed documents home willfully, but rather due to mistake or inadvertence.

The government claims that the DOD-IG documents are not relevant in this case because they merely show Mr. Drake's motive. *See* Gov't Mot. at 25. But this again misses the point. The documents are relevant, not because they reflect Mr. Drake's motive, but because they directly bear on the question of whether he acted with the intent necessary to support a conviction under 18 U.S.C. § 793(e). This is the essential question to be answered in this case, and the defense has a right under the Sixth Amendment to fully address it.[6]

The government finally claims that the evidence of the full volume and substance of the DOD-IG documents found in Mr. Drake's basement is, at most, "marginally relevant," and therefore should be excluded under Rule 403 of the Federal Rules of Evidence because of its potential to "needlessly distract the jury from the question of whether [Mr. Drake] illegally retained classified documents and information[.]" Gov't Mot. at 25-26. Far from being "marginally relevant" to this question, however, the massive number of DOD-IG documents at issue here will focus the jury on the central issue in this case – whether Mr. Drake "willfully" possessed the very small number of DOD-IG documents he is charged with possessing. This is the crucial issue in this case, and one that the defense must be allowed to fully call into question.

**III.    Evidence of Mr. Drake's Whisteblowing is Also Directly Relevant to the Obstruction of Justice Count.**

---

[6] In its motion, the government also claims that the full scope and substance of the DOD-IG documents is insufficient to establish a necessity defense, and therefore is irrelevant on that basis. *See* Gov't Motion at 24. As noted above, however, this claim is of no moment here, because Mr. Drake has no intention of putting forth such a defense.

7

Mr. Drake's cooperation with the DOD-IG audit and the outcome of the audit also are directly relevant to Count Six, which charges Obstruction of Justice in violation of 18 U.S.C. § 1519. The government alleges:

> ¶ 27. "Mr. Drake knowingly altered, destroyed, mutilated, concealed and covered up records, documents and tangible objects, namely classified and unclassified documents, including emails and handwritten notes, with the intent to impede, obstruct and influence the investigation of a matter within the jurisdiction of the Federal Bureau of Investigation, and in relation to and contemplation of such matter, that is, an investigation into alleged disclosures of classified information to the media and to Reporter A."

In support of this charge, the government claims that Mr. Drake had a "scheme to retain classified information," and as part of that scheme, he communicated with Reporter A through hushmail, a secure e-mail service. *See* Indictment ¶ ¶ 10-13. The government also alleges that Mr. Drake shredded documents "in part to conceal his relationship with Reporter A and prevent the [FBI's] discovery of evidence that would have linked" him to the retention of classified documents intended for Reporter A. *Id.* ¶ 14.

To refute the charge that Mr. Drake intended to obstruct justice, the defense must be able to present evidence of Mr. Drake's motivation for communicating with Reporter A. He was motivated not by a malicious intent to impede an investigation by law enforcement. He was motivated by his desire to expose waste, fraud, and abuse at NSA. His mind set before and during his communications with Reporter A will be a key issue in this case – one that cannot be fully explored without presenting evidence of his cooperation with DOD-IG and the outcome of DOD-IG audit. The jury must be able to understand why he approached a reporter, and to understand that, they must be able to hear evidence of his *mens rea* at that time. The evidence of his cooperation with DOD-IG and his

8

commitment to reform are central to his *mens rea* and will support the defense theory that Mr. Drake never intended to obstruct justice.

## CONCLUSION

For these reasons and any others that may develop at a hearing on this motion, Thomas Drake requests that this Honorable Court issue an order denying the Government's Motion *in Limine* to Preclude Evidence of Necessity, Justification, or Alleged "Whistleblowing."

Respectfully submitted,

/S/

JAMES WYDA, #025298
Federal Public Defender
DEBORAH L. BOARDMAN, #28655
Assistant Federal Public Defender
Office of the Federal Public Defender
100 South Charles Street, Tower II, 9th Floor
Baltimore, Maryland 21201
Phone: 410-962-3962
Fax: 410-962-0872
Email: jim_wyda@fd.org
deborah_boardman@fd.org