**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| **v.** | * | **Criminal No. 10-0181-RDB** |
| **THOMAS ANDREWS DRAKE** | * | |

**DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS
COUNTS ONE THROUGH FIVE OF THE INDICTMENT**

The defendant, Thomas Drake, through counsel, submits this reply in support of his

Motion to Dismiss Counts One Through Five of the Indictment [Docket No. 52], and in

opposition to the government's response ("Response") [Docket No. 66].

**I.      SECTION 793(e) IS UNCONSTITUTIONALLY VAGUE.**

**A.      The Statute Fails to Provide Sufficient Notice and Constrain
the Discretion of Prosecutorial Authorities.**

As noted in the defense's initial motion, 18 U.S.C. § 793(e) is unconstitutionally vague.

The government argues otherwise, stating that § 793(e) is not vague because it is written in

language precise enough to provide persons of common intelligence with notice as to what

conduct the statute criminalizes.  The defense disagrees with this assertion.  *See* Def.'s Mem. in

Support of Mot. ("Mem") at 6-21.[1]

Admittedly, *United States v. Morison*, 844 F.2d 1057 (4th Cir. 1988), contains

considerable language supporting the government's position.  Much has changed, however, in the

nearly 23 years since that decision was issued.  Importantly, since *Morison*, there have developed

"growing concerns among courts and commentators alike over problems of vagueness and

---

[1]  The government accuses the defense of commingling factual matters with legal issues, and it claims it "will not engage in a factual tit for tat with the defendant."  Response at 3.  It then proceeds, however, to repeatedly refer to the factual allegations in the Indictment, treating them as if they had already been proven to the jury beyond a reasonable doubt.

overbreadth in contemporary federal criminal laws, let alone an antiquated statute like the

Espionage Act." *See* Hearing Before the Senate Committee on the Judiciary, Subcommittee on

Terrorism and Homeland Security, *The Espionage Act: A Look Back and A Look Forward*,

written testimony of Stephen I. Vladeck, at 12 (May 12, 2010) (attached to Def. Mem. [Docket

No. 52-4]).  In years past, courts found that, when a document was deemed classified, this

sufficiently narrowed § 793(e) to avoid constitutional questions of vagueness.  *See Morison*, 844

F.2d at 1073-74 (fact that document was classified adequately narrowed statutory phrase

"relating to the national defense" under § 793(e)).  Currently, however, the mere fact that a

document may be classified no longer puts a defendant on notice as to whether the document

does or does not relate to national defense.  *See United States v. Rosen*, 487 F. Supp. 2d 703, 705

n.1 (E.D. Va. 2007) (set of classified material not coextensive with set of national defense

information; not all classified material is national defense information under 18 U.S.C. § 793);

*United States v. Abu-Jihaad*, 600 F. Supp. 2d 362, 387-88 (D. Conn. 2009) (same).  Because the

mere fact of classification does not necessarily narrow the statute, § 793(e) provides far less

notice than it once did.

   This lack of notice is reflected by the facts of this case.[2]  *Morison* involved the

---

[2]   The *Morison* Court emphasized that the constitutional principle of vagueness is
decided as "applied," on a case by case basis.  Thus, the Fourth Circuit's determination that §
793 was not constitutionally vague as applied to Morison leaves open the possibility that the
statute may be constitutionally infirm as applied to Mr. Drake.  *See Morison*, 844 F.2d at 1070
(rejecting defendant's claim that §§ 793(d) and (e) are vague "as applied to him") (emphasis
added); *id*. at 1073 (Espionage Act not unconstitutionally vague "as applied to this defendant")
(emphasis added); *id*. at 1086 (emphasizing need for "judicious case-by-case" analysis in
Espionage Act cases) (Phillips J., concurring).
   Based on the circumstances discussed above, § 793(e) is unconstitutionally vague as
applied to Mr. Drake in this case.

unauthorized possession of satellite secured photographs of Soviet naval preparations and secret intelligence reports. 844 F.2d at 1060. This type of information undoubtedly and significantly related to the national security. *See also United States v. Rosen*, 445 F. Supp. 2d 602, 608 (E.D. Va. 2006) (information relating to terrorist activities in Central Asia and government strategy pertaining to Middle East country);[3] *United States v. Poulsen*, 41 F.3d 1330, 1333 (9th Cir. 1994) (stolen computer tapes containing air tasking orders), *overruled on other grounds, United States v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008). Thus, the defendant's training and expertise in the field of governmental secrecy and intelligence operations made it abundantly clear that such information would be potentially damaging to the national defense if disclosed, thereby providing the notice necessary to render § 793(e) constitutional  *See Morison*, 844 F.2d at 1073-74.

In this case, conversely, the issue of whether the documents listed in the Indictment presented any likelihood of damaging the national defense if disclosed is a much more difficult question. These documents do not contain information that clearly involves sensitive intelligence information relating to actions of the United States military or of a foreign government. None of the documents recovered from Mr Drake's home had classification markings at the time they were recovered. Indeed, for one of them, the government has conceded that it was disseminated as an unclassified document. And another document was declassified a

---

[3] In its earlier memorandum, the defense often cites *Rosen*. In that case, the defendants were charged with conspiring to willfully transmit information relating to the national defense in violation of §§ 793(d) and (e). One defendant challenged the constitutionality of § 793(e) on the grounds that the statute was vague, overbroad, and violated his First Amendment rights. *See* 445 F. Supp. 2d at 610. Because *Rosen* involved such challenges to § 793(e) the case is relevant here, particularly its interpretation of the statute's requirement that the defendant act "willfully" and that the information or documents at issue must "relat[e] to the national defense."

few months after the indictment was issued.  In these circumstances, the statute did not provide

Mr. Drake with sufficient notice as to whether the documents he allegedly possessed actually

related to the national defense under § 793(e).  *Cf id*. at 1085 (Espionage Act has no applicability

to multitude of leaks that pose no conceivable threat to national security, but threaten only to

embarrass a government official) (Wilkinson J., concurring).

In addition, the Fourth Circuit's decision in *Morison* was based on the notion that the

constitutional difficulties created by the ambiguities of § 793(e)'s text may be corrected by the

government's careful application of the statute to cases that truly involve sensitive intelligence

information, and not to cases that merely involve documents and information which expose

governmental mismanagement and waste.  *See id*. at 1084 ("Even if juries could ever be found

that would convict those who truly expose governmental waste and misconduct, the political

firestorm that would follow prosecution of one who exposed an administration's own ineptitude

make such prosecutions a rare and unrealistic prospect.") (Wilkinson J., concurring).  Since

*Morison*, this notion has increasingly been called into question.  *See United States v. Stevens*, __

U.S. __, 130 S. Ct. 1577, 1591 (2010) ("We would not uphold an unconstitutional statute merely

because the Government promised to use it responsibly.").

Indeed, a statute written so broadly that it allows the government wide discretion in

determining whether or not to prosecute is itself constitutionally vague.  A statute is

impermissibly vague when it is couched in language so ambiguous that it potentially may be

applied to a wide swath of conduct depending purely on the unbridled decisionmaking of

government officials.  Under these circumstances, the statute violates due process by failing to

provide explicit standards for law enforcement authorities, thus allowing for arbitrary

enforcement.  *See Papachristou v. City of Jacksonville*, 405 U.S. 156, 168-71 (1972); *see also*

*Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972) ("vague law impermissibly delegates

basic policy matters" to law enforcement authorities);  *Smith v. Goguen*, 415 U.S. 566, 575

(1974) ("Statutory language of such a standardless sweep allows policemen, prosecutors, and

juries to pursue their personal predilections.  Legislatures may not so abdicate their

responsibilities for setting the standards of the criminal law.").

> **B.**      **Section 793(e)'s *Mens Rea* Requirement is Unconstitutionally**
>            **Vague.**

Section 793(e)'s specific intent requirement is also unconstitutionally vague.  *See*

Def. Mem. at 10-14.  In its response to this argument, the government criticizes the defense for

applying § 793(e)'s "reason to believe" language to the retention of documents and not merely to

the communication of oral information.  It is the defense's position, however, that, unless the

"reason to believe" language is applied to the retention of documents under § 793(e), thereby

requiring that Mr. Drake have acted with an intent to injure the United States, the statute is

unconstitutional.  Because the statutory text does not support such a reading, it is impermissibly

vague.  *See* Melville Nimmer, *National Security Secrets v. Free Speech: The Issues Left*

*Undecided in the Ellsberg Case*, 26 Stan. L. Rev. 311, 327 (1974) ("Since such a phrase (reason

to believe) regarding documents is not present in subsections 793(d) and (e), those subsections

are overbroad [and vague], and thus invalid under the first amendment.").[4]

---

[4]  To the extent that *Morison* rejected this argument, the defense continues to assert that, unless the statute requires that Mr. Drake acted with an intent to injure the United States, it is unconstitutional as applied to him.  At the very least, a jury instruction that narrows the statute to this degree is necessary.  Importantly, the Supreme Court has not yet spoken on this issue and it is essential that, at the very least, the defense preserve it for further review.

Due to § 793(e)'s constitutional infirmities, courts have "reached a series of disparate conclusion as to the requisite *mens rea* that individuals must have to violate the Act."  The Espionage Act and the Legal and Constitutional Issues Raised by Wikileaks, written testimony of Stephen I. Vladeck, at 2-3 (Dec. 16, 2010) (attached to Def. Mem. [Docket No. 52-3]).  For these reasons, § 793(e)'s requirement that a defendant act "willfully" is vague and the statute is unconstitutional.

### C.    Section 793(e)'s Requirement That the Documents "Relat[e] to the National Defense" is Unconstitutionally Vague.

As noted above, it is a very close question whether the documents Mr. Drake allegedly retained in this case related to the national defense under 18 U.S.C. § 793(e).  These documents in no way involve sensitive matters of grave importance relating to military intelligence as do documents in other cases prosecuted under the Espionage Act.  *Cf. Morison*, 844 F.2d at 1061-62; *Rosen*, 445 F. Supp. 2d at 608; *Poulsen*, 41 F.3d at 1333; cited *supra* at 3.  Even recognizing that § 793(e) may, in certain cases, apply to conduct that does not represent classic spying and espionage activity, this does not mean that all bets are off, and that the statute can be applied to any type of conduct no matter how benign.  It is not an overstatement to say that the Espionage Act has never been applied to facts such as those alleged in this case.  If it does apply here, the statute is vague and unconstitutional.[5]

---

[5]  Although the Supreme Court in *Gorin v. United States*, 312 U.S. 19 (1941), found this phrase to not be vague, it did so in a case that involved a defendant who possessed documents containing over 50 reports relating to Japanese military activities.  *See id*. at 22-23.  It is the defense's position that this makes *Gorin* distinguishable, particularly given that questions of vagueness are decided on a case by case basis.

**D.      The Phrase "Injury to the United States or to the Advantage of any Foreign Nation" is Unconstitutionally Vague.**

In arguing that this phrase does not apply in this case, the government reiterates its position that Mr. Drake need not have intended that the documents he allegedly retained would be used to injure the United States or assist a foreign nation.  However, for the reasons stated above, unless that language is read to apply to this case under § 793(e), the statute is unconstitutional.  *See supra* at 5.  Because this statutory phrase must apply here, the defense may validly challenge its constitutionality.  For the reasons set forth in the defense's earlier memorandum of law, the phrase is impermissibly vague.  *See* Def. Mem. at 17-20; *see also supra*, at 5-6.

## II.      SECTION 793(e) IS UNCONSTITUTIONALLY OVERBROAD.

In regard to the documents at issue here, Mr. Drake could not have reliably determined whether they contained information that could potentially damage national security if disclosed. Under these circumstances, the statutory phrase "relating to the national defense" is not only vague, but also overbroad, particularly in light of the wide range of conduct § 793(e) has been interpreted to cover.  *See* Nimmer, *supra*, 26 Stan L. Rev. at 326 (§ 793(e) is facially overbroad because "[t]here are innumerable documents referring to military or naval establishments, or related activities of national preparedness, which threaten no conceivable security or other government interests that would justify punishing one who 'communicates' such documents"). Moreover, because conduct criminalized by the statute includes actions directly related to the press' exposure of matters of public significance, the statute violates important First Amendment interests.

In arguing that 18 U.S.C. § 793(e) is not overbroad, and does not apply to conduct protected by the First Amendment, the government cites several cases that do not apply here.  For example, in *Zemel v. Rusk*, 381 U.S. 1 (1965), the Supreme Court found that the Secretary of State's refusal to validate an individual's passport for travel to Cuba did not deny him rights guaranteed by the First Amendment.  *See id.* at 16; *see also Haig v. Agee*, 453 U.S. 280, 309 (1981) (same).  This is a wholly different factual scenario than that presented in this case – Mr. Drake's alleged retention of at least some documents listed in the Indictment with the intent to provide information contained in those documents to a reporter, in order to expose governmental waste.

These facts do implicate both Mr. Drake's and the newspaper's[6] First Amendment rights.  The government in this case carefully chose to charge Mr. Drake with retention of documents, rather than the communication of information contained in those documents.  Yet, the government goes into detail describing how Mr. Drake's alleged retention of at least some documents were the first step in his plan to provide those documents to a reporter.  *See* Indictment ¶¶ 9-13.  Thus, the government's own allegations indicate that this case implicates important First Amendment rights.

The government also asserts that Mr. Drake waived his First Amendment claim by signing a nondisclosure agreement that restricted "his ability to discuss *classified* information[.]"

---

[6] Under these circumstances, Mr. Drake may properly invoke the First Amendment rights of Reporter A.  *See Morison*, 844 F.2d at 1081 (assuming that defendant is entitled to assert serious claims of the press) (Wilkinson J., concurring).  *See also Sec. of State of Md. v. Joseph H. Munson Co., Inc.*, 467 U.S. 947, 956-57 (1984) ("Litigants . . . are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.") (quotation omitted).

Response at 2.  In making this claim, the government misstates the language of the nondisclosure agreements.  Those agreements, according to the Indictment, stated that Mr. Drake should never divulge "protected information."  Thus, if Mr. Drake truly believed the information he allegedly retained was not classified and/or did not relate to the national defense (that is, would not be potentially damaging to national security if disclosed), he also did not believe the documents were "protected information."  *Cf. Morison*, 844 F.2d at 1086) ("I assume we reaffirm today, that notwithstanding information may have been classified, the government must still be required to prove that it was *in fact* 'potentially damaging . . . or useful,' *i.e.*, that the fact of classification is merely probative, not conclusive, on that issue. . . .  This must be so to avoid converting the Espionage Act into the simple Government Secrets Act which Congress has refused to enact.") (Phillips J., concurring) (emphasis and ellipsis in original).

In other words, the same *mens rea* is required to violate both the nondisclosure agreements and § 793(e).  Under the agreements, Mr. Drake did not waive any rights, including those under the First Amendment, because he did not act with the specific intent necessary to support a conviction under § 793(e).[7]

The government also claims that Reporter A has no First Amendment right to be a party to a crime.  *See* Response at 25-28; *see also Stevens*, 130 S. Ct. at 1584 (prevention and punishment of speech integral to criminal conduct does not present constitutional problem).  But,

---

[7]   The nondisclosure agreements in this case, as described in the Indictment, are therefore distinguishable from those signed by the defendants in, for example, *Knopf, Inc. v. Colby*, 509 F.2d 1362, 1365 (4th Cir. 1975) (agreement prohibited public disclosure of classified information); *Wilson v. C.I.A.*, 586 F.3d 171, 183 (2nd Cir. 2009) (agreement not to disclose classified information); and *Snepp v. United States*, 444 U.S. 507, 508 (1980) (agreement pledging not to divulge classified information).

of course, the central issue in this case is whether Thomas Drake committed a crime under §

793(e).  Not surprisingly, the defense strenuously contends that Mr. Drake committed no offense

under that statute.  Because there was no violation of § 793(e), the press had the right to receive

and report on information exposing government mismanagement and waste.

### III.     AT THE VERY LEAST, THIS COURT MUST IMPOSE NARROWING JURY INSTRUCTIONS TO ENSURE THE CONSTITUTIONALITY OF 18 U.S.C. § 793(e).

No court has found that 18 U.S.C. § 793(e) is constitutional on its face.  Instead these

courts have interpreted § 793(e) to require significant limiting jury instructions in an attempt to

save the statute.  In this case, assuming for argument's sake that this Court finds § 793(e) to be

constitutional, it must narrow the statute by instructing the jury as to the meanings of the

essential statutory phrases as judicially interpreted.  In Def. Mem. at 31-34, the defense sets forth

the jury instructions required under § 793(e).  The government does not challenge any of these

suggested instructions.  Therefore, it is undisputed that such instructions are necessary in this

case, lest the statute be rendered unconstitutional.

**CONCLUSION**

For these reasons and any others presented at a hearing on the defense's motion, Mr.

Drake requests that this Honorable Court dismiss Counts One through Five based on the

unconstitutionality of 18 U.S.C. § 793(e).

Respectfully submitted,

/S/

JAMES WYDA, #025298
Federal Public Defender
DEBORAH L. BOARDMAN, #28655
Assistant Federal Public Defender
Office of the Federal Public Defender
100 South Charles Street, Tower II, 9th Floor
Baltimore, Maryland 21201
Phone: 410-962-3962
Fax: 410-962-0872
Email: jim_wyda@fd.org
        deborah_boardman@fd.org

11