IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| v. | * | Criminal No. 10 CR 00181 RDB |
| | * | |
| **THOMAS ANDREWS DRAKE,** | * | |
| | * | |
| Defendant. | * | |

******

**GOVERNMENT'S REPLY TO DEFENDANT'S RESPONSE
TO MOTION IN LIMINE TO EXCLUDE ANY EVIDENCE OR DEFENSE
ATTACKING THE LEGALITY OF THE REGULATORY SCHEME RELATING TO
THE DISCLOSURE OF CLASSIFIED INFORMATION**

The United States of America, by and through William M. Welch II, Senior Litigation Counsel, and John P. Pearson, Trial Attorney, Public Integrity Section, Criminal Division, United States Department of Justice, respectfully files this reply to the *Defendant's Response to Government's Motion in Limine to Exclude Any Evidence Or Defense Attacking the Legality of the Regulatory Scheme Relating to the Disclosure of Classified Information*. Dkt. 71.  The defendant's response should be rejected.

The defendant's approach to this case is now clear.  Not only does he want to put on a jury nullification case, but now he also wants to put NSA and the classification system on trial by presenting a "protest" defense in which he attacks the propriety of the classification system.  The defense expert apparently intends to testify about the "appropriate assignments of classification controls under the Executive Order and the consequences and pervasiveness of inappropriately assigning classification controls." *See Response*, pg. 3 fn. 3, Dkt. 71 (emphasis added) (hereinafter "*Response*").  That subject area of the defense expert's testimony is not relevant, nor

does it satisfy the requirements of Rule 702 because that area of the defense expert's testimony does not aid the jury. The jury, for example, can readily understand the consequences of an erroneous classification.

Second, Rule 704(b) specifically forbids an expert from testifying about a defendant's state of mind. Here, the defense expert plans to do just that. The defendant intends to have his expert testify about whether the defendant "could have acted with the knowledge that his conduct was in violation of 18 U.S.C. § 793(e)." *See Response*, pg. 5. Putting aside the defense expert's ability to read the defendant's mind from four years ago, Rule 704(b) forecloses such testimony.

I.   **The "Pervasiveness and Consequences Of Inappropriately Assigned Classification Controls" Is Inadmissible Under Rule 403 Because It Is Irrelevant To The Charged Crimes And Confusing To The Jury.**

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. Even if relevant, Rule 403 provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *United States v. Iskander*, 407 F.3d 232, 238 (4th Cir. 2005); *United States v. Bell*, 1999 WL 25552 at *6 (4th Cir. 1999); *United States v. Lancaster*, 96 F.3d 734, 744 (4th Cir. 1996).

There is no exception to these evidentiary rules for expert testimony. Expert testimony must still be relevant, and if it is not, it is inadmissible. *United States v. Thomas*, 2006 WL 1892404 at *4 (4th Cir. 200 ). *See also United States v. Lee*, 589 F.2d 980, 990 (9th Cir. 1979)

For example, in *Lee*, 589 F.2d at 983, the defendant had been convicted of selling the

"Pyramider" project documents to the Russians. The Pyramider project documents had been marked and classified as "Top Secret", and the defendant wanted to "challenge the propriety of the classification." *Id*. at 983, 990. The defendant called "an alleged expert on the classification of documents under this executive order" and inquired of the expert the "'meaning and application'" of the executive order. *Id*. According to the defendant, the expert's testimony would "'afford the jury a standard by which they could determine if the Pyramider documents were properly classified as Top Secret.'" *Id*.

The Ninth Circuit found that the "inquiry was totally irrelevant to the issues of this case and of no help to the jury." *Id*. According to the Ninth Circuit, the defendant had been found guilty of "gathering and transmitting documents which relate to the `national defense,'" in violation of Title 18, United States Code, Sections 793 and 794. *Id*. "There is no requirement in these statutes that the documents be properly marked `Top Secret' or for that matter that they be marked secret at all." *Id*. Instead, according to the *Lee* Court, it "is enough that they related to the national defense and that they are transmitted with the intent to advantage a foreign nation or injure the United States." *Id*.

> Since the "expert testimony" of Florence on this subject of improper v. proper classification would not give "appreciable help" to the jury in deciding the guilt or innocence of Lee, it was properly excluded by the trial court. Such a decision "is committed to the 'broad discretion' of the trial judge and his action will not be disturbed unless manifestly erroneous."

Accordingly, the Ninth Circuit affirmed the district court's decision to exclude the testimony of the defense expert. *Id*. *See also Thomas*, 2006 WL 1892404 at *4 (excluding as irrelevant a defense expert's proposed testimony regarding the common practices of Baltimore drug dealers).

In this case, the "pervasiveness and consequences of inappropriate classifications" is irrelevant to the charged crimes. The classifications appearing on the charged and uncharged documents are one factor for the jury to consider in finding willfulness. In other words, the various classifications serve as notice to the defendant of the level of importance of the document and a heightened sensitivity in handling the document, and therefore necessarily require explanation. In addition, the defendant himself classified as "Secret" the subject matter contained in some of the charged or uncharged classified documents, or admitted during his interviews with the FBI that he knew that the subject matter contained in the charged and uncharged documents was classified. Consequently, testimony about classification levels is relevant to prove willfulness and rebut any claim of negligence, mistake or accident, but whether classifications are proper or improper generally is not relevant to the charged crimes.

In this case, the government does not go so far as the Ninth Circuit did in *Lee*, but *Lee* and *Thomas* make clear that plainly irrelevant testimony is not admissible. The government does not dispute that the proposed defense expert can offer testimony about: (1) Executive Order 13526; (2) its purposes; (3) its standards; (4) its application to the charged and uncharged classified documents in the present case; and (5) whether the charged and uncharged documents relate to the national defense. If the charged classified documents are in fact not related to the national defense, then the government has not met its burden. But the "pervasiveness and consequences" of inappropriate classifications have no place in the defense expert's testimony.

First, assuming arguendo the existence of "pervasive inappropriate classifications," a fact that the government disputes, that fact has no bearing on the classifications for the charged and uncharged classified documents in this case. The alleged "pervasiveness" of inappropriate

4

classifications does not make any of the classified documents in this case any more likely or less likely to be properly classified and related to the national defense. The alleged existence of "pervasive inappropriate classifications" does not make the classification in this case any less accurate. There is a disconnect between what the defendant hopes to prove and the facts of this case.

Second, assuming arguendo the existence of "pervasive inappropriate classifications," that fact begs the question of by whom. Inappropriate classifications by one intelligence agency has no bearing on classification decisions made by another intelligence agency. Indeed, inappropriate classifications made by a large, unidentified group of classification authorities within the entire intelligence community has no bearing on the decisions made by the government's expert in this case. Once again, there is no logical connection between the decisions made by the government expert in this case and the defense expert's proposed testimony.

In effect, the testimony of the defense expert is essentially inadmissible Rule 404(b) evidence. Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith . . ." In effect, the defendant wants the jury to believe that because of the alleged existence of "pervasive inappropriate classifications," then the government's expert in this case must have inappropriately classified the charged and uncharged classified documents in this case. That argument is classic, inadmissible Rule 404(b) evidence.

Third, the classification system is what it is. The defendant had to make his decisions under that system whether he liked it or not. Once again, assuming arguendo the existence of

some generalized notion of pervasive "inappropriate classifications" and their consequences, the defendant certainly had no right to rely on such a concept, and even if he did, it is no defense. *United States v. Passero*, 577 F.3d 207, 210 n.7 (4th Cir. 2009) (evidence that the defendant neither knew about or relied upon was not relevant, and even if were, constituted a mistake of law, which is no defense).

Finally, evidence of pervasive "inappropriate classifications" and their consequences will cause jury confusion and force a mini-trial on the propriety of the classification system. Such evidence will distract the jury from the central issues in the case and waste judicial resources. *United States v. Queen,* 132 F.3d 991, 994 (4th Cir.1997) (quoting Fed.R.Evid. 403). *See also Old Chief v. United States*, 519 U.S. 172, 182-186 (1997)(evidence may be excluded under Rule 403 if its probative value is substantially outweighed by certain dangers, including unfair prejudice, confusion of the issues, or misleading the jury).

**II.     The "Consequences Of Inappropriately Assigned Classification Controls" Is Inadmissible Under Rule 702 Because That Concept Is Within The Common Knowledge Of The Jury.**

Rule 702 of the Federal Rules of Evidence permits an expert to testify if his "knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." An expert's testimony is also inadmissible if the testimony is within the common knowledge of the jury, and therefore does not help the jury. *United States v. Barsanti*, 943 F.2d 928, 432-433 (4th Cir. 1991). *See Scott v. Sears, Roebuck & Co.,* 789 F.2d 1052, 1055 (4th Cir.1986)(holding that "Rule 702 makes inadmissible expert testimony as to a matter which obviously is within the common knowledge of jurors because such testimony, almost by definition, can be of no assistance."). *See also* 29 Charles Alan Wright & Victor James Gold, *Federal Practice and*

*Procedure* § 6274 (1997) (stating that "[t]he most important factor in determining whether expert testimony will 'assist [the trier of fact]' is the jury's need for expert testimony to accurately determine the facts.'").

The consequences of alleged "pervasive inappropriate classifications" is readily understandable to a jury. It means that more, not less, information becomes classified. That an expert would need to explain to a jury that concept, i.e. "pervasive inappropriate classifications" equates to more information, not less, being classified is patently ridiculous.[1] No specialized training or knowledge is necessary for the jury to grasp and appreciate that concept. Not only is the testimony totally irrelevant, but it does not survive admissibility under Rule 702. *See also Barsanti*, 943 F.2d at 8 (holding that expert testimony unnecessary to show that certification on HUD mortgage application that property not yet purchased is "owner-occupant" did not make sense).

### III.     The Defense Expert's Proposed Testimony About What The Defendant Knew (Or Did Not Know) Four Years Ago Is Inadmissible Under Rule 704(b).

Rule 704(b) specifically provides that "[n]o expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or a defense thereto. Such matters are for the trier of fact alone." Fed.R.Evid.

---

[1] If the expert intends to extrapolate from that concept into testimony that the public as a whole has less information at its disposal, or is deprived of important information, that testimony is excludable as unduly prejudicial under Rule 403 because of the possibility of inflaming the emotions of any particular juror. *See United States v. Aramony,* 88 F.3d 1369, 1378 (4th Cir. 1996)(internal quotation marks omitted) (stating that evidence is unfairly prejudicial and excludable under Rule 403 "when there is a genuine risk that the emotions of a jury will be excited to irrational behavior, and ... this risk is disproportionate to the probative value of the offered evidence"). It also would be inadmissible under Rule 702.

704(b).  *See also United States v. Moore*, 2005 WL 1023249 at *1 (4th Cir. 2005).(affirming district court's exclusion of "expert testimony as to his ability to appreciate the wrongfulness of his actions" under Rule 704(b)); *United States v. Woodson*, 1998 WL 654449 at *2 (4th Cir. 1998)(holding that "[q]uestions to the expert and the expert testimony must avoid any reference to "intent" and the "context of the testimony [must] make [ ] clear . . . that the opinion is based on knowledge of general criminal practices, rather than 'some special knowledge of the defendant's mental processes.'").

In *United States v. Fowler*, 932 F.2d 306, 315 (4th Cir. 1991), the defendant sought to admit the testimony of two expert witnesses, who "would have testified that the regulations were confusing, vague, and uncertain, that Fowler's interpretation of them was `at least arguably correct.'"  In addition, the proposed defense experts would have testified that "there was room for potential confusion concerning the documents that Fowler converted," and that "much of the material Fowler conveyed was available to the public." *Id*.  The defendant "*proffered this testimony to show that Fowler lacked specific intent to violate the law*." *Id*. (emphasis added).

The Fourth Circuit affirmed the district court's exclusion of the proposed expert testimony under Rule 704(b). *Id*.  The Court stated that

> [f]rom all the evidence, including Fowler's actions, statements, and transactions with his coconspirators, the jury had to determine whether he was confused or culpable.  From this evidence the jury could decide whether he acted with specific intent to violate the law. *This inquiry is a factual issue that juries regularly decide, and they need no expert witnesses to speculate about a defendant's state of mind*.  The expert witnesses could not testify that Fowler was confused, not culpable.  To the extent that the witnesses would have ventured an opinion that Fowler did not have the mental state constituting an element of the crime, specific intent, Rule 704(b) would have barred their testimony.

8

*Id*. (emphasis added).  The Fourth Circuit concluded by stating, "[e]xpert witnesses are not intended to fill the role of oath helpers of olden times." *Id*.

What the defense expert proposes to do in this case is no different than the excluded testimony in *Fowler*.  The defense expert wants to testify about the defendant's intent and knowledge, an essential element of the charged crimes.  The proposed testimony is nothing more than a blatant invasion of the jury's province as the finder of fact.  Rule 704(b) specifically prohibits that kind of testimony.

Moreover, an expert does not need to assist the jury in deciding intent and knowledge.  Juries decide the issue of intent and knowledge every day in courts across the country, and this case is no different.  The jury is uniquely suited to make those factual determinations, and an expert certainly will be of no assistance in that regard.

### III.  Conclusion

Based upon the foregoing, the United States respectfully requests that the Court deny the defendant's opposition, and grant the government's motion in limine as argued above..

Respectfully submitted this   18th   day of March 2011.

                For the United States:

                /s/ William M. Welch II
                Senior Litigation Counsel
                United States Department of Justice
                300 State Street, Suite 230
                Springfield, MA 01105
                413-785-0111 (direct)
                William.Welch3@usdoj.gov


## CERTIFICATE OF SERVICE

      I hereby certify that I have caused an electronic copy of the foregoing motion to be served via ECF upon James Wyda and Deborah Boardman, counsel for defendant Drake.

                                                /s/ William M. Welch II
                                                Senior Litigation Counsel
                                                United States Department of Justice