IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| Plaintiff, | * | |
| v. | * | Criminal No. RDB 10-181 |
| THOMAS ANDREWS DRAKE, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

The Defendant, Thomas A. Drake ("Mr. Drake" or "Defendant"), has filed the pending motions challenging (1) the constitutionality of Sections 5 & 6 of the Classified Information Procedures Act ("CIPA"), 18 U.S.C.App. III, and (2) Counts 1 through 5 of the Indictment as unconstitutionally vague.  The issues have been fully briefed and a hearing was held on Thursday, March 31, 2011.  For the reasons indicated on the record and those set forth below, Defendant's Motion for a Declaration that Sections 5 & 6 of CIPA are Unconstitutional (ECF No. 51) and Defendant's Motion to Dismiss Counts 1 through 5 of the Indictment (ECF No. 52) are DENIED.

## BACKGROUND

In August 2001, Mr. Drake joined the National Security Agency ("NSA") as the Chief of the Change Leadership and Communications Office in the Signals Intelligence Directorate.  At the NSA, his duties were comprised of changing process and improving efficiency.  In January 2003, investigators from the Department of Defense Inspector General's ("DOD IG") Office contacted Mr. Drake and asked him to serve as a witness for an investigation into a complaint of

fraud, waste and abuse at the NSA regarding the development of a program entitled TRAILBLAZER and the choice not to develop a program entitled THINTHREAD that was more viable and cost-effective.  Mr. Drake agreed, and during the course of this investigation, he cooperated extensively with the DOD IG's Office.  Mr. Drake had "hundreds of email exchanges" with the investigators, met with investigators in person on "numerous occasions" and "frequently . . . hand-delivered documents to the investigators."  Mot. Dismiss at 4-5 (ECF No. 52-1.).

In 2004, the Inspector General issued an audit finding regarding its investigation, which concluded that the NSA had been inefficiently using its resources in developing the TRAILBLAZER program.  Several newspaper articles written by Reporter A discussed these findings.  The Government alleges, among other things, that Mr. Drake was one of the sources of information for these newspaper articles.  *See* Indictment ¶¶ 9-14.

On April 14, 2010, Mr. Drake was charged, in a ten count indictment, with retention of classified information (Counts 1-5), obstruction of justice (Count 6) and making a false statement to a Government agent (Counts 7-10).  *See* 18 U.S.C. §§ 793(e), 1519, and 1001(a)(2).  First, this Court will address Defendant's procedural arguments in its Motion for a Declaration that Sections 5 & 6 of CIPA are Unconstitutional (ECF No. 51).  Second, this Court will address Defendant's substantive arguments in its Motion to Dismiss Counts 1 through 5 of the Indictment (ECF No. 52) because 18 U.S.C. § 793(e) is unconstitutionally vague as applied and overly broad under the First Amendment.  Counts 1 through 5 specify five classified documents that were found in Defendant's home, and allege that Mr. Drake willfully retained these documents for the purpose of sharing them with Reporter A.

ANALYSIS

I.      **Defendant's Motion for a Declaration that Sections 5 & 6 of CIPA are Unconstitutional (ECF No. 51)**

Mr. Drake contends that CIPA Sections 5 & 6 are unconstitutional as applied in this case. Section 5 requires a defendant to provide notice to the United States and this Court if he "reasonably expects to disclose or cause the disclosure of classified information."   Section 6 provides for a pre-trial hearing on the classified evidence during which determinations will be made regarding the use, relevance or admissibility of the classified information that would otherwise be made during the trial or pretrial proceedings.   Mr. Drake contends that these provisions: (A) violate his Fifth Amendment right not to be penalized for his pretrial silence and Fifth and Sixth Amendment rights to testify in his own defense; (B) violate his Sixth Amendment right to confront and cross-examine witnesses against him; and (C) violate his Fifth Amendment right to due process of law.

Before turning to Defendant's specific arguments, a brief summary of the Classified Information Procedures Act ("CIPA") is necessary.   As the United States District Court of the Southern District of New York explained in *United States v. Hashmi*, 621 F. Supp. 2d 76, 80 (S.D.N.Y. 2008):

> CIPA was a legislative response to the problem of "graymail," whereby a defendant "threatens to reveal classified information during the course of his trial in the hope of forcing the government to drop the criminal charge against him." *United States v. Anderson,* 872 F.2d 1508, 1514 (11th Cir. 1989); *United States v. Pappas,* 94 F.3d 795, 798, 799 (2d Cir. 1996). CIPA was designed "to reconcile, on the one hand, a criminal defendant's right to obtain prior to trial classified information and introduce such material at trial, with, on the other hand, the government's duty to protect from disclosure sensitive information that could compromise national security." *United States v. Libby,* 467 F. Supp. 2d 20, 35, 37 (D.D.C. 2006).   The statute is a procedural tool allowing a court to make rulings on admissibility and relevance before the commencement of trial.   *Id.*

As *Hashmi* also noted, "the constitutionality of the statute has been tested repeatedly and uniformly upheld." *Id*. (citing *United States v. Wilson,* 750 F.2d 7, 9 (2d Cir. 1984) ("We see no constitutional infirmity in the pretrial notification requirements of Section 5."). The United States Court of Appeals for the Fourth Circuit has specifically upheld the constitutionality of these CIPA sections, holding that the provisions do not violate a defendant's confrontation rights or privilege against self incrimination. *United States v. Wilson,* 721 F.2d 967, 976 (4th Cir. 1983); *see also United States v. Yunis,* 924 F.2d 1086, 1094-95 (D.C. Cir. 1991) (affirming denial of motion to dismiss on claim that CIPA discovery provisions infringed defendant's Fifth and Sixth amendment rights); *United States v. Lee,* 90 F. Supp. 2d 1324, 1326-27 (D.N.M. 2000) (upholding constitutionality of Section 5); *United States v. Ivy*, No. Crim. A. 91-00602-04, 1993 WL 316215, at *3 (E.D. Pa. Aug. 12, 1993) (upholding constitutionality of the CIPA discovery provisions and Section 5). With this background, nationwide and Fourth Circuit precedent in mind, this Court turns to Defendant's specific arguments.[1]

**A.      Right to Silence/Testify**

Mr. Drake argues that Sections 5 & 6 violate his Fifth Amendment right not to be penalized for his pretrial silence and his Fifth and Sixth Amendment rights to testify in his own defense by compelling him to notify the prosecution prior to trial of all the classified information he reasonably expects to disclose, including his own testimony, and explain the use, relevance and admissibility of that information to this Court and the Government. Section 5(a) requires Mr. Drake to give notice if he "reasonably expects to disclose or cause the disclosure of classified information" so that this Court can rule on the admissibility of the potential evidence prior to trial. Correspondingly, Section 5(b) states that this Court may preclude "any classified

---

[1] As the Government's motion notes, no court has held that Sections 5 & 6 are unconstitutional. Opp'n at 1 (ECF No. 65). Defendant conceded this point at the March 31, 2011 hearing.

information" for which notice has not been given in the event that the defendant does not comply.

The requirement that Mr. Drake disclose certain classified information or risk the possibility that this Court may preclude it at trial does not amount to a violation of his constitutional right to remain silent or testify in his own defense.  Defendants in criminal cases are frequently required to disclose elements of their defense prior to trial, and such requirements have consistently been upheld as constitutional.  *See, e.g.*, Fed. R. Crim. P. 12.1 (alibi defense); Fed. R. Crim. P. 12.2 (insanity defense); Fed. R. Crim. P. 12.3 (public authority defense); Fed. R. Crim. P. 16 (medical and scientific tests, tangible objects, and certain documents).  As best summarized in *United States v. Poindexter*, 725 F. Supp. 13, 34 (D.D.C. 1989), "The leap from the [CIPA] requirement of disclosure—similar to the disclosure of an alibi or insanity defense—to a violation of a defendant's right to testify or not to testify is too wide to be justified."

Mr. Drake's argument under *Brooks v. Tennessee*, 406 U.S. 605 (1972) that the possibility that this Court might preclude certain disclosures amounts to a "penalty" for exercising his right to remain silent is unavailing.  Though the Fifth Amendment guarantees that no person "shall be *compelled* in any criminal case to be a witness against himself" (emphasis added), there is no compulsion at issue here.  Under CIPA, Mr. Drake does not have to reveal whether he will testify, and if he fails to comply with the Section 5(a) notice requirement the only result is the potentiality that certain undisclosed classified information may be precluded. This does not compel him to testify nor does it bar him from testifying.  Though Mr. Drake may perceive that this is iniquitous, "this potentiality, when compared to the Government's interest in protecting classified information, is a legitimate regulatory interest like others the law recognizes."  *Hashmi*, 621 F. Supp. 2d at 81.  Accordingly, Sections 5 & 6 of CIPA do not

violate Mr. Drake's right to remain silent or testify in his own defense under the Fifth and Sixth Amendments.

### B.     Right to Confront and Cross-Examine Witnesses

Mr. Drake also argues that Sections 5 & 6 violate his Sixth Amendment right to confront and cross-examine witnesses against him by requiring him to notify the prosecution prior to trial and explain the significance of all the classified information he reasonably expects to elicit from prosecution witnesses on cross-examination, as well as all information that will be contained in defense counsel's questions to those witnesses.  Defendant emphasizes that the Confrontation Clause guarantees the opportunity for *effective* cross-examination, and that this requirement forces him to give the Government his cross-examination outline, deprives him of the element of surprise, and places an undue burden on him that it does not place on the Government.

The requirement that Mr. Drake disclose certain classified information he reasonably expects to obtain from witnesses does not amount to a violation of his constitutional right to confront witnesses against him.  As explained in *Lee,* "the Confrontation Clause does not guarantee the right to undiminished surprise with respect to cross-examination of prosecutorial witnesses."  90 F. Supp. 2d at 1328; *see also Poindexter*, 725 F. Supp at 34-35 (same); *Ivy*, 1993 WL 316215 at *7 ("CIPA does not . . . deprive Ivy of the opportunity to confront and question the government's witnesses at trial.").  Furthermore, the Confrontation Clause does not guarantee cross-examination "that is effective in whatever way, and to whatever extent, the defense may wish."  *Lee*, 90 F. Supp. 2d at 1328 (citing *Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986)). Instead, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination."  *Id*.  Thus, as explained above, CIPA does not mandate that Mr. Drake reveal his trial strategy, but only that he identify whatever classified

information he plans to use.  Such a "tactical disadvantage," *Lee*, 90 F. Supp. 2d at 1328, is not an infringement of Mr. Drake's constitutional rights.  Accordingly, Sections 5 & 6 of CIPA do not violate Mr. Drake's fundamental right to confront and cross-examine witnesses against him under the Sixth Amendment.

### C.      Due Process

Finally, Defendant argues that Sections 5 & 6 violate Mr. Drake's Fifth Amendment right to due process of law because they require him to disclose significant aspects of his case without imposing a mandatory reciprocal duty on the prosecution.  Defendant's argument relies primarily upon *Wardius v. Oregon*, 412 U.S. 470, 474 n.6 (1973), in which the Supreme Court noted it is traditionally "particularly suspicious" of "trial rules which provide nonreciprocal benefits to the [government] when the lack of reciprocity interferes with the defendant's ability to secure a fair trial."

The requirement that Mr. Drake disclose certain classified information does not amount to a one-sided burden in violation of the Due Process Clause.  As *Wardius* explains, due process "is only denied where the overall balance of discovery is tipped against the defendant and in favor of the Government."  *Wardius*, 412 U.S. at 474.  In *Wardius*, the Supreme Court struck down the Oregon notice of alibi statute because Oregon granted no discovery rights to criminal defendants and the statute at issue made no provision for reciprocal discovery.  *Id*.  CIPA, by contrast, narrows the factual issues at stake and authorizes this Court to impose upon the Government a continuing duty to disclose rebuttal evidence or have such evidence excluded.  *See Ivy*, 1993 WL 316215, at *5; *Lee*, 90 F. Supp. 2d at 1329.  Thus, CIPA's notice requirements are distinguishable from the notice of alibi rules at issue in *Wardius*.  Furthermore, in addition to the discovery obligations under Section 6 of CIPA, the Government must also comply with the

Federal Rules of Criminal Procedure and *Brady v. Maryland,* 373 U.S. 83 (1963).  Thus, CIPA

does not only burden a defendant, but instead the burdens are carefully balanced.  *See, e.g.*, *Lee*,

90 F. Supp. 2d at 1329 ("the burdens of discovery under CIPA and the Federal Rules of Criminal

Procedure are carefully balanced"); *Ivy*, 1993 WL 316215 at * 5 ("CIPA burdens are not one-

sided, but rather are carefully balanced"); *United States v. Poindexter,* 725 F. Supp. 13, 32

(D.D.C. 1989) (CIPA burdens not one-sided).  Accordingly, Sections 5 & 6 of CIPA do not

violate Mr. Drake's fundamental right to due process under the Fifth Amendment.

**II.    Defendant's Motion to Dismiss Counts 1 through 5 of the Indictment (ECF No. 52)**

Counts 1 through 5 of the Indictment allege that Mr. Drake violated The Espionage Act

of 1917, 18 U.S.C. § 793(e) by maintaining unauthorized possession of certain documents and

willfully retaining them.  Defendant makes two primary arguments in his Motion to Dismiss

Counts 1 through 5.  First, Mr. Drake contends that prosecuting him under the Espionage Act

violates the fair notice requirements of the Due Process clause because multiple terms in Section

793(e) "are so vague that they fail to provide him with notice of what conduct is criminal and

what conduct is not."  Mot. Dismiss at 1 (ECF 52-1).  Second, Mr. Drake argues that Section

793(e) is unconstitutionally overbroad under the First Amendment.  Third, Defendant asserts

that, if this Court concludes that Section 793(e) can withstand constitutional scrutiny, this Court

must provide limiting instructions.

**A.    Vagueness**

Defendant argues that Section 793(e) violates the fair warning requirement under the Due

Process Clause of the Fifth Amendment because the clauses addressed below are so vague that

they did not provide him notice as to what conduct is criminal and what is not.  As the Supreme

Court has explained, due process "bars enforcement" of a statute that uses "terms so vague that

men of common intelligence must necessarily guess at its meaning and differ as to its application." *United States v. Lanier*, 520 U.S. 259, 266 (1997) (internal citations omitted). Section 793(e) imposes a criminal penalty on:

> whoever having unauthorized possession of, access to, or control over any document . . . relating to the national defense, or information relating to the national defense which information the possessor has reason to believe could be used to the injury of the United States or to the advantage of any foreign nation, . . . willfully retains the same and fails to deliver it to the officer or employee of the United States entitled to receive it[.]

18 U.S.C. § 793(e). Mr. Drake takes particular issue with the clauses: "relating to the national defense;" "reason to believe could be used to the injury of the United States;" and "willfully retains." As will be discussed in more detail in Sections II.A.1-4, though Section 793(e) does not define its terms, the meaning of its essential terms—including all those challenged by Mr. Drake—have been well-settled within the Fourth Circuit since the United States Court of Appeals for the Fourth Circuit issued its opinion in *United States v. Morison*, 844 F.2d 1057 (4th Cir. 1988). As a result, Section 793(e) is not unconstitutionally vague, and provided Mr. Drake with fair notice of proscribed conduct as required by the Fifth Amendment.

### 1.    "Willfully"

Mr. Drake contends that the term "willfully" as used in Section 793(e) is unconstitutionally vague because there is no agreement in the Fourth Circuit as to what is required to show willfulness. As the Government points out, Defendant's brief suffers at its core from a conflation of the different *mens rea* requirements for criminal violations involving "documents" as opposed to "information" under Section 793(e). First, there is a distinction between the separate *mens rea* requirements. To prove Mr. Drake unlawfully retained documents under Section 793(e), the Government need prove only that he acted with simple

willfulness.  Second, the term "willful" is not constitutionally vague, but instead has a consistent meaning.

### a.       Section 793(e) Requires Proof of Simple Willfulness

Defendant's interpretation of "willfulness" under Section 793(e) is primarily informed by *United States v. Rosen*, 445 F. Supp. 2d 602 (E.D. Va. 2006).  In *Rosen*, the most recent decision in the Fourth Circuit interpreting the term "willfully" as used in this statute, the United States District Court for the Eastern District of Virginia analyzed the term "willfully" in conjunction with the phrase "reason to believe could be used to the injury of the United States."  The court concluded that Section 793(e) imposes "an additional and significant scienter requirement" over and above the standard definition of "willfulness."  *Id*. at 625.  Specifically, that court held that the Government must prove that the defendant disclosed the information "with a bad faith purpose to either harm the United States or to aid a foreign government."  *Id*.  Mr. Drake asserts that including this scienter requirement is more than adding a "judicial gloss" to the statute, and requires this Court to rewrite Section 793(e) to add omitted terms.

As the Government points out, however, Defendant's brief conflates the different *mens rea* requirements for criminal violations involving the "documents" clause and the "information" clause of Section 793(e).  Section 793(e) prohibits the willful retention of classified information by those who have unauthorized possession of (1) "any document . . . relating to the national defense," or (2) "information relating to the national defense which information the possessor has reason to believe could be used to the injury of the United States or to the advantage of any foreign nation[.]"  Thus, only the second "information" clause requires proof of the "reason to believe" element.

The *Rosen* court distinguished between the different *mens rea* requirements of each clause:

> [I]f a person transmitted classified *documents* relating to the national defense to a member of the media despite knowing that such an act was a violation of the statute, he could be convicted for "willfully" committing the prohibited acts even if he viewed the disclosure as an act of patriotism. By contrast, the "reason to believe" scienter requirement that accompanies disclosures of *information,* requires the government to demonstrate the likelihood of defendant's bad faith purpose to either harm the United States or to aid a foreign government.

*Rosen*, 445 F. Supp. 2d at 626 (emphasis added).   This distinction is supported by the earlier *Morison* decisions issued by this Court in 1985.  In *United States v. Morison*, 604 F. Supp. 655, 658 (D. Md. 1985), this Court noted that the "reason to believe" requirement of Section 793(e) is "not present" for the retention of documents.  In a subsequent *Morison* opinion later that year, this Court clarified that:

> It is irrelevant whether the defendant personally believed that the items related to the national defense . . . the first half of both parts (d) and (e) of 18 U.S.C. Section 793 defines the types of items or information which is unlawful to either retain or transmit. It defined all kinds of tangibles: "any document, writing . . . or note relating to the national defense," and also described intangibles: "information relating to the national defense which information the possessor has reason to believe could be used to the injury of the United States or to the advantage of any foreign nation." The language "has reason to believe" does not create a subjective test for the entire statute and does not change or modify the meaning of willfulness.  Instead, it modifies and explains what type of information is included within the statute's scope.

*United States v. Morison*, 622 F. Supp. 1009, 1010 (D. Md. 1985); *see also United States v. Leung*, No. 03-CR-434 (C.D. Cal July 14, 2003) (scienter requirement satisfied in documents cases by showing defendant acted willfully; government need not prove the reason to believe element).

Interpreting Section 793(e) in this manner is reasonable in light of the plain language of the statute.   Section 793(e) provides for different scienter requirements depending on the character of the national defense item or data that a defendant is charged with possessing.  In

cases like this one, involving documents, the defendant need only have acted willfully, as a defendant will more readily recognize a document relating to the national defense based on its content, markings or design than it would intangible or oral "information" that may not share such attributes.  The legislative history of this statute also supports this reading.  *See* S. Rep. No. 2369, pt. 1, 81st Congress, 2nd session, 8-9 (1950) ("[t]he phrase 'which information the possessor has reason to believe could be used to the injury of the United States or to the advantage of any foreign nation' would modify only 'information relating to the national defense' and not the other items enumerated in the subsection.").

The language of Section 793(d), which parallels that of 793(e) but concerns national defense items that are lawfully possessed, further supports this interpretation.  Section 793(d) similarly has two separate clauses relating to documents and information, and also differentiates between the scienter requirements for these clauses, applying the "reason to believe" requirement only to the "information" clause.  As Justice White explained in his concurring opinion in *New York Times Company v. United States*, 403 U.S. 713 (1971), where he compared and analyzed both Sections 793(d) and (e):

> It seems clear . . . that in prosecuting for communicating or withholding a 'document' as contrasted with similar action with respect to 'information' the Government need not prove an intent to injure the United States or to benefit a foreign nation but only willful and knowing conduct.

*Id*. at 738 n. 9.  Thus, in a case such as this one that involves solely the willful retention of classified *documents*, not intangible *information*, there is no heightened *mens rea* requirement.  Instead, the Government need only prove simple willfulness on the part of Mr. Drake.

**b.      "Willfully" is Consistently Interpreted**

As the Supreme Court has explained, "as a general matter, when used in the criminal context, a 'willful' act is one undertaken with a 'bad purpose.'"  *Bryan v. United States*, 524 U.S.

184, 191 (1998). "In other words, in order to establish a `willful' violation of a statute, `the Government must prove that the defendant acted with knowledge that his conduct was unlawful.'" *Id.* at 192 (quoting *Ratzlaf v. United States,* 510 U.S. 135, 137 (1994)). This definition of willfulness is confirmed by Fourth Circuit precedent.   In *Morison*, the Fourth Circuit affirmed this Court's jury instruction defining "willfully" to mean an act "done voluntarily and *intentionally* and with the *specific intent to do something that the law forbids. That is to say, with a bad purpose either to disobey or to disregard the law.*" 622 F. Supp. 2d at 1071.   In *United States v. Truong Dinh Hung*, 629 F.2d 908, 919 (4th Cir. 1980), the Fourth Circuit similarly affirmed the district court's jury instruction defining "willfully" as acting "voluntarily and intentionally and with a specific intent to do something the law forbids.'" *Id.* at 919.   As discussed above, Defendant's argument that *Rosen* indicates a lack of clarity as to whether a finding of willfulness requires a heightened *mens rea* is unavailing since *Rosen*, unlike the case at bar, involved intangible and oral information.   Thus, the meaning of "willfulness" in Section 793(e) is not unconstitutionally vague.

**2.        "Relating to the National Defense"**

Defendant next takes issue with the phrase "relating to the national defense," which he asserts does not give fair notice of what documents or information an individual may not disclose or unlawfully retain.   A review of Supreme Court and Fourth Circuit precedent shows that Defendant's argument has been rejected, as this phrase has a consistently adopted and applied meaning.

In *Gorin v. United States*, 312 U.S. 19, 29 (1941), the Supreme Court considered the constitutionality of the phrase "relating to the national defense" in the statute that preceded Section 793(e).   The Supreme Court declined to find this phrase to be unconstitutionally vague,

holding that "we are of the view that the use of the words 'national defense' has given them, as here employed, a well understood connotation." *Id*. at 28.   Ultimately, the Court concluded that a plain understanding of the phrase "appears sufficiently definite to apprise the public of prohibited activities and is consonant with due process." *Id*.   Notably, the *Gorin* Court cited with approval the district court's jury instructions, which stated that the term "'national defense' includes all matters directly and reasonably connected with the defense of our nation against its enemies." *Id*. at 30.   After *Gorin*, the Fourth Circuit has repeatedly rejected constitutional vagueness challenges to jury instructions that define "national defense" even more broadly than the instruction in that case.   *See U.S. v. Squillacote*, 221 F.3d 542, 580 n.23 (4th Cir. 2000); *Morison*, 844 F.2d at 1071-72; *Truong Dinh Hung*, 629 F.2d at 919; *United States v. Dedeyan*, 584 F.2d 36, 39 (4th Cir. 1978).   Thus, the meaning of "relating to the national defense" in Section 793(e) is not unconstitutionally vague.

### 3.   "To the Injury of the United States, or to the Advantage of Any Foreign Nation"

Defendant argues that Section 793(e) fails to provide fair notice of what conduct constitutes a crime because the phrase "to the injury of the United States, or to the advantage of any foreign nation" is constitutionally flawed.   Defendant's argument fails for the same reason as does his argument regarding the constitutionality of the term "willfulness."   That argument, once again, conflates the "information" and "documents" clauses.   As explained above, Section 793(e) prohibits the willful retention of classified information by those who have unauthorized possession of (1) "any document . . . relating to the national defense," or (2) "information relating to the national defense which information the possessor has reason to believe could be used to the injury of the United States or to the advantage of any foreign nation[.]"   Thus, as with the "reason to believe" clause, the "to the injury of the United States, or to the advantage of any

foreign nation" phrase does not apply to prosecutions of individuals charged with providing *documents* relating to the national defense.

### 4.    Combination of Terms

Defendant argues that the combination of constitutional flaws renders Section 793(e) unconstitutionally vague.  As has been explained in detail, the various terms Defendant has taken issue with in Section 793(e) are not unconstitutionally vague.  Thus, Mr. Drake was provided fair warning of what constitutes a crime under Section 793(e) as required under the Due Process Clause.

### B.    Overbreadth

Defendant argues that 18 U.S.C. § 793(e) is overbroad under the First Amendment because it is highly likely to restrict protected speech that is socially significant.  A statute is overbroad when it "'infringe[s] on expression to a degree greater than justified by the legitimate governmental need' which is the valid purpose of the statute." *Morison*, 844 F.2d at 1070 (quoting Martin H. Redish, *The Warren Court, the Burger Court and the First Amendment Overbreadth Doctrine*, 78 Nw. U. L. Rev. 1031, 1034 (1984)).  Notably, the overbreadth doctrine "is to be applied 'with hesitation and then only as a last resort,' and only if the statute cannot be given a narrowing construction to remove the overbreadth." *Id*. (quoting *New York v. Ferber*, 458 U.S. 747, 769 (1982)).

Mr. Drake is charged with violating Section 793(e) by unlawfully retaining documents relating to the national defense.  Defendant concedes that the Fourth Circuit concluded in *Morison* that Section 793(e) is not overbroad.  *Morison*, 844 F.2d at 1076; Mot. Dismiss at 22 n. 12.  However, Defendant claims that *Morison* is factually distinguishable because it did not address a whistleblower defense.  Mr. Drake also contends that *Morison* is not controlling

because the Supreme Court has since spoken on facial overbreadth challenges to criminal statutes in *United States v. Stevens*, 130 S. Ct. 1577 (2010) and *Garcetti v. Ceballos*, 547 U.S. 410 (2006).

###### 1.      *Morison* Controls

In *United States v. Morison*, the United States Court of Appeals for the Fourth Circuit, in affirming an opinion of this Court, applied the following three "fundamental circumstances" under which the overbreadth doctrine may be applied when the:

> (1) "governmental interest sought to be implemented is too insubstantial, or at least insufficient in relation to the inhibitory effect on first amendment freedoms";
>
> (2) means employed bear little relation to the asserted governmental interest; and
>
> (3) means chosen by the legislature do in fact relate to a substantial governmental interest, but that interest could be achieved by a "less drastic means"— that is, a method less invasive of free speech interests.

844 F.2d at 1076 (citing Redish, *supra*, at 1035).  Applying this analysis to Section 793(e), the Fourth Circuit held that the first and second requirements were not met because the statute protected an important government interest and had a direct relation to the First Amendment rights at stake.  *Morison*, 844 F.2d at 1076.  The Fourth Circuit concluded that the third requirement was not met because the district court had narrowed the claimed overbroad terms with a limiting instruction, thereby eliminating any "legitimate overbreadth objection."  *Id.*

In this case, Defendant argues that *Morison* is factually distinguishable because the speech at issue in that case was prompted by motives of private financial gain, rather than by "opening discourse on a topic of national concern."  Though *Morison* does not speak to a whistleblower defense specifically, the Fourth Circuit did note that there was no indication that Congress intended to exempt leaks to the press.  *Morison*, 844 F.2d at 1068.  Additionally, the holding in *Morison* concerning the first two requirements is not limited to only the facts in that

case.[2]  Instead, the Fourth Circuit held generally that section 793(e) is an "expression[] of a vital governmental interest and ha[s] a direct relation to the interests involved here."  *Id.*

Even if the Fourth Circuit's determination had been more narrowly applied, the application of the first two prongs of the overbreadth doctrine as described in *Morison* to the facts in this case results in the same conclusion: Mr. Drake's First Amendment rights are not limited by Section 793(e).  As the Government points out, this statute does not prohibit Mr. Drake from publicly criticizing the NSA.  It also does not stop him from reporting allegations of waste, fraud and abuse.  *See, e.g.*, *U.S. v. Marchetti*, 466 F.2d 1309, 1317 (4th Cir. 1972) ("Thus Marchetti retains the right to speak and write about the CIA and its operations, and to criticize it as any other citizen may, but he may not disclose classified information obtained by him during the course of his employment which is not already in the public domain.").  To the contrary, the Intelligence Community Whistleblower Protection Act, 5 U.S.C. § 2302(b)(8), provides  a statutory framework by which whistleblowers in the intelligence community may make complaints without fear of reprisals.    Thus, Section 793(e) as applied in this case only prohibits Mr. Drake from bringing home classified documents relating to the national defense.  As the Fourth Circuit recently stated, "the government has a compelling interest in protecting both the secrecy of information to our national security and the appearance of confidentiality so essential to the effective operation of our foreign intelligence service."  *United States v. Abu Ali*, 528 F.3d 210, 247 (4th Cir. 2008) (quoting *CIA v. Sims*, 471 U.S. 159, 175 (1985)).

Regardless of whether Mr. Drake was acting as a whistleblower, Section 793(e) would not have prevented him from contacting the press about the NSA.  He is charged in this case

---

[2] Though the holding in *Morison* concerning the third requirement of the overbreadth test dealt with the particular jury instructions issued by this Court in that case, as will be discussed below, this Court will similarly present limiting instructions to the jury at trial.

because he is alleged to have retained classified documents.   As noted in the *Morison* concurrence, "in an ideal world, governments would not need to keep secrets from their own people, but in this world much hinges on events that take place outside of public view."  844 F.2d at 1081-82.   Thus, Mr. Drake's alleged status as a whistleblower does not change this Court's analysis of whether Section 793(e) is overbroad.  Accordingly, *Morison*'s determination that Section 793(e) is not overbroad still controls and directs this Court's analysis.

### 2.    *Stevens* and *Garcetti*

Defendant contends that Mr. Drake's challenge to the overbreadth of Section 793(e) is not foreclosed by *Morison* because of the recent Supreme Court decisions *United States v. Stevens*, 130 S. Ct. 1577 (2010) and *Garcetti v. Ceballos*, 547 U.S. 410 (2006).   Though the Fourth Circuit has not specifically analyzed Section 793(e) in light of these two cases, this Court finds that the Fourth Circuit's reasoning in *Morison* that the statute is not unconstitutionally vague or overbroad is unaffected by *Stevens* and *Garcetti*.

Defendant does not explain how *Stevens* would affect the Fourth Circuit's analysis of the constitutionality of Section 793(e).   In *Stevens*, the Supreme Court held that a statute criminalizing the commercial creation, sale or possession of depictions of animal cruelty was substantially overbroad and therefore invalid under the First Amendment.   Mr. Drake cites *Stevens* in support of his argument that Section 793(e) unconstitutionally regulates protected speech.   Mot. Dismiss at 22-23 ("Restrictions on speech based on its content, such as the one at issue here, are presumptively invalid; the government bears the burden of rebutting that presumption." (citing *Stevens*, 130 S. Ct. at 1584)).   Defendant also cites *Stevens* in support of his claim that "Courts should grant the executive no special deference in First Amendment challenges to statutes simply because the restricted and chilled speech and publication relates to

issues of national security."  Mot. Dismiss at 25 ("We would not uphold an unconstitutional statute merely because the Government promised to use it responsibly." (quoting *Stevens*, 130 S. Ct. at 1591)).  Yet, as this Court has explained, Mr. Drake is not being charged with the unlawful *disclosure* under 793(e), but instead with unlawful *retention* of documents.

Defendant does not make clear how *Garcetti* might alter the Fourth Circuit's analysis of the constitutionality of Section 793(e).  The only language Defendant relies on from this case is the Supreme Court's statement that:

> "Exposing governmental inefficiency and misconduct is a matter of considerable significance . . . reinforced by the powerful network of legislative enactments – such as whistle-blower protection laws and labor codes – available to those who seek to expose wrongdoing. . . . These imperatives, as well as obligations arising from any other applicable constitutional provisions and mandates of the criminal and civil laws, protect employees[.]"

*Garcetti*, 547 U.S. at 425-26; Mot. Dismiss at 28.  Defendant claims this supports his contention that, though an employer may limit an employee's speech as it relates to the employee's job, it may not limit the speech as it relates to whistleblowing.  Mot. Dismiss at 28.  As explained above, Section 793(e) does not limit Mr. Drake's speech as a whistleblower.  To the contrary, the Intelligence Community Whistleblower Protection Act specifically provides a structure by which a whistleblower may make his or her concerns known without the risk of retaliation.  Thus, this language does not call into question the Fourth Circuit's holding in *Morison*.  Accordingly, *Stevens* and *Garcetti* do not alter the clear precedent in this circuit that Section 793(e) is neither unconstitutionally vague nor overbroad.

### C.     Limiting Instructions

Having found that Section 793(e) is constitutional, this Court turns to Defendant's assertion that this Court must provide limiting instructions at trial as informed by *Morison*, *Rosen*, and "the leading constitutional scholars commenting on the espionage statutes."  Mot.

Dismiss at 31.  At the March 31, 2011 hearing, the Government agreed that limiting instructions should be provided to the jury defining the various terms detailed above.  Thus, this Court will provide limiting instructions to the jury at the appropriate point at trial.  The precise wording of the instructions, however, will be determined in a subsequent proceeding.

<u>CONCLUSION</u>

For the reasons indicated on the record at the March 31, 2011 hearing and the reasons stated above, Defendant's Motion for a Declaration that Sections 5 & 6 of CIPA are Unconstitutional (ECF No. 51) and Defendant's Motion to Dismiss Counts 1 through 5 of the Indictment (ECF No. 52) are DENIED.

A separate Order follows.

Dated:          April 13, 2011                    /s/_____
                                                  Richard D. Bennett
                                                  United States District Judge