IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| v. | * | Case No.  RDB 10 CR 181 |
| | * | |
| **THOMAS ANDREWS DRAKE,** | * | |
| | * | |
| **Defendant.** | * | |
| | ****** | |

### REPLY TO DEFENDANT'S RESPONSE IN OPPOSITION

The United States of America, by and through William M. Welch II, Senior Litigation Counsel, and John P. Pearson, Trial Attorney, Public Integrity Section, Criminal Division, United States Department of Justice, respectfully submits this reply regarding the application of evidentiary privileges under the Classified Information Protection Act ("CIPA") and the National Security Agency Act of 1959.  In response to the government's memorandum of law on this issue, the defendant claims that "[t]here is no authority" to support the proposition that this Court may redact or substitute unclassified information in a criminal case.  Def. Resp. at 1.  He also claims that the National Security Agency Act of 1959 is inapplicable in a criminal case, and that CIPA, which applies only to classified information, is the sole method by which information can be redacted or substituted in a criminal case.  Id.

These arguments lack any basis in fact or law.  They run directly contrary to binding Fourth Circuit precedent, and they should be rejected.

First, the Fourth Circuit has been clear that CIPA "is merely a procedural tool requiring a pretrial court ruling upon the admissibility of classified information."  United States v. Smith, 780 F.2d 1102, 1106 (4th Cir. 1985) (en banc).  In enacting CIPA, "Congress did not intend to

alter the existing law governing the admissibility of evidence." Id. "No new substantive law was created by the enactment of CIPA," nor "did the adoption of the Federal Rules of Evidence change the existing law on the subject where not addressed." Id. (internal citations omitted). In sum, CIPA does not change the applicability of other rules of evidence. It is a filter, designed to help courts process classified information through the framework of pre-existing evidentiary rules.

Second, courts operating in the CIPA context are fully authorized, and indeed required, to consider whether any other privileges apply. As explained in Smith, even relevant evidence may be excluded at trial under an applicable privilege: "Although evidence may be relevant, it yet may be inadmissible because of common law privileges with respect to the testimony." Id. (citing Fed. R. Evid. 501). Relevant privileges include the attorney-client privilege, the marital privilege, military or state secrets, and the informant's privilege. See id. (collecting cases supporting the application of each privilege). Similarly, under Bruton v. United States, 391 U.S. 123 (1968), courts are often required to redact and substitute admissions by a defendant that implicate a non-testifying codefendant.

Smith involved a case where the district court declined to apply the informant's privilege approved in Rovario v. United States, 353 U.S. 53 (1957). See 780 F.2d at 1106–07. The government appealed, using the mechanism outlined in section 7 of CIPA, and the Fourth Circuit reversed the district court's decision. 780 F.2d at 1108. It held that the government had a substantial interest in nondisclosure of "sensitive sources and methods of gathering information." Id. The Fourth Circuit reaffirmed this principle in United States v. Rosen, 557 F.3d 192, 195 n.4 (4th Cir. 2009), holding that "in assessing admissibility, the court must

consider not just the relevance of the evidence, but also the applicability of any government privilege, such as military or state secrets."

Smith and Rosen demonstrate that this Court can and should consider both the evidentiary process of the CIPA statutes and also the long-standing evidentiary privileges that operate on a parallel track. The defendant's argument that "CIPA is the only statute that authorizes a court to admit substitutions for relevant, admissible evidence in a criminal case," is simply incorrect. Def. Resp. at 7. Whether based upon an attorney-client relationship, the need to protect military or state secrets, or the need to protect a non-testifying codefendant's Sixth Amendment rights, privileges operate in criminal cases just as they do in civil. Not only does the defendant offer no support for his contrary contention, but he fails to explain why Smith and Rosen are not dispositive.

Third, it is clear that the NSA possesses a statutory privilege to protect information related to its functions and activities. 50 U.S.C. § 402, Section 6(a) specifically states that nothing in the NSA Act of 1959, or any other law, "shall be construed to required the disclosure of the organization or any function of the National Security Agency, or any information with respect to the activities thereof, or of the names, titles, salaries, or number of the persons employed by such agency." As outlined in the government's original memorandum, courts have repeatedly upheld this privilege against FOIA requests for disclosure, as well as in the context of a civil lawsuit seeking a deposition. See Docket No. 110 at p. 3–5.

The defendant's primary response is to note that the cases applying this section are civil cases, and to argue from that basis that the Act does not apply in criminal prosecutions. "The Act says nothing," argues the defendant, "about the admissibility of NSA documents that have

–3–

been produced to a defendant in a criminal case instigated by NSA." Def. Resp. at 5.  This proves nothing, however, because the Act is not just silent about criminal litigation.  It is silent about <u>all</u> litigation, whether civil, criminal, administrative, or otherwise.  Instead, the Act lays out a broad privilege protecting NSA information, just as other privileges shield various other types of information.  To argue that the Act should have "no impact on the defendant's right to present his defense" makes the same error as the defendant in <u>Smith</u>: to assume that in a case involving classified information, only the classified privilege of CIPA can apply.  Def. Resp. at 5.

      The defendant makes a secondary argument, claiming that even if the privilege applies, the government "has not even attempted to satisfy the terms and requirements of the statute." Id. at 6.  The defendant also claims that the government should be required to submit an affidavit or affidavits to the Court on the issue of protected information, and that "the Court should re-open the substitution hearing for the limited purpose of determining whether the affidavits support the substitution request and whether the proposed substitutions are appropriate." Id. at 8.  This argument fails for numerous reasons.  As an initial matter, the text of the Act requires no such affidavit from the government, in any context.

      Further, during the four days of hearings to consider the proposed government and defense exhibits under CIPA, the government provided a detailed response to the Court and defense counsel's questions regarding each of the proposed substitutions for protected information.  The defendant objects to this approach, deriding it as "vague, conclusory oral proffers of government counsel," id. at 7, but an affidavit would simply parrot what has already been proffered by the government and ruled on by the Court.  Considering the defendant's

decision to object to virtually every substitution proposed by the government, and the resulting need to proceed line by line through the documents at issue in the case, explanations of each substitution are far preferable to an affidavit submitted after the fact that (a) would not speak to each word and line of substitution and (b) would result in needless additional litigation over matters already decided.

A structural problem also plagues the defendant's proposal. The cases involving affidavits submitted by the government occur in the situations where the information-seeker—usually through a FOIA request—has received no information, and is operating in a vacuum. The affidavits thus provide some sense of information <u>not</u> otherwise provided. Here, by contrast, the defendant has been provided not only with the substituted version of the documents, but also with the unredacted versions. No information loss has occurred, and no prejudice to the defendant has occurred. He has all of the information at issue, and the only issue is whether that information is relevant for the purposes of his trial.

**Conclusion**

The defendant's claims do not address the merits of the substitutions, decisions which have already been made by the Court. Instead, the defendant merely complains that the Court lacks the authority to approve these substitutions, with no factual or legal support. This Court should reject those claims and approve the substitutions of protected information.

Respectfully submitted:

/s/ William M. Welch II
Senior Litigation Counsel
United States Department of Justice
300 State Street, Suite 230
Springfield, MA 01105
413-785-0111 (direct)
413-785-0394 (fax)
William.Welch3@usdoj.gov

John P. Pearson
Trial Attorney
Public Integrity Section
United States Department of Justice
1400 New York Avenue, NW
Suite 12100
Washington, DC  20005
202-307-2281 (direct)
202-514-3003 (fax)
John.Pearson@usdoj.gov

**CERTIFICATE OF SERVICE**

      I hereby certify that on May 16, 2011, I have caused an electronic copy of the *Reply to Defendant's Response in Opposition* to be served via ECF upon James Wyda and Deborah L. Boardman, counsel for defendant Drake.

                                                /s/ John P. Pearson
                                                Trial Attorney
                                                United States Department of Justice