**OFFICE OF THE FEDERAL PUBLIC DEFENDER**
**DISTRICT OF MARYLAND**
NORTHERN DIVISION
TOWER II, 9th FLOOR
100 SOUTH CHARLES STREET
BALTIMORE, MARYLAND 21201-2705
TEL: (410) 962-3962
FAX: (410) 962-0872

JAMES WYDA
FEDERAL PUBLIC DEFENDER

DEBORAH L. BOARDMAN
ASSISTANT FEDERAL PUBLIC DEFENDER

**VIA CM/ECF**

May 19, 2011

Honorable Richard D. Bennett
United States District Court
for the District of Maryland
101 West Lombard Street
Chambers 5D
Baltimore, Maryland 21201

Re: *United States v. Thomas Drake*
Case No. RDB-10-0181

Dear Judge Bennett:

I write to submit a response to the government's recent submission concerning the legal privileges available in CIPA cases. *See* Reply to Defendant's Response In Opposition (Docket No. 115). We feel compelled to write this response, because the prosecution has asserted, for the first time, yet another basis for its position. In its reply, the government claims that the Fourth Circuit's holdings in *United States v. Smith*, 780 F.2d 1102 (4th Cir. 1985) and *United States v. Rosen*, 557 F.3d 192 (4th Cir. 2009) permit the Court to redact or impose substitutions for unclassified but "protected" evidence in a criminal case. The government is incorrect. Neither *Smith* nor *Rosen* – or any other case or statute – authorizes the Court to redact or impose substitutions for relevant, unclassified evidence.

The pretrial CIPA process in this case is fundamentally and irreparably flawed because of the government's belated assertion of an evidentiary privilege. We have not reached this conclusion hastily or without careful consideration of CIPA or the case law. Through no fault of the Court, nearly two weeks after the substitution hearing concluded, we are still trying to determine what standard should have been applied and when. At the start of the hearing, the Court accepted the government's oral representation that the case law supported its request to redact or insert substitutions for unclassified material that the National Security Agency considers "protected." As it turns out, there is no legal support for the prosecution's request or for the Court's rulings. In point of fact, the Fourth Circuit law on this subject instructs that the path taken is wrong.

**I. Any Evidentiary Privilege Should Have Been Raised During the § 6(a) Hearing.**

The well-established pretrial process under CIPA has not been properly followed in this case. This has resulted in a prejudicial and incurable procedural defect. In CIPA cases, if the government asserts an evidentiary privilege, it must do so during the § 6(a) proceedings on the use, relevance, and admissibility of classified evidence. It is at that stage that trial courts should determine the merits of the asserted privilege.

The Fourth Circuit has spoken clearly on this matter. In *Smith*, the Fourth Circuit held that trial courts should assess the merits of a government privilege during the relevance and admissibility phase under CIPA § 6(a). *See Smith*, 780 F.2d at 1107 (finding trial court erred in "not applying such a privilege before ruling the relevant classified information admissible"). *See also Rosen*, 557 F.3d at 195 n.4 (instructing trial courts to consider applicability of any government privilege in connection with § 6(a) proceedings).

More than twenty years ago, the Fourth Circuit, in *United States v. Zettl*, 835 F.2d 1059 (4th Cir. 1987), squarely rejected the same argument that the government has made here. In *Zettl*, the Fourth Circuit found that the government was incorrect in its position that the privilege recognized in *Smith* should be considered during the § 6(c) hearing on substitutions. *See id.* at 1062 (noting that the government "misconstrued" the court's opinion in *Smith*). The Court held that the trial court should have determined the applicability of the government privilege during the § 6(a) proceedings, not during the § 6(c) proceedings. *Zettl*, 835 F.2d at 1065-66 (holding that the evidentiary privilege recognized in *Smith* should be "considered at the § 6(a) hearing" not the §6(c) hearing on substitutions). Laying out the correct procedure for asserting and considering a government privilege in CIPA cases, the Fourth Circuit held:

> After the district court has ruled on the claim of privilege, as well as matters of whether the evidence is merely cumulative or corroborative . . . then the government should file its motion for substitution under § 6(c) of the statute if it be so advised, and the district court will then consider that motion.

*Id.* at 1066 (citations omitted).

Here, the government did not follow the procedure set forth by the Fourth Circuit in *Zettl*. It did not assert any evidentiary privilege before or during the § 6(a) proceedings. In fact, the government stipulated to the admissibility and relevance of all of the "protected" information that it subsequently sought to redact or alter. The defense and the Court had no idea that the government would attempt to use the substitution process to redact or alter evidence that it had agreed was relevant and admissible one week earlier. If the defense had known about the government's intentions, we would have requested briefing on the issue and would have been prepared to discuss the applicable law. Under these circumstances, the Court should find that the government has waived any privilege it might have had, and it should order that all of the

unclassified, "protected" material that was redacted or substituted be admitted.

### II. The Government Privilege Recognized in *Smith* Applies Only to Classified Information.

Even if the government had timely asserted a government privilege under *Smith*, that privilege applies only to classified information, not to unclassified, "protected" information. *See Smith*, 780 F.2d at 1107, 1108 (finding government privilege applicable in CIPA cases to "classified information" regarding "sensitive sources and methods of gathering information") (emphasis added). *See also Zettl*, 835 F.2d at 1064 (noting that district court required government to "present or proffer evidence showing that the public disclosure of particular item of classified information would create an identifiable danger to the national security") (emphasis added).

Here, the government has sought redactions or substitutions for unclassified evidence that it claims is "protected." By definition, unclassified information – whether NSA deems it "protected" or not – does not reveal "sensitive sources and methods of gathering information," which was the nature of the classified information at issue in *Smith* and *Zettl*. Thus, the government privilege recognized in *Smith* does not apply to the unclassified evidence that has been redacted or altered in this case.

### III. Even if *Smith* Applied to Unclassified, "Protected" Evidence, the Evidence Should Have Been Admitted.

If the Court were to find that the *Smith* privilege applies to unclassified, "protected" information, the evidence nevertheless should have been admitted. Under the *Smith* standard, the Court must admit evidence that the government seeks to protect if the evidence is "relevant and helpful to the defense . . . or [was] essential to a fair determination of a cause." *Smith*, 780 F.2d at 1107. *See also United States v. Moussaoui*, 382 F.3d 453, 472 (4th Cir. 2009) (holding that under government privilege standard in *Smith*, "a defendant becomes entitled to disclosure of classified information upon a showing that the information 'is relevant and helpful to the defense . . . or is essential to a fair determination of a cause'").

Here, the Court – through no fault of its own – did not apply the *Smith* standard to the "protected" information that the government sought to redact or substitute. If the Court had applied the *Smith* standard, it would have found that all, or nearly all, of the "protected" information was "relevant and helpful to the defense," and the evidence would have been admitted.

### IV. The National Security Agency Act of 1959 Is Irrelevant to This Criminal Prosecution.

To the extent the government continues to rely on the National Security Agency Act of 1959 as a basis for redacting or substituting unclassified, "protected" information, its position is

insupportable for the reasons stated in our Opposition. The National Security Agency Act of 1959 does not apply to criminal cases, and it has never been applied in a CIPA case. If the Court finds the Act has any bearing on this case, the government must produce detailed affidavits establishing why disclosure of the "protected" information would harm national security, and the substitution hearing should be reopened for the limited purpose of determining whether the substitutions meet the "substantially the same ability" standard under CIPA § 6(c).

The government's argument that affidavits are not required because the defense, unlike the plaintiffs in FOIA cases, has seen the allegedly "protected" material is incorrect. CIPA contemplates the submission of affidavits in the case of classified information. *See* 18 U.S.C. App. 3 § 6(c)(2) (permitting the United States to "submit to the court an affidavit of the Attorney General certifying that disclosure of classified information would cause identifiable damage to the national security of the Untied States and explaining the basis for the classification of such information"). If affidavits are permitted to protect classified information, they should be required to protect unclassified information, which is, by definition, not harmful to national security if disclosed. The point is not whether the defense has seen the allegedly "protected" material. Rather, the point is that, under CIPA, the government is obligated to explain in an affidavit its position as to why disclosure of the unclassified, "protected" information "would cause identifiable damage to the national security of the United States."

## V. Mr. Drake's Ability to Defend Himself Has Been Irreparably Impaired.

The defects in the pretrial CIPA process in this case have prejudiced Mr. Drake's ability to defend himself. Most of the unclassified information that has been redacted or substituted is essential to the defense. This includes unclassified words and sentences in documents found in Mr. Drake's basement that the government seeks to introduce against him to prove he willfully retained national defense information. Every alteration to an unclassified word, phrase, sentence, or paragraph in a document deemed overall classified by the government impinges on Mr. Drake's ability to demonstrate to the jury that the document does not contain information relating to the national defense and that, if it does, Mr. Drake did not believe that was the case.

We appreciate the Court's consideration, and we respectfully request a hearing on this matter.

Very truly yours,

/s/

Deborah L. Boardman
Assistant Federal Public Defender