IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| v. | * | Criminal No. RDB 10-181 |
| THOMAS ANDREWS DRAKE, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**<u>MEMORANDUM OPINION</u>**

During several days of hearings, held pursuant to Sections 6(a) and 6(c) of the Classified Information Procedures Act ("CIPA"), 18 U.S.C.App. III, this Court made rulings on the relevancy and admissibility of classified materials, as well as on appropriate substitutions and redactions for those materials.  Notably, this Court ruled upon substitutions and redactions for both classified information as well as "protected material" on the ground that it implicated national security. While the Defendant Thomas Drake does not object to the Government's proposed exhibits as to relevancy and admissibility, he objects to the proposed substitutions or redactions for any unclassified material which the National Security Agency ("NSA") has deemed to be "protected material."  In light of the Defendant's objection, the parties were advised to brief this issue prior to this Court setting forth its formal ruling.

Thus, at issue is whether this Court properly allowed the Government to redact and provide substitutions for unclassified, protected information during the course of the substitution hearing held pursuant to CIPA § 6(c).  The Government has specifically asserted that the NSA possesses a statutory privilege against the disclosure of information relating to its activities, and that CIPA allows the Government to invoke that privilege in the context of CIPA hearings.  For

the reasons explained below, this Court finds that the Government has authority to request substitutions for the unclassified information for which it asserts a privilege under the National Security Agency Act of 1959. This Court also finds that the application of the privilege is not prejudicial to the Defendant.

## BACKGROUND

The Classified Information Procedures Act sets forth pretrial procedures for ruling upon the admissibility of classified information and providing for unclassified substitutions of admissible evidence. There are three pretrial steps that must be taken pursuant to CIPA.

First, a criminal defendant must provide the United States and the court with a "Section 5 notice" when he "reasonably expects to disclose or to cause the disclosure of classified information in any manner" during his trial or during any pretrial proceeding. 18 U.S.C.App. § 5(a). A defendant's Section 5 notice must provide specific detail as to the classified information the defendant anticipates he will rely upon in his defense. Second, once the defendant gives such notice, the Government may then request a hearing under Section 6(a) of CIPA during which the court determines the "use, relevance, or admissibility of classified information that would otherwise be made during the trial or pretrial proceeding." 18 U.S.C.App. § 6(a). Third, after the court decides what classified information is relevant and admissible, the Government may then move to substitute a statement admitting relevant facts that the classified information would tend to prove, or a summary of the specific classified information, rather than disclose the specific classified information. *Id*. § 6(c)(1).

Under CIPA § 6(c)(1), the court shall grant the Government's motion for substitutions only if the substitution "will provide the defendant with substantially the same ability to make his defense as would disclosure of the specific classified information." *Id*. If the court

determines that the Government has not provided an appropriate substitution under this standard, the court may deny the Government's motion. *Id.* At this point, the United States Attorney General can submit an affidavit objecting to the disclosure of the classified information at issue, which bars the defendant from disclosing it. *Id.* § 6(e). The court may then dismiss certain counts of the indictment, find against the United States on those issues related to the classified information, strike certain testimony or, if all else fails, dismiss the indictment in its entirety. 18 U.S.C.App. § 6(e).

On April 8, 2011, Mr. Drake filed his Section 5 notice of the classified information he expected to rely upon at trial. On April 25, 2011, the Government provided Defendant with a binder containing both classified and unclassified exhibits that it intended to introduce at trial. The Government's exhibits contained numerous handwritten annotations by its classification expert, Ms. Catherine Murray, indicating which portions of the proposed exhibits were classified and which were unclassified.

On April 26, 2011, this Court began the first phase of CIPA hearings, held pursuant to CIPA § 6(a), to determine the use, relevance and admissibility of the classified information that Mr. Drake sought to introduce at trial as provided in his Section 5 notice, as well as the classified information the United States intended to introduce at trial. Defendant did not object to the admission of the Government's exhibit binder, and this Court ruled it admissible. After the 6(a) hearing, the Government produced proposed substitutions and redactions for the classified information within those documents that this Court had previously determined were relevant and admissible. Notably, the Government also proposed a significant number of substitutions and redactions for *unclassified* information contained within those same documents. On May 3, 2011, Mr. Drake filed his response and objections to those proposed substitutions, including an

objection to the substitutions and redactions proposed for unclassified information, which Mr. Drake argued was improper under CIPA.

On May 4, 2011, this Court began the second phase of the CIPA hearings, held pursuant to § 6(c), to determine whether the Government's proposed substitutions and redactions gave Mr. Drake substantially the same ability to make his defense as would the disclosure of the classified information. At the beginning of the § 6(c) hearing, Defendant raised his objection to the Government's proposed substitutions and redactions for unclassified information. The Government asserted that substitutions and redactions were proper for some of the unclassified information that the National Security Agency deemed to be "protected material," and that such substitutions and redactions were necessary in the interest of national security. This Court noted that the Government had not differentiated between classified material and unclassified material as to which the Government contended was "protected" for national security reasons. However, in the interest of efficiency, this Court proceeded to conduct a review of all documents and determined whether there were appropriate substitutions and redactions for both classified and unclassified but "protected" information. In some instances, this Court determined that there were no appropriate substitutions, and in other instances this Court determined that the Defendant was not prejudiced by the proposed substitutions. At the conclusion of the hearings, this Court requested that the parties submit their respective briefs on this issue. The parties have now fully briefed this issue.

## ANALYSIS

I.  **CIPA Does Not Bar this Court from Considering Substitutions Based Upon the Assertion of an Evidentiary Privilege**

Mr. Drake argues that "CIPA is the only statute that authorizes a court to admit substitutions for relevant, admissible evidence in a criminal case, and by its terms, CIPA applies

4

only to 'classified information.'" Def. Opp'n at 7 (ECF No. 113).  The United States Court of Appeals for the Fourth Circuit has clearly held that in setting forth pretrial procedures for ruling upon the admissibility of classified information and providing for unclassified substitutions of admissible evidence, CIPA "does not . . . alter the substantive rules of evidence." *United States v. Passaro*, 577 F.3d 207, 220 (4th Cir. 2009).

For example, in *United States v. Smith*, 780 F.2d 1102, 1103 (4th Cir. 1985), the Government appealed the district court's ruling during a CIPA § 6(a) hearing that certain classified information Smith sought to introduce would be admissible at trial.  In considering the appeal, the Fourth Circuit analyzed "the construction and meaning of § 6 of CIPA as it sets out the district court's role in deciding the use, relevance or admissibility of classified information as evidence." *Id*. at 1106.  After reviewing the legislative history of CIPA and other circuits' application of it, the Fourth Circuit found that the district court had correctly concluded that CIPA "is merely a procedural tool requiring a pretrial court ruling upon the admissibility of classified information." *Id*.  *See also*, *United States v. Rosen*, 557 F.3d 192, 194-95 (4th Cir. 2009); *United States v. Moussaoui*, 591 F.3d 263, 282 (4th Cir. 2010).  *Accord*, *United States v. Mejia*, 448 F.3d 436, 455 (D.C. Cir. 2006) ("The defendants argue that CIPA is a procedural statute that does not itself create a privilege against discovery of classified information. We agree.").  Thus, as CIPA does not alter the rules of evidence, it does not foreclose the consideration of substitutions for information based upon an assertion of a Government privilege—whether that information is classified or unclassified.

Though the application of most evidentiary privileges typically does not require the use of substitutions, the Fourth Circuit has found that a court has authority to provide substitutions for unclassified information that affects national security.  In *United States v. Moussaoui*, 333

F.3d 509, 513 (4th Cir. 2003) ("*Moussaoui I*"), the defendant requested unmonitored pretrial access to an enemy combatant witness he claimed would be an important part of his defense, as well as production of that witness at trial. The Government objected, arguing that the witness was a national security asset. *Id*. Following a hearing in district court, the district court denied Moussaoui's request. *Id*. However, "applying the procedures set forth in [CIPA], as a useful framework for decisions" the district court determined that the testimony from the enemy combatant witness would be relevant and material to Moussaoui's planned defense, and therefore ordered that the witness be deposed (with certain precautions) in order to preserve Moussaoui's right to a fair trial. *Id*.

Upon the Government's appeal of this ruling, the Fourth Circuit remanded to the district court the issue of determining whether any substitutions could be provided in the place of the deposition testimony that would put Moussaoui in substantially the same position as would a deposition. The district court found the Government's proposed substitutions to be inherently inadequate, because they were derived from witness reports that were unreliable, and concluded that no adequate substitutions could be created. The Fourth Circuit subsequently dismissed the appeal as interlocutory. *Moussaoui I*, 333 F.3d at 515. The Government then filed a pleading indicating that it would refuse to provide access to the witness for the purpose of conducting a deposition.

In *United States v. Moussaoui* ("*Moussaoui II*"), 382 F.3d 453, 458 (4th Cir. 2004), the Fourth Circuit reversed the district court's finding that the Government's proposed substitutions were inherently inadequate. *Id*. at 478-80. Although acknowledging that "CIPA does not apply here" because the testimony at issue was not covered by the relevant provisions of CIPA, the Fourth Circuit nonetheless reiterated that "CIPA provides a useful framework for considering

6

Moussaoui's request for access to the enemy combatant witnesses." *Id*. at 471, n. 20. Accordingly, the Fourth Circuit held that appropriate substitutions were available under the standard explained in CIPA, *i.e.* because there were substitutions that would place Moussaoui in the position he would have been in if the deposition of the witness was available. *Id*. at 477. Thus, as *Moussaoui II* shows, even where CIPA does not apply, this Court has authority to allow or reject substitutions for unclassified information that is protected by a Government privilege.

## II.     The Government Has Asserted a Valid Privilege

Having determined that the United States may assert a privilege to protect the disclosure of unclassified information, this Court turns to Defendant's argument that neither the privilege recognized in *Smith* nor Section 6(a) of the National Security Agency Act of 1959, 50 U.S.C. § 402 ("the Act") supplies the basis for a Government privilege.

### A.     The Government Does Not Rely Upon *Smith* for the Assertion of a Privilege

Defendant argues that "the Government privilege recognized in *Smith* applies only to classified information," as opposed to protected information. Def. Surreply at 3 (ECF No. 117). However, the United States has not argued that the privilege discussed in *Smith* applies to the evidence in this case.[1]  In *Smith*, the Government asserted during a hearing held pursuant to CIPA § 6(a) that certain classified information was protected by "a privilege similar to the informer's privilege recognized by *Roviaro v. United States*, 353 U.S. 53 (1957)." *Smith*, 780 F.2d at 1105.  As the United States District Court for the Eastern District of Virginia has explained, the privilege asserted in *Smith* amounts to a common law privilege in classified information. *United States v. Rosen*, 520 F. Supp. 2d 786, 800 (E.D. Va. 2007).  The

---

[1] The United States cites *Smith* to support the broader proposition discussed in Section I that "this Court can and should consider both the evidentiary process of the CIPA statutes and also the long-standing evidentiary privileges that operate on a parallel track." Gov't Reply at 3 (ECF No. 115).

Government specifically asserts that the evidence at issue is protected not by this common law classified information privilege, but instead by the statutory privilege described in § 6(a) of the National Security Act.

### B. The National Security Agency Act Supplies a Statutory Privilege Applicable in this Case

Defendant insists that the Government may not rely upon the Act as a basis for redacting or providing substitutions for protected information. Subsection 6(a) of the Act states:

> Except as provided in subsection (b)[2] of this section, nothing in this Act or any other law . . . shall be construed to require the disclosure of the organization or any function of the National Security Agency, or any information with respect to the activities thereof, or of the names, titles, salaries, or number of the persons employed by such agency.

The Government asserts that § 6(a) of the Act is tantamount to a statutory privilege that protects against the disclosure of information relating to NSA activities. The United States concedes that the invocation of this privilege "most often occurs in the FOIA context." Gov't Memo. at 4 (ECF No. 110). In those cases, National Security Agency Act § 6(a) is relied upon in response to requests under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking disclosure of NSA activities. *See, e.g.*, *Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 75 (2nd Cir. 2010) (upholding, under Section 6 of the Act, the denial of a FOIA request for the Terrorist Surveillance Program because the requested documents would reveal NSA activities); *Larson v. Dep't of State*, 565 F.3d 857, 868 (D.C. Cir. 2009) (holding that Section 6 of the Act "is a statutory privilege unique to the NSA" that provides "absolute protection" against FOIA disclosure and explaining that the NSA need not show harm to the NSA, but only that the withheld information relates to the activities of the NSA). *See also Lahr v. Nat'l Transp. Safety*

---

[2] Section 6(b) of the Act states: "The reporting requirements of section 1582 of title 10, United States Code, shall apply to positions established in the National Security Agency in the manner provided by section 4 of this Act."

*Bd.*, 569 F.3d 964, 985 (9th Cir. 2009) (stating that "[t]he agency need not make a 'specific showing of potential harm to national security' because 'Congress has already, in enacting the statute, decided that disclosure of NSA activities is potentially harmful.'") (quoting *Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 608 F.2d 1381, 1390 (D.C. Cir. 1979)).

Thus, on the one hand, no court has yet held that Section 6(a) of the Act provides the basis for an evidentiary privilege in a criminal case. On the other hand, such a dearth of case law is not dispositive either way, because there is no language in the Act explaining that it is inapplicable to criminal cases.[3] As a result, this Court looks to the application of the closest evidentiary privilege to that provided by §6(a) of the Act—the common law privilege against disclosure of state secrets. "That venerable evidentiary privilege 'allows the Government to withhold information from discovery when disclosure would be inimical to national security.'" *United States v. Aref*, 533 F.3d 72, 78-79 (2d Cir. 2008) (quoting *Zuckerbraun v. Gen. Dynamics Corp.*, 935 F.2d 544, 546 (2d Cir. 1991)). In *Aref*, the United States Court of Appeals for the Second Circuit analyzed whether the state secrets privilege applied in criminal cases. *Id.* at 79. The Second Circuit held that it does. *Id.* Similarly, this Court finds that Section 6(a) of the National Security Agency Act provides the NSA with a statutory privilege protecting against the disclosure of information relating to its activities which may be asserted in the criminal context.

### III. This Court Reaches the Same Outcome as to the Protected Information it Previously Determined Must and Must Not be Disclosed

Mr. Drake contends that even if this Court were to find that a privilege applies to the unclassified, protected information, "the evidence nevertheless should have been admitted"

---

[3] It is worth noting that the Act served as a basis for the Government's redaction of most of the last names of NSA employees included in the Government's and Defendant's exhibits, and that Defendant raised no objection to this during the substitution hearing. Thus, at a minimum, Defendant appears to agree that Section 6(a) of the Act precludes disclosure of at least some category of protected—but not classified—information.

because *Smith* requires this Court to admit any evidence the Government seeks to protect if the evidence "is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." Def. Surreply at 3 (citing *Smith*, 780 F.2d at 1107 (quoting *Roviaro*, 353 U.S. at 60)).

Defendant is correct that this Court must apply the "relevant and helpful" standard first articulated in *Roviaro v. United States*, 353 U.S. 53 (1957), and reiterated by the Fourth Circuit in *Smith*, when determining whether classified information may be withheld from discovery under CIPA. In *Roviaro*, the Supreme Court recognized "the existence of a qualified privilege to withhold the identity of persons who furnish information regarding criminal activity to law enforcement officials." *Roviaro*, 353 U.S. at 61. Notably, in analyzing the parameters of the privilege, the *Roviaro* Court explained that any application of a privilege was not absolute, but instead limited by "the fundamental requirements of fairness," because "where the disclosure of an informant's identity, or the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Id*. at 60-61.

Though Defendant cites *Smith*, it is the more recent *Moussaoui II* decision that provides the clearest explanation of the Fourth Circuit's interpretation of the *Roviaro* standard: "[A] defendant becomes entitled to disclosure of classified information upon a showing that the information is relevant and helpful to the defense or is essential to a fair determination of a cause." *Moussaoui II*, 382 F.3d at 472 (quotation marks and alteration omitted). *See also United States v. Fernandez*, 913 F.2d 148, 154 (4th Cir. 1990) ("Although *Smith* requires a court to take into account the government's interest in protecting national security, it also stresses that this interest cannot override the defendant's right to a fair trial. Thus, *Smith* requires the admission

10

of classified information that is helpful to the defense of an accused, or is essential to a fair determination of a cause.") (internal quotations omitted).  However, the Fourth Circuit specifically noted in *Moussaoui II* that "once the district court determines that an item of classified information is relevant and material, that item must be admitted *unless the government provides an adequate substitution*."  *Moussaoui II*, 382 F.3d at 476 (emphasis added).  It is abundantly clear to this Court that it may conduct the same type of analysis as to unclassified, "protected" material as it does to classified material under Section 6(c) of CIPA.

During the CIPA hearings, this Court repeatedly weighed the interests of security against Mr. Drake's need to have certain information—whether classified or protected—in order to receive a fair trial.  In doing so, this Court weighed "the particular circumstances" of this case, including the crime with which Mr. Drake is charged, his possible defenses, the significance of the protected information at issue, and all other relevant factors.  Where the protected information was relevant and helpful to Mr. Drake's defense, this Court either required the information be admitted without any substitutions or redactions, or found that the Government had provided an adequate substitution.  Where the protected information was not helpful or relevant to the defense, this Court allowed the Government to redact the information.  Thus, even after applying the *Roviaro* balancing test as interpreted by the Fourth Circuit in *Moussaoui II*, this Court's determination of what protected information must and must not be disclosed would remain the same.

## IV.     This Court's Application of the NSA Privilege Did Not Prejudice the Defendant

Finally, Defendant argues that "any evidentiary privilege should have been raised during the § 6(a) hearing." Def. Surreply at 2.  In *United States v. Zettl*, 835 F.2d 1059 (4th Cir. 1987), the Fourth Circuit delineated the most logical procedure for determining whether evidentiary

privileges apply in the context of a case involving hearings held pursuant to CIPA. The Fourth Circuit explained that a district court should first make relevancy and admissibility determinations under § 6(a) of CIPA, and then allow the Government to assert a privilege claim. *Id*. at 1066. "After the district court has ruled on the excision of the documents and testimony [under CIPA § 6(a)], the Government will then be permitted to assert its claim of privilege . . . then the Government should file its motion for substitution under § 6(c)." *Id*. Thus, while the *Zettl* opinion suggests that the Government should have explained to this Court that it planned to assert a privilege under the National Security Agency Act before the § 6(c) substitution hearing, *Zettl* does not go so far as to hold that this Court therefore lacks authority to make privilege determinations during the § 6(c) substitution hearing. To the contrary, the Fourth Circuit in *Zettl* noted that:

> [B]y holding that the state secret and informer's privilege should be asserted in the § 6(a) hearings, we do not mean to imply that similar considerations should not be present in the court's consideration of substitution motions under § 6(c). That such is clearly the case is shown by § 6(c)(2) providing for the filing of an affidavit of the Attorney General in § 6(c) proceedings, which affidavit explains the basis for the classification of the information sought to be disclosed and that the disclosure would cause identifiable damage to the national security of the United States.

*Zettl*, 835 F.2d at 1067. Furthermore, it is unclear that *Zettl* requires the Government to follow this procedure as to the assertion of a privilege regarding unclassified information. As *Smith* explains regarding the assertion of a privilege to classified information, "had CIPA not been enacted, the government could have raised its privilege at trial." *Smith*, 780 F.2d at 1109. Thus, if CIPA has no bearing on the analysis of the protected information, the Government arguably could have waited until trial to raise its argument that the protected information is subject to a statutory privilege. This Court need not reach that issue, though, because in this case the Government asserted its privilege as to the protected information well before trial. This Court

then followed the most efficient process for analyzing the Government's privilege as to the protected information while going through each line of the documents at issue during the CIPA hearing.

Even assuming that the procedure in *Zettl* applies to unclassified information, there has been no prejudice to the Defendant by addressing the Government's asserted privileges during the § 6(c) substitution hearing. The Government asserted its privilege under § 6(a) of the Act a month before trial, and the issues surrounding the application of the Government's privilege have now been fully briefed. Accordingly, since there has been no prejudice to Mr. Drake, his ability to defend himself has not been, as Mr. Drake claims, "irreparably impaired."

## CONCLUSION

For the reasons indicated above, this Court finds that the United States had authority to request substitutions for the unclassified information for which it asserted a privilege under the National Security Agency Act of 1959. This Court also finds that the application of the privilege has not prejudiced the Defendant.

A separate Order follows.

Dated:      June 2, 2011                    /s/_____
                                            Richard D. Bennett
                                            United States District Judge